TJ Angstman
ANGSTMAN JOHNSON
3649 Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Angstman ISB: 5738

Attorney for the Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES,  AND RAYMOND BRYANT,<br><br>               Plaintiffs,<br><br>   vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>               Defendant. | Case No.: 1:12-CV-559-EJL<br><br>AFFIDAVIT OF TJ ANGSTMAN IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS |

State of Idaho  )
               ss.
County of Ada)

     TJ Angstman, having been first duly sworn upon oath, deposes and says as follows:

AFFIDAVIT OF TJ ANGSTMAN IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS – PAGE 1
Matter: 8591-003

1.    I am of sufficient age and competence to give testimony before this Court. I make the following statements based upon my own personal knowledge.

2.    I am counsel of record for Plaintiffs in the above entitled matter.

3.    Attached hereto as Exhibit A is a true and correct copy of my Open Records Request sent to the Idaho Department of Corrections on or about December 4th, 2012.

4.    Attached hereto as Exhibit B is a true and correct copy of a letter to me from William M. Loomis, Deputy Attorney General for the State of Idaho, dated December 18th, 2012 denying my open records request.

5.    Attached hereto as Exhibit C is a true and correct copy of a letter sent to Kirt Naylor, counsel for Corrections Corporation of America, Inc., dated January 22, 2013 by Wyatt Johnson of Angstman Johnson attempting to coordinate scheduling and a discovery conference.

6.    Attached hereto as Exhibit D is a true and correct copy of a Subpoena to Product Documents, Information, or Objects or to Permit Inspection of Premises which Wyatt Johnson served on Corrections Corporation of America, Inc.'s attorney in a continued effort to obtain records and documents discoverable in this matter.

7.    Attached hereto as Exhibit E is a true and correct copy of Plaintiffs' First Set of Interrogatories and Requests for Production served on Defendants on or about February 20th, 2013.

8.    Attached hereto as Exhibit F is a true and correct copy of a letter received by my office from Mark Kubinski, Deputy Attorney General for the State of Idaho, dated February 27th, 2013, refusing to respond to Plaintiffs' Subpoena Duces Tecum.

AFFIDAVIT OF TJ ANGSTMAN IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS – PAGE 2
Matter: 8591-003

9.      Attached hereto as Exhibit G is a true and correct copy of a letter received by me from Kirt Naylor, dated February 25, 2013, contending that the Idaho Department of Corrections does not intent to respond to Plaintiffs' Subpoena Duces Tecum.

10.      Attached hereto as Exhibit H is a true and correct copy of emails between Wyatt Johnson and Kirt Naylor exchanged between the dates of February 7, 2013 and February 27, 2013 which reflect the Defendant's complete refusal to participate in the discovery process including initial disclosures, Plaintiffs' Initial discovery requests and the Subpoena Duces Tecum.

11.      Attached hereto as Exhibit I is a true and correct copy of an e-mail received by my office on regarding ghost workers.

FURTHER YOUR AFFIANT SAITH NAUGHT.

DATED this 18th  day of March, 2013.


_____/s/_____
TJ Angstman


SUBSCRIBED AND SWORN to before me this 15th day of March, 2013.

_____/s/ Kevin Gilbert_____
Notary Public
Commission Expires: July 10, 2014

DATED this 18th day of March, 2013.


_____/s/_____
TJ ANGSTMAN
Attorney for the Plaintiffs


AFFIDAVIT OF TJ ANGSTMAN IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS – PAGE 3
Matter: 8591-003

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Kirtlan G Naylor**    kirt@naylorhales.com, dlr@naylorhales.com, skh@naylorhales.com, sri@naylorhales.com

**Nikki R. Smith**, Attorneys for Plaintiffs
nikkismithlaw@gmail.com

**Daniel P. Struck and Tara B. Zoellner**, Attorneys for Defendant
dstruck@swlfirm.com; tzoellner@swlfirm.com

/s/
TJ Angstman

AFFIDAVIT OF TJ ANGSTMAN IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS – PAGE 4
Matter: 8591-003

# ANGSTMAN JOHNSON

**ATTORNEYS & COUNSELORS**

MEMBERS
THOMAS J. ANGSTMAN
WYATT B. JOHNSON

T.J. ANGSTMAN, ESQ.
E-MAIL: TJ@ANGSTMAN.COM

3649 N. LAKEHARBOR LANE
BOISE, IDAHO 83703
TELEPHONE (208) 384-8588
FACSIMILE (208) 853-0117
WWW.ANGSTMAN.COM

ASSOCIATES
MATTHEW J. RYDEN
BRIAN L. WEBB
MATTHEW T. CHRISTENSEN
MICHAEL C. MCCLURE
NATASHA HAZLETT (OF COUNSEL)
TODD C. AMICK (OF COUNSEL)*

*LICENSED ONLY IN MONTANA

December 4, 2012

Idaho Department of Corrections
ATTN: Custodian of Records
1299 N. Orchard St., Suite 110
Boise, Idaho 83706

> RE: *Records Requests Under the Idaho Public Records Act §9-337 et seq.*

Dear Custodian of Records:

Under the Idaho Public Records Act § 9-337 et seq., I am requesting an opportunity to inspect or obtain copies of the following public records:

1. Any video depicting inmate on guard violence at ICC for the last three (3) years;

2. Any reports, studies, notes, letters, documents, interviews, etc., related to inmate on guard violence at ICC for the last three (3) years;

3. All contracts with CCA and the State of Idaho;

4. Any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to violence in ICC; and

5. Any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to gang activity in ICC.

I agree to pay the actual cost of duplication. However, if there are any fees for searching or copying these records, please inform me if the cost will exceed $ 250.00. This information is not being sought for commercial purposes.

The Idaho Public Records Act requires a response time within three business days. If access to the records I am requesting will take longer than three days, please



EXHIBIT

A

Idaho Department of Corrections
December 4, 2012
Page 2

contact me with information about when I might expect copies or the ability to inspect the requested records. If you have any questions or need more information in order to expedite this request, please call me at (208) 384-8588.

If you deny any part or this entire request, please cite each specific exemption under the Public Records Act that you feel justifies the refusal to release the information and notify me of the appeal procedures available to me under the law. Also, please state with particularity the reasons for your decision. If the exemption you are claiming only applies to a portion of the records, please delete that portion and provide photocopies of the remainder of the records.

Thank you for considering my request.

Very truly yours,

T. J. Angstman
Attorney at Law

TJ:kdg



## STATE OF IDAHO

### OFFICE OF THE ATTORNEY GENERAL

#### LAWRENCE G. WASDEN

December 18, 2012

TJ Angstman
3649 N. Lakeharbor Lane
Boise, ID 83703

RE:   *December 4, 2012 Public Records Request*

Dear Mr. Angstman:

I am a deputy attorney general assigned to the Idaho Department of Correction (IDOC). In your above dated public records request, you seek a number of documents regarding violence and gang activity at ICC as well as video records. However, we believe your recent lawsuit against CCA (*Castillon, et al., v. Corrections Corporation of America, Inc.,* Case No. 1:12-559-EJL) clearly implicates issues addressed by the records you seek. The documents you request would ordinarily be the subject of a discovery request which, if made, preserves the rights of all parties under the rules of evidence and civil procedure. I.C. §9-343(3) specifically states that the public records act is not "available to supplement, augment or substitute or supplement discovery procedures" in any civil action.

The policy arguments for this statute are clear when, as in this case, there could be documents requiring protection for the safety of inmates as well as other reasons why disclosure to the public should be restricted. These protections can be provided by the courts during litigation.

In conclusion, respectfully, given the statutory language, we believe your public records request should be the subject of a discovery request in the above mentioned litigation. Therefore, your request is denied pursuant to the statute.

As you undoubtedly know, the law requires me to inform you that you may appeal this decision by filing a petition in conformance with the Idaho Public Records Laws, Title 9, Chapter 3. The petition must be filed in the Fourth Judicial District Court of Idaho within 180 calendar days of the mailing of this notice. Idaho Code § 9-343. Although statutory exemptions are herein cited, the citing of such exemptions shall not constitute a waiver of any legal basis or privilege which also may be applicable.

Thank you for your attention to this matter.

Criminal Law Division, Department of Correction
1299 North Orchard, Suite 110, P.O. Box 83720, Boise, Idaho 83720-0018
Telephone: (208) 658-2097, FAX: (208) 327-7485



EXHIBIT

*B*

Sincerely,

William M. Loomis
Deputy Attorney General

# ANGSTMAN JOHNSON

**MEMBERS**
THOMAS J. ANGSTMAN
WYATT B. JOHNSON

WYATT B. JOHNSON, ESQ.
E-MAIL: WYATT@ANGSTMAN.COM

ATTORNEYS & COUNSELORS

3649 N. LAKEHARBOR LANE
BOISE, IDAHO 83703
TELEPHONE (208) 384-8588
FACSIMILE (208) 853-0117
WWW.ANGSTMAN.COM

**ASSOCIATES**
MATTHEW J. RYDEN
BRIAN L. WEBB
MATTHEW T. CHRISTENSEN
MICHAEL C. MCCLURE
NATASHA HAZLETT (OF COUNSEL)
TODD C. AMICK (OF COUNSEL)*

*LICENSED ONLY IN MONTANA

January 22, 2013

Kirt Naylor
Naylor & Hales, PC
950 W. Bannock Suite 610
Boise, Idaho 83702

> RE:   Scheduling and Discovery Conference
>        Stabbing Victims v. CCA
>        8591-003

Dear Kirt:

I am writing to follow up on the Court's requirement, under the Litigation Order, that the parties meet pursuant to Local Rule 16.1.

Since the parties are unable to agree on the deadlines for the litigation outline, I have enclosed our proposed outline. We will be submitting it, independently, to the Court. We plan to further address our concerns with the order and timing of the discovery deadlines with the Court at the scheduling conference.

Although you and TJ had conferred about the deadlines, you did not address all of the subjects required under Local Rule 16.1. The following matters still require attention:

*(1) Initial Disclosures.*

It appears, under the Rule, initial disclosures are due January 31, 2013. Since your client has not yet answered the complaint, I am assuming that you will be denying the allegations. Therefore, I expect you to produce, in support of your defenses, at least the following documents, electronically stored information and tangible things, along with the identity of knowledgeable witnesses on the following subject matter:

(a) a copy of all contracts, including amendments and modifications, between CCA and the State of Idaho, (including its agencies), that relate to ICC;



Mr. Kirt Naylor
Page 2
January 23, 2013

(b) copies of any audits, contract monitor reports, notices of violation, responses, or correspondence pertaining to CCA's performance or failure to perform its obligations under its contract(s) with the State of Idaho;

(c) a copy of Standard Operating Procedures identified in the Serious Incident Review Report on the May 5, 2012 attack, including

- 504.02.01.001 Emergency Preparedness;

- 504.02.01.002 Security Threat Group Management;

- 317.02.01.001 Searches: Cell/Living Unit and Offender;

- 307.02.01.001 Use of Force;

- 116.02.01.002 Custody of Evidence;

- 105.02.01.001 General Reporting and Investigations of Major Incidents;

- Idaho Correctional Center Post Orders: General ICC Post Orders ICC PO-00; Close Custody D-E-F ICC PO-100;

- Memo from Chief Jepson 3/15/10 (OC);

- ICC Inmate Handbook;

- Contract CPO 012167 Amendment 5 Contract subsection 2.6 Security and Control section (d); and

- copies of any SOP with respect to inmate discipline;

(d) copies of all files maintained by CCA on each of the named plaintiffs, including any security threat group files and records pertaining to any security rating for the named plaintiffs;

(e) all records pertaining to all medical care provided to the named plaintiffs as a result of the May 5, 2013 attacks;

(f) records pertaining to the security ratings, security threat group files, and other files maintained by CCA on the attackers: William Redmond #69512, Steven Mitchell #95294, Blaine Cunningham #55891, Randy McNeil #67575, Christopher Price #66757, and Michael Wilson #61348;

(g) records pertaining to the security ratings of all inmates housed at ICC quadrants D, E, and F for September 16, 2011 through May 5, 2012;

(h) copies of all reports prepared by CCA on inmate-on-inmate assaults and all reports on inmate concern forms claiming staff failure to protect from inmate-on-inmate

Mr. Kirt Naylor
Page 3
January 23, 2013

assault pursuant to the Settlement Agreement entered in the matter of Kelly, et al v. CCA et al., 1:11-cv-00185-EJL;

(i) copies of all CCA policy and procedure manuals for ICC in effect on May 5, 2012 governing security threat group management, inmate housing assignments, and prison staffing;

(j) copies of the unit log books and other activity logs for all staff and contractors at ICC and containing at least the identity of the staff member, the sign in and sign out times for the staff member, and the duty assignment for the time period commencing April 29, 2012 and continuing through May 14, 2012;

(k) copies of payroll records for all staff and contractors employed by ICC during the time period commencing April 29, 2012 and continuing through May 14, 2012, showing hours worked, dates worked, regular hourly and overtime compensation;

(l) all records containing the terms of compensation and bonuses for any CCA employee with any supervisory authority who was employed by CCA to work at ICC for any period of time that includes the time period commencing April 29, 2012 and continuing through May 14, 2012;

(m) documents and records, including manuals and training materials regarding the State of Idaho peace Officer Standards and Training, and CCA correctional officer training including: policies and procedures; inmate rights, including protection from assaults; emergency plans/incident management; institutional safety; supervision of inmates; inmate manipulation; inmate management; inmate accountability; direct supervision; special needs offenders; and security threat groups. This subject should specifically include training required for correction officers employed by CCA between September 2011 and May 5, 2012;

(n) any notice of non-compliance with the Settlement Agreement entered in the matter of Kelly, et al v. CCA et al., 1:11-cv-00185-EJL, any responses by CCA, and any notice of compliance or other resolution;

(o) CCAs policies and procedures for "mandatory overtime" in effect at ICC between September 2011 and May 5, 2012;

(p) a copy of any final, preliminary or draft action plans from CCA to the State of Idaho pertaining to management of ICC, including the D, E, and F pods.

*(2) Number and Length of Depositions*

Obviously we have not received your initial disclosures at this time, and cannot conclude that the 10 deposition presumption under the Local Rules will be sufficient. Furthermore, because we believe CCA will likely be subject to deposition on numerous relevant topics - I imagine you will have multiple designees who we will need to speak to during the depositions. We do not intend to allow the presumptive limits to interfere with

Mr. Kirt Naylor
Page 4
January 23, 2013

our reasonable ability to conduct discovery. We intend to make the Court aware of this potential complication.

### (3) Electronic Discovery

Local Rule 16.1(b) requires us to address specified issues for e-discovery. We have not done that.

As far as electronic records, etc. in my clients' possession: to my knowledge, they don't have computers, email, etc. Your client may know otherwise. However, considering they are incarcerated, I do not expect to have any significant production of electronic discovery from the clients, themselves.

Your client, on the other hand, obviously has significant electronic information. Please provide me the information required by Local Rule 16.1(b) about custodians, electronic data systems, and your efforts to preserve relevant electronic information. This was required at our prior discovery conference. Please provide this information as soon as possible, but at least two business days before our scheduling conference with the Court.

### (4) Availability of Voluntary Case Management Conference

Local Rule 16.1 asks us to consider the possibility of utilizing the VCMC. If this is something that you think would have value in this case, we are willing to discuss that further.

### (5) Discovery Plan

We are responsible for attempting to prepare a discovery plan. FRCP 26(f). I do think it is incumbent upon us to both look at the discovery plan topics in the Rules, and decide how we think discovery is going to proceed. If you believe you will be compelled to resist discovery for certain logistical or technical reasons, I think it would serve all parties for you to bring those to our attention, now, while we are contemplating the litigation deadlines.

Lastly, while I am sure you are well aware of your client's obligation to preserve relevant evidence, I ask that you be sure to have instructed CCA, as well as its contractors and employees, to impose a litigation hold on any document or record destruction and to ensure that all such information is safely preserved. As you are aware, the consequences for failing to do so can be severe. *See Zubalake v. UBS Warburg, LLC,* 229 FRD 422 (SDNY 2004). As you can surmise from the Amended Complaint, as well as our prior demand letter, this case involves both the official policies of CCA, as well as its unofficial customs. Consequently evidence of CCA's persistent and widespread practices, and the decisions of its policymakers are all at issue. Any relevant information in its possession should absolutely be preserved.

Mr. Kirt Naylor
Page 5
January 23, 2013

I believe we should discuss these remaining points before the upcoming scheduling conference.

Very truly yours,

Wyatt Johnson
Attorney at Law

WJ:kdg
Enclosure: [Proposed] Litigation Plan
cc:      Jacob Wayne Judd
         Michael Walter Ford-Bridges
         Dusty John Knight
         Omar Castillon Jr.
         Christopher Sean Jordan
         Justin Keith Peterson
         Leon M. Russell
         Raymond Scott Bryant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

Omar Castillon et al.                                    )
                                                         )
                                                         )
                              Plaintiff(s),              ) Case No. CV 1:12-559-EJL
                                                         )
vs.                                                      )
                                                         ) **LITIGATION PLAN**
Corrections Corporation of America, Inc.                 )
                                                         )
                                                         )
                              Defendant(s).              )
                                                         )

# PLEASE INDICATE <u>DATES</u> WHERE APPLICABLE

1.  **Expert Witness Disclosure:**

    Plaintiff: October 8, 2013

    Defendant: November 5, 2013

    Rebuttal: December 3, 2013

2.  **Amendment to Pleadings, Joinder of Parties, Pre-ADR Discovery**
    **deadline:** October 8, 2013

3.  **ADR Conference:** Settlement Conference       **(please choose one)**
    **to be held by:** June 4, 2013

4.  **Final Discovery Due:** September 8, 2013

5. **Non-Dispositive & Dispositive Pre-Trial Motions Deadline:**
   January 7, 2014

   Responsive Pleadings Due 21 Days from Receipt of Motion

   Reply Pleadings Due 14 Days from Receipt of Response

6. **Proposed Trial Date(s):**
   July 8-18, 2014 _____ first preference

   July 15-25, 2014 _____ second preference

   July 22-August 1, 2014 _____ third preference

7. **Trial: Jury or Court**

8. **Total Projected Number of Days:** 9 _____

9. **Location:** Boise _____


_____        _____
Attorney for Plaintiff                                Date




_____        _____
Attorney for Defendant                                Date

AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises

# UNITED STATES DISTRICT COURT
### for the
### District of Idaho

|  |  |
|---|---|
| Castillon et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:12-CV-559-EJL |
| Corrections Corporation of America, Inc. | ) |
|  | ) (If the action is pending in another district, state where: |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES

To:  Idaho Department of Corrections

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Please See Exhibits A

| Place: Angstman Johnson 3649 N. Lakeharbor Lane, Boise, ID 83703 | Date and Time: 03/01/2013 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  02/19/2013

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*          Plaintiffs
_____ , who issues or requests this subpoena, are:

Wyatt B. Johnson, 3649 N. Lakeharbor Lane, Boise, ID 83703/ Wyatt@angstman.com/ 208-384-8588

EXHIBIT

D

AO 88B (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (Page 2)

Civil Action No.  1:12-CV-559-EJL

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

  ❏ I personally served the subpoena on the individual at *(place)* _____

_____ on *(date)* _____ ; or

  ❏ I left the subpoena at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

  ❏ I served the subpoena to *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

  ❏ I returned the subpoena unexecuted because _____ ; or

  ❏ other *(specify):*


Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____

       _____
              *Server's signature*

       _____
              *Printed name and title*


       _____
              *Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev. 01/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

## IDOC DOCUMENT LIST

You must bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

1.     all contracts, including amendments and modifications, between Corrections Corporation of America, Inc. ("CCA") (including any of its subsidiaries or affiliated entities) and the State of Idaho, (including its agencies);

2.     all audits, contract monitor reports, notices of violation, responses, or correspondence pertaining to CCA's performance or failure to perform its obligations under its contract(s) with the State of Idaho;

3.     copies of all Standard Operating Procedures (SOPs) and other guidelines identified in the Serious Incident Review Report on the May 5, 2012 attack, including:

- 504.02.01.001 Emergency Preparedness;

- 504.02.01.002 Security Threat Group Management;

- 317.02.01.001 Searches: Cell/Living Unit and Offender;

- 307.02.01.001 Use of Force;

- 116.02.01.002 Custody of Evidence;

- 105.02.01.001 General Reporting and Investigations of Major Incidents;

- Idaho Correctional Center Post Orders: General ICC Post Orders ICC PO-00; Close Custody D-E-F ICC PO-100;

- Memo from Chief Jepson 3/15/10 (OC);

- ICC Inmate Handbook;

- Contract CPO 012167 Amendment 5 Contract subsection 2.6 Security and Control section (d); and

- copies of any SOP pertaining to inmate discipline;

4.     copies of all files maintained by IDOC on each of the named plaintiffs: Omar Castillon; Dusty Knight; Justin Peterson; Leon Russell; Christopher Jordan; Jacob Judd; Michael Ford-Bridges; and Raymond Bryant. This request includes any security threat group files and records pertaining to any security rating for the named plaintiffs.

5.     records pertaining to the security ratings, security threat group files, and other files maintained by IDOC on the attackers: William Redmond #69512, Steven Mitchell #95294, Blaine Cunningham #55891, Randy McNeil #67575, Christopher Price #66757, and Michael Wilson #61348;

6.     copies of all documents containing IDOC policies and procedures for Idaho gang management that would have been in effect as of May 5, 2012;

7.     copies of all documents containing the State of Idaho's Pease Officer Standards and Training that would have been in effect as of May 5, 2012;

8.     copies of any final, preliminary or draft action plans from CCA to the State of Idaho pertaining to management of ICC, including the D, E, and F pods.

9.     copies of all staffing logs and overtime reports provided by CCA to IDOC.

10.    a copy of IDOC's new manual for state contract monitors that was finalized in December of 2012.

11.    any video depicting inmate on guard violence at ICC for the last three (3) years;

12.    any reports, studies, notes, letters, documents, interviews, etc., related to inmate on guard violence at ICC for the last three (3) years;

13.    any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to violence in ICC;

14.    any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to gang activity in ICC;

15.    any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to staffing levels at ICC;

16.    any correspondence, reports, studies, notes, letters, documents, interviews, video footage, etc., relating to an attack occurring at ICC in F2 Pod on June 22, 2011 at approximately 3:30 p.m;

17.    any intelligence or security threat group files on actual or suspected gangs or security threat groups identified as: "Severely Violent Criminals" (or "SVC"); the "Aryan Knights" (or "AK"); and "Youngsters Fucking Society" (or "YFS");

18.    documents containing policies, procedures and guidelines for the IDOC system of classifications at the ICC facility including the "close custody" classification.

ORIGINAL

TJ Angstman
Wyatt B. Johnson
ANGSTMAN JOHNSON
3649 Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Johnson ISB: 5858
Angstman ISB: 5738

Nikki Smith
3649 Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile: (208) 853-0117
Smith ISB: 9030

Attorneys for Omar Castillon, Dusty Knight, Justin Peterson, Leon Russell, Christopher Jordan, Jacob Judd, Michael Ford-Bridges, Raymond Bryant.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES,  AND RAYMOND BRYANT,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.<br><br>                    Defendants. | Case No. 1:12-CV-559-EJL<br><br>PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION |

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 1

EXHIBIT

E

TO:   DEFENDANT, CORRECTIONS CORPORATIONOF AMERICA, INC.

and its counsel of record:

YOU WILL PLEASE TAKE NOTICE that Defendants herein, pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure (F.R.C.P.), require Plaintiff to answer the following Interrogatories and Requests for Production of Documents within thirty (30) days of the service of these discovery requests.

## INSTRUCTIONS AND PRELIMINARY STATEMENT

1.      **SIGNING OF ANSWERS AND RESPONSES.** Pursuant to Rule 33(a)(2), F.R.C.P., the answers to these Interrogatories shall be signed by the person making them and any objections thereto shall be signed by counsel for Plaintiff, if any. Pursuant to Rule 36(a), F.R.C.P., a written answer or objection must be provided and signed under oath by the party or the party's attorney, within thirty (30) days. Failure to answer or object will result in each matter being admitted.

2.      **WRITTEN RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS.** Pursuant to Rule 34(b) you are required to file a written response including any objections within thirty (30) days of your receipt of these Requests for Production. If an objection is made it shall be stated in writing as to each item, category or part thereof.

3.      **TIME AND PLACE FOR PRODUCTION.** You are requested to produce for inspection each of the following listed documents or things or in the alternative, provide true and accurate copies of the same to the office of ANGSTMAN JOHNSON, 3649 N. Lakeharbor Lane, Boise, Idaho 83703, within thirty (30) days of the service of these discovery requests.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION
-- PAGE 2

4.    **FURNISHING ALL AVAILABLE INFORMATION AND MATERIALS.** When responding to the following Interrogatories and Requests, you are requested to furnish all information available to you, including information and documents in the possession of your attorneys, investigators, employees, officers, directors, agents, representatives or any other person or persons acting on your behalf.

5.    **PARTIAL ANSWERS OR RESPONSES.** If you cannot answer any of the Interrogatories in full or produce all requested documents and things after exercising due diligence to secure the information to do so, so state, and answer and respond to the extent possible, specifying your inability to answer the remainder, or provide all requested documents and things and stating whatever information or knowledge you have concerning the unanswered portions or remaining documents.

6.    **OBJECTIONS AND PRIVILEGES.** If any information, document or portion thereof that is responsive to any Request or Interrogatory herein is or will be withheld from production, inspection, copying or answering (whether because it is claimed to be work product, communication from attorney to client, or is entitled to be withheld for any other reason), please fully identify such document or portion thereof in your response and fully state in your response the reason it is or will be withheld. In addition, if any document is practically impossible of production, inspection and copying, please fully identify such document and the reason for the practical impossibility.

7.    **DUTIES OF SUPPLEMENTATION.** All discovery herein is deemed continuing. If after responding to these Requests and Interrogatories the Plaintiff acquires any documents requested herein, or any information related to any Interrogatory or document herein, which is not reflected by any documents produced or any response to these Requests or the

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 3

original Answers to Interrogatories, you must file a Supplemental Response or Answer or provide written notice to counsel for Defendants of the existence of such documents or information. Such supplementation is requested herein in addition to any supplementation required by the Federal Rules of Civil Procedure.

## DEFINITIONS

1.      The term "identify" when referring to an individual, corporation or other entity, shall mean to set forth:

(a)     The name.

(b)     Present or last known business and residence address and telephone number.

(c)     If a corporation, the principal place of business and telephone number.

(d)     If an individual, his or her present employer and his or her job title both presently and at all times referred to in the specific Interrogatory.

2.      The term "identify" when referring to a document (as herein defined), shall mean to set forth the author or originator, addressee(s), date, title or subject matter, and the present custodian of the original thereof, or, if unknown, the present custodian of any copy thereof, and the last known address of each such custodian.

3.      The term "including" means without limitation of the generality of the term preceding the word "including" to which the word "including" refers.

4.      The term "document" as used in these Interrogatories and Requests shall mean and include any and all:

(a)     Tangible things or items, whether handwritten, typed, printed, tape recorded, electronically recorded, videotape recorded, visually reproduced,

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 4

stenographically reproduced, computer generated or reproduced in any other manner;

(b)   Originals and all copies of any and all communications;

(c)   Writings of any kind or type whatsoever;

(d)   Books and pamphlets;

(e)   Microtape, microfilm, photographs, movies, records, recordings, tape recordings, and videotape recordings, stenographically or otherwise reproduced;

(f)   Diaries and appointment books;

(g)   Cables, wires, memoranda, reports, notes, minutes, and interoffice communications;

(h)   Letters and correspondence;

(i)   Drawings, blueprints, sketches, maps, and charts;

(j)   Contracts or agreements;

(k)   Other legal instruments or official documents;

(l)   Published material of any kind;

(m)   Vouchers, receipts, invoices, bills, orders, billings, and checks;

(n)   Investigation or incident reports;

(o)   Files and records;

(p)   Notes or summaries of conferences, meetings, discussions, interviews or telephone conversations or messages;

(q)   Computer disks, memories, e-mail or any other computer generated data; and

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 5

(r)    Drafts or draft copies of any of the above.

5.    The term "you" and "your" means the Plaintiff and all or any of his agents, representatives, employees, attorneys, parent and subsidiary companies, and every person acting or purporting to act, or who has ever acted or purported to act, on behalf of said Defendant; "you" means also the person or persons answering these Interrogatories and Requests, and "your" refers to the same persons to which "you" refers.

6.    "Tangible things" means any object, property or thing of a corporeal nature that is not otherwise subsumed and included under the term "documents" as hereinabove defined.

7.    "Persons" means and includes any natural person, partnership, corporation, joint venture, unincorporated association, governmental entity (or agency or board thereof), quasi-public entity or other form of entity, and any combinations thereof.

8.    "All" means "any and all."

9.    "And" includes "or" and "and/or."

10.    "Facts" mean all circumstances, events, and evidence pertaining to or touching upon the item in question.

11.    "Communicate" or "communication" refers to every manner or means of disclosure or transfer or exchange of information, whether orally or by document and whether face-to-face, by telephone, mail, personal delivery, e-mail or otherwise.

12.    "Evidencing" or "relating to" means consisting of, summarizing, describing, mentioning or referring to.

13.    Whenever the plural appears, the word shall include the singular, and vice versa.

14.    Masculine pronouns shall not connote any particular gender but shall be taken to mean masculine, feminine or neuter gender, as the appropriate case may be.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 6

15. All requests for documents assume that the documents are either in your possession or control as the term "you" and "your" is defined.

16. The term "pleading," unless otherwise noted, shall mean and refer to Plaintiff's Complaint and Defendant's Answer.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify any Person or Persons that you contend, in their absence, the Court cannot accord complete relief among the existing parties. For each Person you identify, state the legal and factual basis for your contention.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents and communications containing all contracts, including amendments and modifications, between CCA and the State of Idaho, (including its agencies), that relate to ICC.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all documents and communications containing copies of any audits, contract monitor reports, notices of violation, responses, or correspondence pertaining to CCA's performance or failure to perform its obligations under its contract(s) with the State of Idaho.

**REQUEST FOR PRODUCTION NO. 3:** Please produce all documents and communications containing the Standard Operating Procedures identified in the Serious Incident Review Report on the May 5, 2012 attack, including:

    a.  504.02.01.001 Emergency Preparedness;

    b.  504.02.01.002 Security Threat Group Management;

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 7

c.   317.02.01.001 Searches: Cell/Living Unit and Offender;

d.   307.02.01.001 Use of Force;

e.   116.02.01.002 Custody of Evidence;

f.   105.02.01.001 General Reporting and Investigations of Major Incidents;

g.   Idaho Correctional Center Post Orders: General ICC Post Orders ICC PO-00; Close Custody D-E-F ICC PO-100;

h.   Memo from Chief Jepson 3/15/10 (OC);

i.   ICC Inmate Handbook;

j.   Contract CPO 012167 Amendment 5 Contract subsection 2.6 Security and Control section (d); and

k.   Copies of any SOP with respect to inmate discipline.

**REQUEST FOR PRODUCTION NO. 4:** Please produce all documents and communications containing all files maintained by CCA on each of the named plaintiffs, including any security threat group files and records pertaining to any security rating for the named plaintiffs.

**REQUEST FOR PRODUCTION NO. 5:** Please produce all documents and communications containing all records pertaining to all medical care provided to the named plaintiffs as a result of the May 5, 2013 attacks.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 8

**REQUEST FOR PRODUCTION NO. 6:** Please produce all documents and communications containing records pertaining to the security ratings, security threat group files, and other files maintained by CCA on the attackers: William Redmond #69512, Steven Mitchell #95294, Blaine Cunningham #55891, Randy McNeil #67575, Christopher Price #66757, and Michael Wilson #61348.

**REQUEST FOR PRODUCTION NO. 7:** Please produce all documents and communications containing records pertaining to the security ratings of all inmates housed at ICC quadrants D, E, and F for September 16, 2011 through May 5, 2012.

**REQUEST FOR PRODUCTION NO. 8:** Please produce all documents and communications containing all reports prepared by CCA on inmate-on-inmate assaults and all reports on inmate concern forms claiming staff failure to protect from inmate-on-inmate assault pursuant to the Settlement Agreement entered in the matter of Kelly, et al v. CCA et al., 1:11-cv-00185-EJL.

**REQUEST FOR PRODUCTION NO. 9:** Please produce all documents and communications, including all CCA policy and procedure manuals for ICC in effect on May 5, 2012, governing security threat group management, inmate housing assignments, and prison staffing.

**REQUEST FOR PRODUCTION NO. 10:** Please produce all documents and communications including copies of the unit log books, shift logs, and other activity logs for all staff and contractors at ICC and containing at least the identity of the staff member, the sign in

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 9

and sign out times for the staff member, and the duty assignment for the time period commencing January 1, 2009 and continuing through May 14, 2012.

**REQUEST FOR PRODUCTION NO. 11:** Please produce all documents and communications including electronic copies of daily payroll records for all staff and contractors employed by ICC during the time period commencing January 1, 2009 and continuing through May 14, 2012, showing hours worked, dates worked, regular hourly and overtime compensation.

**REQUEST FOR PRODUCTION NO. 12:** Please produce all documents and communications including all records containing the terms of compensation and bonuses for any CCA employee with any supervisory authority who was employed by CCA to work at ICC for any period of time that includes the time period commencing January 1, 2009 and continuing through December 31, 2012.

**REQUEST FOR PRODUCTION NO. 13:** Please produce all documents and communications pertaining to and including manuals and training materials regarding the State of Idaho peace Officer Standards and Training, and CCA correctional officer training including: policies and procedures; inmate rights, including protection from assaults; emergency plans/incident management; institutional safety; supervision of inmates; inmate manipulation; inmate management; inmate accountability; direct supervision; special needs offenders; and security threat groups. This subject should specifically include training required for correction officers employed by CCA between January 1, 2009 and May 5, 2012.

**REQUEST FOR PRODUCTION NO. 14:** Please produce all documents and communications containing any notice of non-compliance with the Settlement Agreement

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 10

entered in the matter of Kelly, et al v. CCA et al., 1:11-cv-00185-EJL, any responses by CCA, and any notice of compliance or other resolution.

**REQUEST FOR PRODUCTION NO. 15:** Please produce all documents and communications containing CCAs policies and procedures for "mandatory overtime" in effect at ICC between January 1, 2009 and May 5, 2012.

**REQUEST FOR PRODUCTION NO. 16:** Please produce all documents and communications containing any final, preliminary or draft action plans from CCA to the State of Idaho pertaining to management of ICC, including the D, E, and F pods.

**REQUEST FOR PRODUCTION NO. 17:** Please produce all documents and communications containing the engagement agreement, correspondence and reports between CCA and the independent investigator(s) retained by CCA to review policies at the prison, as reported in the Idaho Statesman on February 5, 2013.

**REQUEST FOR PRODUCTION NO. 18:** Please produce all documents and communications containing the corporate charter, bylaws, certificate of incorporation or mission statement for CCA and any subsidiary or affiliated entity involved with the operation and management of ICC.

**REQUEST FOR PRODUCTION NO. 19:** Please produce all documents and communications containing any contract or engagement between CCA of any subsidiary or affiliated entity for the operation and management of ICC.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 11

**REQUEST FOR PRODUCTION NO. 20:** Please produce any video depicting inmate on guard violence at ICC for the last three (3) years.

**REQUEST FOR PRODUCTION NO. 21:** Please produce all documents and communications containing any reports, studies, notes, letters, documents, interviews, etc., related to inmate on guard violence at ICC for the last three (3) years.

**REQUEST FOR PRODUCTION NO. 22:** Please produce all documents and communications containing any reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to violence in ICC.

**REQUEST FOR PRODUCTION NO. 23:** Please produce all documents and communications containing any reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to gang activity in ICC.

**REQUEST FOR PRODUCTION NO. 24:** Please produce all documents and communications containing any correspondence, reports, studies, notes, letters, documents, interviews, etc., between the State of Idaho and ICC or its parent corporation CCA related to staffing levels at ICC.

**REQUEST FOR PRODUCTION NO. 25:** Please produce all documents and communications containing any correspondence, reports, studies, notes, letters, documents, interviews, video footage, etc., relating to an attack occurring at ICC in F2 Pod on June 22, 2011 at approximately 3:30 p.m.

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 12

**REQUEST FOR PRODUCTION NO. 26:** Please produce all documents and communications containing any intelligence or security threat group files on actual or suspected gangs or security threat groups identified as: "Severely Violent Criminals" (or "SVC"); the "Aryan Knights" (or "AK"); and "Youngsters Fucking Society" (or "YFS").

**REQUEST FOR PRODUCTION NO. 27:** Please produce all documents and communications containing policies, procedures and guidelines for the IDOC system of classifications at the ICC facility including the "close custody" classification.

**REQUEST FOR PRODUCTION NO. 28:** Please produce all documents and communications containing any Idaho Department of Correction Serious Incident Review (SIR) Report for any incident occurring at the Idaho Correctional Center.

**REQUEST FOR PRODUCTION NO. 29:** For each incident for which there is an Idaho Department of Correction Serious Incident Review (SIR) Report that is produced in response to Request for Production No. 28, please produce all video recordings of such incidents.

DATED this 20th day of February, 2013.

WYATT JOHNSON
Attorney for Plaintiffs

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2013, I caused to be served a true copy of the foregoing PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION  by the method indicated below, and addressed to those parties marked served below:

| Served | Party | Counsel | Means of Service |
|---|---|---|---|
| ☒ | Defendant | Kirtlan G. Naylor<br>Naylor & Hales, PC<br>950 W. Bannock Suite 610<br>Boise, Idaho 83702<br>Fax: 208-383-9516 | ☐ U.S. Mail, Postage Paid<br><br>☐ Hand Delivered<br><br>☒ Fax Transmittal |
| ☒ | Defendant | Daniel P. Struck<br>Tara B. Zoellner<br>Struck Wieneke & Love, P.L.C.<br>3100 West Ray Road, Ste 300<br>Chandler, AZ 83226<br>Cmadden@swlfirm.com<br>Dstruck@swlfirm.com<br>Tzoellner@swlfirm.com<br>mrosenberg@swlfirm.com | ☐ U.S. Mail, Postage Paid<br><br>☐ Hand Delivered<br><br>☒ Via E-mail |
| ☒ | Defendant | Nikki Smith<br>nikkismithlaw@gmail.com | ☐ U.S. Mail, Postage Paid<br><br>☐ Hand Delivered<br><br>☒ Via E-mail |

Wyatt Johnson

PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION – PAGE 14

FEB/27/2013/WED 05:46 PM                                                    P. 001/004



# STATE OF IDAHO
# OFFICE OF ATTORNEY GENERAL
## CRIMINAL DIVISION

C. L. "BUTCH" OTTER
GOVERNOR

## CORRECTION SECTION

LAWRENCE G. WASDEN
ATTORNEY GENERAL

MARK A. KUBINSKI
WILLIAM M. LOOMIS
COLLEEN D. ZAHN

P.O. Box 83720
Boise, ID 83720-0018
(208) 658-2097
Fax: (208) 327-7485

Deputy Attorneys General

KEVIN BURNETT, Paralegal
ANDREA BLADES, Paralegal

## FAX TRANSMISSION

TO: _Wyatt Johnson ; Angstman Johnson_

FROM: _Mark Kubinski, OAG @ IDOC_

FAX NO.: _208-853-0117_

Number of pages in transmission including cover page: _4_

Original ☒ will follow; ☐ will not follow.

This Facsimile was transmitted from the Office of Attorney General, Criminal Division, Idaho Dept. of Correction. If you did not receive the number of pages listed above, please call (208) 658-2097.

COMMENTS: _____

_____

_____

_____

_____

**EXHIBIT**
**F**

DATE: _2/27/13_                    SENT BY: _A. Blades_

NOTICE: This message is intended only for the use of the individual or entity to which it is addresses and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this notice is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return these papers to us at the address shown above via first class mail.



**STATE OF IDAHO**

OFFICE OF THE ATTORNEY GENERAL

**LAWRENCE G. WASDEN**

February 27, 2013

Wyatt B. Johnson
Angstman Johnson
3649 N. Lakeharbor Lane
Boise, ID 83703

Via Facsimile (208) 853-0117 & U.S. Mail

RE: *Castillon, et al. v. CCA*, United States District of Idaho Case No. 12-CV-559-EJL

Dear Mr. Johnson:

On February 20, 2013, I received a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises ("Subpoena") from your office. An Acceptance of Service was executed and returned to your office the same day. Since receiving the Subpoena, I have had an opportunity to review it with my client, the Idaho Department of Correction ("IDOC"). Based upon our review, the IDOC has a number of concerns with the Subpoena, which are outlined below. Consequently, until these concerns are adequately resolved, the IDOC will not respond to the Subpoena.

Before addressing the IDOC's specific concerns about the documents and information requested by the Subpoena, there are some other preliminary concerns to address. First, it is my understanding that CCA filed a motion to stay discovery on February 8, 2013 (Dkt. 20). As indicated in Mr. Naylor's letter to you dated February 25, 2013, "while a motion to stay discovery is pending, discovery is not proper until the Court rules." It is IDOC's position that the Subpoena constitutes discovery, and therefore, falls within the scope of CCA's motion to stay discovery. Accordingly, it is inappropriate to respond to the Subpoena until after the Court rules on the motion to stay discovery.

Secondly, the return date on the Subpoena is March 1, 2013, which is merely nine days from the date of service. While I recognize that you are somewhat flexible in this date, I believe it is necessary to formally note that compliance with the Subpoena by March 1, 2013 is not reasonable for the IDOC. Based on the IDOC's initial assessment, it would take approximately one month for the IDOC to fully comply with the Subpoena.

Next, a significant concern the IDOC has is the burden this request places on Department resources and the costs associated with complying with the Subpoena. Therefore, prior to

FEB/27/2013/WED 05:46 PM

P. 003/004

responding to the Subpoena, the issue of compensation for compliance needs to be resolved. *See* Fed. R. Civ. P. 45(c).

In addition to the foregoing preliminary concerns, there are several general objections that IDOC has regarding the Subpoena. For example, and without limitation, the Subpoena is overly broad, unduly burdensome, seeks documents and information that are irrelevant and beyond the scope of permissible discovery in this action, seeks documents and information that is privileged or confidential based on security and other legitimate penological reasons, or constitutes proprietary information on behalf of CCA.

With respect to Exhibit A—IDOC Document List, the IDOC has a number of objections to the scope and nature of the documents requested, in addition to the burden imposed by the requests. By way of illustration, and without limitation, those objections include the following:

Request No. 1: This request is vague, non-specific, and over broad. The IDOC has had contracts with CCA relating to four separate facilities. With respect to ICC alone, IDOC contractual relationship dates back to 2000. The current ICC contract has been in effect since July 1, 2010, and would therefore be the relevant contract for this request. In addition to multiple contracts, the contracts contain CCA proprietary information, which would have to be redacted.

Request No. 2: Again, there have been multiple contracts with multiple CCA facilities spanning over a decade. Even limiting the request to ICC still imposes a significant burden, as that contract goes back to 2000. Furthermore, some of the audits involve topics that are irrelevant to the subject matter of the present action, and also include personal health information of offenders.

Request No. 3: This request seeks documents that contain security information and tactics, in addition to proprietary information.

Request No. 4: This request is overly broad with respect to the term "all files maintained by IDOC." Additionally, some of the requested information includes personal health information (which would require a signed release from each offender), confidential informant information, security threat group information, and other security information, which IDOC considers to be confidential.

Request No. 5: The same concerns exist for this request, as with Request No. 4.

Request No. 6: The requested documents are included in Request No. 3.

Request No. 7: This request seeks documents for which POST is the custodian. Additionally, this request is overly broad as it would encompass documents relating to Idaho State Police, probation and parole, juvenile corrections, detention staff, etc.

Request No. 8: This request is vague as to the term "management."

Request No. 9: This request is overly broad, as it is not limited to timeframe or scope.

Request No. 11: This request is overly broad as to the timeframe.

Request No. 12: This request is overly broad.

Request No. 13: This request is overly broad.

Request No. 14: This request is overly broad.

Request No. 15: This request is overly broad.

Request No. 16: This request seeks information that would require redaction for security purposes.

Request No. 17: This request is overly broad as to its scope and vague as to a timeframe. Additionally, the requested information contains confidential informant information, security threat group information, and other security information, which IDOC considers to be confidential.

As stated above, the foregoing objections are illustrative only. The IDOC does not waive its right to assert additional objections regarding the Subpoena, nor does it waive any right to quash the Subpoena or seek protection from the Court.

Please feel free to contact me if you would like to discuss the IDOC's concerns in further detail.

Sincerely,

Mark A. Kubinski
Lead Deputy Attorney General
Idaho Dept. of Correction

cc: Kirt Naylor



## NAYLOR & HALES, P.C.
### ATTORNEYS AT LAW

**KIRTLAN G. NAYLOR**

Direct Line: 947-2070
E-mail: kirt@naylorhales.com

Kirtlan G. Naylor
Roger J. Hales
Bruce J. Castleton
James R. Stoll
Eric F. Nelson
David Sasser
Jacob H. Naylor
Tyler D. Williams

*Of Counsel*
Robert G. Hamlin
James D. Carlson

February 25, 2013

Thomas J. Angstman
Wyatt B. Johson
Angstman Johnson
2649 N. Lakeharbor Lane
Boise, ID 83703

    *Re: Castillon, et al. v. CCA, Case No. 1:12-cv-00559*

Dear Messrs. Angstman and Johnson:

    We have received a copy of your subpoena duces tecum to the Idaho Department of Corrections and discovery requests to the Defendant. Please be advised that while a motion to stay discovery is pending, discovery is not proper until the Court rules. Otherwise, a motion to stay (or motion for protective order) would be meaningless, since a party could proceed and moot the motion.

    For those reasons, the Defendants will not respond to discovery propounded by Plaintiffs until after the Court rules.

            Sincerely,

            Kirtlan G. Naylor

**EXHIBIT**
*G*

KGN:sri
cc: Mark Kubinski

M:\Corrections Corp of America\Castillon, et al v. CCA (Cinco de Mayo)\Correspondence\Letters\8660 Angstman & Johnson 01.wpd

## Wyatt B. Johnson

| | |
|---|---|
| **From:** | Kirtlan Naylor [kirt@naylorhales.com] |
| **Sent:** | Thursday, February 07, 2013 12:24 PM |
| **To:** | Wyatt B. Johnson |
| **Cc:** | Sheri Hamlin; Tara B. Zoellner |
| **Subject:** | Fwd: Castillon v. CCA;  Stipulation & Protective Order |
| **Attachments:** | 8660_05 Protective Order and Agreement.pdf; image001.jpg; 8660_05 Stipulation for Protective Order.pdf |

Wyatt,

Here is our proposed prot agreement as I discussed with TJ. Let me know if it is agreeable or suggestions you have.

Tomorrow we will be filing a motion to stay discovery pending the MTD we will refile. TJ didn't seek agreeable to that when we talked, but after you see it let me know if you have a different opinion.

Kirt
Sent remotely

>
> [cid:image001.jpg@01CE0529.6EB22610]
>
> This e-mail is a confidential communication.  If it was sent to you mistakenly, please notify me and destroy your copy.
>
>


!SIG:5113ffae312421008112522!



1

Kirtlan G. Naylor       ISB #3569
James R. Stoll          ISB #7182
NAYLOR & HALES, P.C.
950 W. Bannock Street, Suite 610
Boise, Idaho 83702
Phone:    (208) 383-9511
Facsimile: (208) 383-9516
Email:  kirt@naylorhales.com; jrs@naylorhales.com

Daniel P. Struck       AZB 012377
*(Admitted Pro Hac Vice)*
Tara B. Zoellner       AZB 027364
*(Admitted Pro Hac Vice)*
STRUCK, WIENEKE & LOVE, P.L.C.
3100 W. Ray Road, Suite 300
Chandler, AZ 85226
Telephone:   (480) 420-1600
Fax:         (480) 420-1696
dstruck@swlfirm.com, tzoellner@swlfirm.com

Attorneys for Defendant Corrections Corporation
of America, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FOR-BRIDGES, AND RAYMOND BRYANT,<br><br>        Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.,<br><br>        Defendant. | Case No. 1:12-cv-00559-EJL<br><br>**STIPULATION FOR PROTECTIVE ORDER** |

**STIPULATION FOR PROTECTIVE ORDER - 1.**

Defendant Corrections Corporation of America ("CCA"), through its attorneys of record and Plaintiffs, through their attorneys of record, stipulate as follows: the parties expect that CCA may produce documents and other items during the course of this litigation that may contain financial, pricing, and contractual information; proprietary information/trade secrets; confidential information relating to the operation of correctional facilities, the general release of which would threaten the security and safety of staff and inmates incarcerated in CCA facilities; personal information relating to current or former CCA personnel or current or former inmates; or documents that reveal the investigative techniques employed to conduct investigations into reports of staff or inmate misconduct. In the regular course of discovery, it may be necessary to disclose such information to the lawyers and their support staff, expert and other witnesses, and/or the Court. The parties want to ensure that this information remains confidential and that no party to this action makes this information public to individuals or entities that are not involved in this action.

Accordingly, Plaintiffs and Defendant agree that the procedures outlined in the proposed Protective Order will be adopted for the protection of Confidential Information. Furthermore, the parties jointly request that the Court enter the proposed Protective Order, pursuant to Federal Rule of Civil Procedure 26(c).

WHEREFORE, the parties jointly ask the Court enter the proposed Protective Order.

DATED this ____ day of February, 2013.

ANGSTMAN JOHNSON LAW FIRM          NAYLOR & HALES, P.C.


By_____          By_____
   T.J. Angstman                               Kirtlan G. Naylor
   Attorney for Plaintiffs                      Attorneys for Defendant


**STIPULATION FOR PROTECTIVE ORDER - 2.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ day of February, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

- **TJ Angstman and Wyatt B. Johnson**, Attorneys for Plaintiffs
  tj@angstman.com; wyatt@angstman.com

- **Nikki R. Smith**, Attorneys for Plaintiffs
  nikkismithlaw@gmail.com

- **Daniel P. Struck and Tara B. Zoellner**, Attorneys for Defendant
  dstruck@swlfirm.com; tzoellner@swlfirm.com


/s/ _____
Kirtlan G. Naylor

M:\Corrections Corp of America\Castillon, et al v. CCA (Cinco de Mayo)\Pleadings\8660_05 Stipulation for Protective Order.wpd

**STIPULATION FOR PROTECTIVE ORDER - 3.**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

OMAR CASTILLON, DUSTY KNIGHT,
JUSTIN PETERSON, LEON RUSSELL,
CHRISTOPHER JORDAN, JACOB JUDD,
MICHAEL FOR-BRIDGES, AND
RAYMOND BRYANT,

          Plaintiffs,

vs.

CORRECTIONS CORPORATION OF
AMERICA, Inc.,

          Defendant.

Case No. 1:12-cv-00559-EJL

**PROTECTIVE AGREEMENT
AND ORDER**

## PROTECTIVE AGREEMENT AND ORDER

Upon joint motion by the parties and pursuant to the terms of the following Protective Agreement ("Agreement"), the Court hereby GRANTS the parties' Stipulation (Dkt. No. ___) and so ENTERS the following Protective Order:

For purposes of this Order, CONFIDENTIAL INFORMATION means any document or tangible thing, electronic recording or transcript of oral testimony whether or not made under oath, and the content of such document, thing, recording or transcript, desi gnated by any party as confidential because it contains: (1) CCA inmates' confidential personal information, including, but not limited to non-publicly available healthcare and mental health information, non-publicly available disciplinary related documents, and non-publicly available allegations of rape, sexual assault, or other forms of sexual misconduct; (2) confidential personal information related to current or former employees, the disclosure of which might invade those current or former employees'

**PROTECTIVE AGREEMENT AND ORDER - 1.**

privacy; (3) security sensitive information related to the operation of any Corrections Corporation of America prison facility; and (4) confidential information relating to or identifying current or former inmates (other than Plaintiffs), the disclosure of which might invade those inmates' privacy.

It is contemplated that the CCA will designate documents that they deem confidential or confidential information with the label "CONFIDENTIAL" Documents so designated will be subject to this Order and will be used by non-producing counsel only in *Castillon, et al v. Corrections Corporation of America*, U.S.C.D. 1:12-cv-00559-EJL.

CONFIDENTIAL INFORMATION will not be disseminated or produced except in accordance with this Order.

1.   Whenever a deposition or court proceeding involves the disclosure of CONFIDENTIAL INFORMATION to another party, the following procedure will apply:

a.   The court reporter will be directed to bind those portions of the transcript containing CONFIDENTIAL INFORMATION separately. This request will be made on the record whenever possible.

b.   The cover of any portion of a deposition or court proceeding transcript that contains testimony or documentary evidence that has been designated CONFIDENTIAL INFORMATION will be prominently marked with the legend:

**SUBJECT TO PROTECTIVE ORDER.** All portions of deposition or court proceeding transcripts designated as "CONFIDENTIAL" OR "CONFIDENTIAL INFORMATION" will be sealed and will not be disseminated except to the persons identified in Paragraph 3.

1.   Any pleadings that contain CONFIDENTIAL INFORMATION that are filed in the public record will be filed under seal.

**PROTECTIVE AGREEMENT AND ORDER - 2.**

2.      Unless otherwise provided in this Order, access to CONFIDENTIAL INFORMATION will be restricted to the Court, its officers and to the following counsel and experts: attorneys or testifying or consulting experts in the cases identified above, or where production is required by the Federal Rules of Civil Procedure or a court order. Any attorney or expert to whom disclosure is made will be furnished with a copy of the Protective Order and will be subject to it.

3.      CONFIDENTIAL INFORMATION containing address, identifying information, dependent information, or contact information concerning former or current CCA employees will not be disclosed to Plaintiffs, any present or former inmate, or member of the general public.

4.      If Plaintiffs' counsel or experts are required by law or court orders to disclose CONFIDENTIAL INFORMATION to any person or entity not identified in paragraph 3, the name of that person or entity will be furnished to the CCA as far in advance of disclosure as is reasonably possible (ideally, not less than two weeks), so that the CCA may object and seek further protection as necessary.  Once an objection has been made, there will be no disclosure until the matter is resolved, unless disclosure is required by law or court order.  Any person not listed in Paragraph 3 who is then entitled to receive CONFIDENTIAL INFORMATION must be furnished with a copy of the Protective Order.

5.      Upon completion of this litigation, if Plaintiffs' counsel desires to use the documents or CONFIDENTIAL INFORMATION produced pursuant to this Order in any other lawsuit besides *Castillon, et al v. Corrections Corporation of America*, U.S.D.C. 1:12-cv-00559-EJL, Plaintiffs' counsel must first request in writing permission from the Office of the General

**PROTECTIVE AGREEMENT AND ORDER - 3.**

Counsel of the CCA. The request must be made in sufficient time (not less than two weeks) for the CCA's General Counsel to adequately respond. If permission is given, all terms of this Order will apply to use of the CONFIDENTIAL INFORMATION in any other lawsuit. If permission is not given, Plaintiffs' counsel agrees not to use the documents produced in this litigation in any other subsequent litigation.

6.    Upon completion of the litigation, counsel and their experts shall return, or by Order of the parties may provide a Certificate of Destruction, to the CCA and any other producing parly of any CONFIDENTIAL INFORMATION produced in this action, subject to Paragraph 6.

7.    Nothing in this Protective Order precludes the CCA from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents or other discovery material, or relief from the Protective Order.

8.    Each person designated in Paragraph 3, by receiving and reading a copy of the Protective Order entered by the Court as part of this Order, agrees to abide by its provisions and to see that its provisions are known and adhered to by those under his or her supervision or control, and to submit to the jurisdiction of the court of the CCA's choosing in the event the Order is breached. The parties to this Order agree that this Order has the legal force of a contract.

The non-producing signatories to this Order agree that they will not seek the documents produced pursuant to this request through other means (including but not limited to requests or complaints made or filed pursuant to the Inspection of Public Records Act), unless pursuant to a formal discovery request in a new and unrelated case filed in state or federal court after the signing of this Protective Order. In the event that such a request is made, this Protective Order

**PROTECTIVE AGREEMENT AND ORDER - 4.**

will not bind either party, and both parties will be free to litigate the discoverability of such documents.

//end of text//

Kirtlan G. Naylor
Attorneys for Defendant
Corrections Corporation of America

**PROTECTIVE AGREEMENT AND ORDER - 5.**

Kirtlan G. Naylor      ISB #3569
James R. Stoll         ISB #7182
NAYLOR & HALES, P.C.
950 W. Bannock Street, Suite 610
Boise, Idaho 83702
Phone:     (208) 383-9511
Facsimile: (208) 383-9516
Email: kirt@naylorhales.com; jrs@naylorhales.com

Daniel P. Struck       AZB 012377
*(Admitted Pro Hac Vice)*
Tara B. Zoellner       AZB 027364
*(Admitted Pro Hac Vice)*
STRUCK, WIENEKE & LOVE, P.L.C.
3100 W. Ray Road, Suite 300
Chandler, AZ 85226
Telephone:  (480) 420-1600
Fax:        (480) 420-1696
dstruck@swlfirm.com, tzoellner@swlfirm.com

Attorneys for Defendant Corrections Corporation
of America, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FOR-BRIDGES, AND RAYMOND BRYANT,<br><br>        Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.,<br><br>        Defendant. | Case No. 1:12-cv-00559-EJL<br><br>**STIPULATION FOR PROTECTIVE ORDER** |

**STIPULATION FOR PROTECTIVE ORDER - 1.**

Defendant Corrections Corporation of America ("CCA"), through its attorneys of record and Plaintiffs, through their attorneys of record, stipulate as follows: the parties expect that CCA may produce documents and other items during the course of this litigation that may contain financial, pricing, and contractual information; proprietary information/trade secrets; confidential information relating to the operation of correctional facilities, the general release of which would threaten the security and safety of staff and inmates incarcerated in CCA facilities; personal information relating to current or former CCA personnel or current or former inmates; or documents that reveal the investigative techniques employed to conduct investigations into reports of staff or inmate misconduct. In the regular course of discovery, it may be necessary to disclose such information to the lawyers and their support staff, expert and other witnesses, and/or the Court. The parties want to ensure that this information remains confidential and that no party to this action makes this information public to individuals or entities that are not involved in this action.

Accordingly, Plaintiffs and Defendant agree that the procedures outlined in the proposed Protective Order will be adopted for the protection of Confidential Information. Furthermore, the parties jointly request that the Court enter the proposed Protective Order, pursuant to Federal Rule of Civil Procedure 26(c).

WHEREFORE, the parties jointly ask the Court enter the proposed Protective Order.

DATED this ____ day of February, 2013.

ANGSTMAN JOHNSON LAW FIRM          NAYLOR & HALES, P.C.


By_____          By_____
    T.J. Angstman                                   Kirtlan G. Naylor
    Attorney for Plaintiffs                          Attorneys for Defendant


**STIPULATION FOR PROTECTIVE ORDER - 2.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ day of February, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

- **TJ Angstman and Wyatt B. Johnson**, Attorneys for Plaintiffs
  tj@angstman.com; wyatt@angstman.com

- **Nikki R. Smith**, Attorneys for Plaintiffs
  nikkismithlaw@gmail.com

- **Daniel P. Struck and Tara B. Zoellner**, Attorneys for Defendant
  dstruck@swlfirm.com; tzoellner@swlfirm.com


/s/ _____
Kirtlan G. Naylor

M:\Corrections Corp of America\Castillon, et al v. CCA (Cinco de Mayo)\Pleadings\8660_05 Stipulation for Protective Order.wpd

**STIPULATION FOR PROTECTIVE ORDER - 3.**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

OMAR CASTILLON, DUSTY KNIGHT,
JUSTIN PETERSON, LEON RUSSELL,
CHRISTOPHER JORDAN, JACOB JUDD,
MICHAEL FOR-BRIDGES, AND
RAYMOND BRYANT,

        Plaintiffs,

vs.

CORRECTIONS CORPORATION OF
AMERICA, Inc.,

        Defendant.

Case No. 1:12-cv-00559-EJL

**PROTECTIVE AGREEMENT
AND ORDER**

## PROTECTIVE AGREEMENT AND ORDER

Upon joint motion by the parties and pursuant to the terms of the following Protective Agreement ("Agreement"), the Court hereby GRANTS the parties' Stipulation (Dkt. No. ___) and so ENTERS the following Protective Order:

For purposes of this Order, CONFIDENTIAL INFORMATION means any document or tangible thing, electronic recording or transcript of oral testimony whether or not made under oath, and the content of such document, thing, recording or transcript, desi gnated by any party as confidential because it contains: (1) CCA inmates' confidential personal information, including, but not limited to non-publicly available healthcare and mental health information, non-publicly available disciplinary related documents, and non-publicly available allegations of rape, sexual assault, or other forms of sexual misconduct; (2) confidential personal information related to current or former employees, the disclosure of which might invade those current or former employees'

**PROTECTIVE AGREEMENT AND ORDER - 1.**

privacy; (3) security sensitive information related to the operation of any Corrections Corporation of America prison facility; and (4) confidential information relating to or identifying current or former inmates (other than Plaintiffs), the disclosure of which might invade those inmates' privacy.

It is contemplated that the CCA will designate documents that they deem confidential or confidential information with the label "CONFIDENTIAL" Documents so designated will be subject to this Order and will be used by non-producing counsel only in *Castillon, et al v. Corrections Corporation of America*, U.S.C.D. 1:12-cv-00559-EJL.

CONFIDENTIAL INFORMATION will not be disseminated or produced except in accordance with this Order.

1.     Whenever a deposition or court proceeding involves the disclosure of CONFIDENTIAL INFORMATION to another party, the following procedure will apply:

a.     The court reporter will be directed to bind those portions of the transcript containing CONFIDENTIAL INFORMATION separately. This request will be made on the record whenever possible.

b.     The cover of any portion of a deposition or court proceeding transcript that contains testimony or documentary evidence that has been designated CONFIDENTIAL INFORMATION will be prominently marked with the legend:

**SUBJECT TO PROTECTIVE ORDER.**  All portions of deposition or court proceeding transcripts designated as "CONFIDENTIAL" OR "CONFIDENTIAL INFORMATION" will be sealed and will not be disseminated except to the persons identified in Paragraph 3.

1.     Any pleadings that contain CONFIDENTIAL INFORMATION that are filed in the public record will be filed under seal.

**PROTECTIVE AGREEMENT AND ORDER - 2.**

2.     Unless otherwise provided in this Order, access to CONFIDENTIAL INFORMATION will be restricted to the Court, its officers and to the following counsel and experts: attorneys or testifying or consulting experts in the cases identified above, or where production is required by the Federal Rules of Civil Procedure or a court order. Any attorney or expert to whom disclosure is made will be furnished with a copy of the Protective Order and will be subject to it.

3.     CONFIDENTIAL INFORMATION containing address, identifying information, dependent information, or contact information concerning former or current CCA employees will not be disclosed to Plaintiffs, any present or former inmate, or member of the general public.

4.     If Plaintiffs' counsel or experts are required by law or court orders to disclose CONFIDENTIAL INFORMATION to any person or entity not identified in paragraph 3, the name of that person or entity will be furnished to the CCA as far in advance of disclosure as is reasonably possible (ideally, not less than two weeks), so that the CCA may object and seek further protection as necessary.  Once an objection has been made, there will be no disclosure until the matter is resolved, unless disclosure is required by law or court order.  Any person not listed in Paragraph 3 who is then entitled to receive CONFIDENTIAL INFORMATION must be furnished with a copy of the Protective Order.

5.     Upon completion of this litigation, if Plaintiffs' counsel desires to use the documents or CONFIDENTIAL INFORMATION produced pursuant to this Order in any other lawsuit besides *Castillon, et al v. Corrections Corporation of America*, U.S.D.C. 1:12-cv-00559-EJL, Plaintiffs' counsel must first request in writing permission from the Office of the General

**PROTECTIVE AGREEMENT AND ORDER - 3.**

Counsel of the CCA. The request must be made in sufficient time (not less than two weeks) for the CCA's General Counsel to adequately respond. If permission is given, all terms of this Order will apply to use of the CONFIDENTIAL INFORMATION in any other lawsuit. If permission is not given, Plaintiffs' counsel agrees not to use the documents produced in this litigation in any other subsequent litigation.

6. Upon completion of the litigation, counsel and their experts shall return, or by Order of the parties may provide a Certificate of Destruction, to the CCA and any other producing parly of any CONFIDENTIAL INFORMATION produced in this action, subject to Paragraph 6.

7. Nothing in this Protective Order precludes the CCA from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents or other discovery material, or relief from the Protective Order.

8. Each person designated in Paragraph 3, by receiving and reading a copy of the Protective Order entered by the Court as part of this Order, agrees to abide by its provisions and to see that its provisions are known and adhered to by those under his or her supervision or control, and to submit to the jurisdiction of the court of the CCA's choosing in the event the Order is breached. The parties to this Order agree that this Order has the legal force of a contract.

The non-producing signatories to this Order agree that they will not seek the documents produced pursuant to this request through other means (including but not limited to requests or complaints made or filed pursuant to the Inspection of Public Records Act), unless pursuant to a formal discovery request in a new and unrelated case filed in state or federal court after the signing of this Protective Order. In the event that such a request is made, this Protective Order

**PROTECTIVE AGREEMENT AND ORDER - 4.**

will not bind either party, and both parties will be free to litigate the discoverability of such

documents.

//end of text//

Kirtlan G. Naylor
Attorneys for Defendant
Corrections Corporation of America

**PROTECTIVE AGREEMENT AND ORDER - 5.**

# Wyatt B. Johnson

| | |
|---|---|
| **From:** | Wyatt B. Johnson |
| **Sent:** | Friday, February 22, 2013 11:00 AM |
| **To:** | Kirtlan Naylor |
| **Cc:** | Kevin Gilbert; Thomas J. Angstman; Wyatt B. Johnson |
| **Subject:** | Castillon v. CCA;  Stipulation & Protective Order |

Kirt,

The proposed protective order makes no sense.  We can't agree to it.

Presumptively, I am entitled to all information within the scope of Rule 26. A protective order should only go so far as is necessary to protect information that actually warrants protection, such as genuinely confidential information. However, your proposal goes far beyond what is reasonable and places the burden on me to establish information is not protected.  I can't agree to that.

In particular - I will not agree to designate broad categories of "potentially" confidential information as such.  It is your burden to establish something is actually protected information.  You've not identified one legitimate basis to me for withholding anything.  I'm not just assuming that exists.

I will not agree to your unilateral designation of everything as "confidential." My experience with these types of orders is that most the information is not.  I am not going to burden my staff, experts, consultants, or the court with "protecting" information that should not be protected.

I would consider a proposal where you provide redacted and unredacted copies of all documents that you consider to contain "confidential" information.  Only the precise information you claim is actually confidential should be redacted. The unredacted copies would be provided so that I may consider the claim of confidentiality, and, if I agree, I would file them under seal, and not distribute them publically.  You must specify on the redaction your basis for claiming the information is confidential.  I will be free to file the redacted document in court, or use it however I please, and you will not raise objections to its authenticity or based on the fact that it is not a "true and correct" copy of the document.  (Of course, I cannot waive any such objections, myself, since I don't know what documents you will produce, or anything about their creation, etc.)

Some of the specific paragraphs of the proposed order also make no sense. Paragraph 3 for instance - I don't see why any of the CCA employee contact information is confidential.  This is a public institution.  You have identified no threats from my clients or anyone else.  This seems like a solution without a problem.

Your process of paragraph 4 also places undue burden on me to worry about your confidentiality problem.  I should absolutely have the right to have potential witnesses look at information.  I will not allow you to unilaterally designate inconsequential information as "confidential" so that I have to share with you in advance every witness I may be speaking with.

In paragraph 5 you also seek to restrict my use of this information in other potential lawsuits.  Why?  If I already know, and don't otherwise disclose the actual confidential information to the public, how does it make any sense that I should pretend that facts that I actually know don't exist.  If it's a fact, I can use it in any lawsuit I chose.  You would admit you would need to produce the information in subsequent lawsuits, anyway.

Also, there is no way that I am going to agree not to seek documents information through other means, such as public records requests.  You have absolutely no right to limit my access to information through third party discovery, formal or informal.  I invite you to give me a single legitimate reason why I would ever agree to that.

I'm happy to discuss something reasonable.  What you have proposed is not.

Please produce all responsive information to the initial disclosures, as I have previously requested.  It is your client's obligation. You have given me no actual reason why they cannot or will not.  If they do not, what option do I have but to seek a motion to compel.  That hardly seems like we should have to do that on something as fundamental as initial disclosures.

-Wyatt.

Wyatt Johnson
ANGSTMAN JOHNSON
Attorneys and Counselors
3649 N. Lakeharbor Lane
Boise, ID 83703
Phone: 208-384-8588
FAX: 208-853-0117
www.angstman.com

1

NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 and 2521 and may be legally privileged. This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message. Messages sent to and from us may be monitored. If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

-----Original Message-----
From: Kirtlan Naylor [mailto:kirt@naylorhales.com]
Sent: Thursday, February 21, 2013 12:42 PM
To: Wyatt B. Johnson
Cc: Sheri Hamlin; Tara B. Zoellner; Thomas J. Angstman
Subject: RE: Castillon v. CCA; Stipulation & Protective Order

Wyatt,

We have still not heard back from you on this email I sent 2 weeks ago.


Kirt Naylor
208.947.2070


-----Original Message-----
From: Kirtlan Naylor
Sent: Thursday, February 07, 2013 12:24 PM
To: Wyatt B. Johnson
Cc: Sheri Hamlin; Tara B. Zoellner
Subject: Fwd: Castillon v. CCA; Stipulation & Protective Order

Wyatt,

Here is our proposed prot agreement as I discussed with TJ. Let me know if it is agreeable or suggestions you have.

Tomorrow we will be filing a motion to stay discovery pending the MTD we will refile. TJ didn't seek agreeable to that when we talked, but after you see it let me know if you have a different opinion.

Kirt
Sent remotely

>
> [cid:image001.jpg@01CE0529.6EB22610]
>
> This e-mail is a confidential communication. If it was sent to you mistakenly, please notify me and destroy your copy.
>
>


!SIG:5126794f207752861116610!

## Wyatt B. Johnson

| | |
|---|---|
| **From:** | Wyatt B. Johnson |
| **Sent:** | Wednesday, February 27, 2013 1:26 PM |
| **To:** | 'Kirtlan Naylor' |
| **Cc:** | Thomas J. Angstman; Wyatt B. Johnson; Nikki Smith; Kevin Gilbert |
| **Subject:** | Castillon v. CCA - Discovery. |

Kirt,

I just received your February 25, 2013 letter saying that you are not responding to our outstanding discovery because discovery is "not proper" while a motion to stay discovery is in place. I cannot find anything in the rules that stays the progress of this case pending your motion to stay discovery. Therefore, I am perplexed.

Should I understand your position to be that you will not participate in any discovery, for the time being, therefore I should make no further effort to meet and confer with you under the applicable court rules? If that is your position, I don't see what option you leave me but to proceed with my motion to compel.

If I have misunderstood your position, please let me know. Otherwise, I will move forward with preparing a motion to compel responses to your discovery.

-Wyatt.

Wyatt Johnson
ANGSTMAN JOHNSON
Attorneys and Counselors
3649 N. Lakeharbor Lane
Boise, ID 83703
Phone: 208-384-8588
FAX: 208-853-0117
www.angstman.com

NOTICE: This electronic transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender that is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 and 2521 and may be legally privileged. This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this communication in error, please notify Angstman, Johnson & Associates, PLLC immediately by telephone (208-384-8588) and destroy the original message. Messages sent to and from us may be monitored. If you are the intended recipient, you acknowledge that the email address being utilized is secure and that there will not be a waiver of the attorney-client privilege or breach of any duty of confidentiality by the sender's correspondence to that email address.

1

## Thomas J. Angstman

**Subject:**                    FW: A staff member at Idaho Correctional Center

-----Original Message-----
From: ███████████████████████████
Sent: Thursday, November 15, 2012 7:43 AM
To: Mindy Moore
Subject: A staff member at Idaho Correctional Center


To whom it may concern,

I have been an employee of CCA at Idaho Correctional Center for a number of years.  Please forgive the anonymous nature of this complaint as I fear, with good reason, retaliation because I have seen staff members retaliated against in the past for bringing accusations against senior members of staff in the form of an unrelated and undeserved PSN's and termination.

There are several things that I want to bring to your attention in response to the accusations made by Norma Rodriguez to the press.

In the Video of the assault in May you can clearly see that the single staff member entered the area of the assault attempting to subdue the fighting inmates with pepper spray.  Soon after the assault began, one other staff member entered the unit to assist.  The reason for the low staffing and slow response was due to serious under staffing at the time of the assault.  To say that the staff of Idaho Correctional Center are afraid of the inmates defies the obvious courage of the single officer on the unit who tried to defuse the situation by himself.



Ghost Workers.

During the time in question, employees were being placed on the shift schedule who were not present within the building or who were actually working in other areas and in some cases were no longer employees of CCA.  This was being done to fraudulently show the State of Idaho that we were fully staffed when we in fact were not.

Staff members have been threatened with disciplinary action for noting in the Unit Log Book how many officers were physically present on a Unit.

There were a number of occasions on night shift where only twelve people were actually present within the building.  Yet the shift rosters showed us as fully staffed.

On the video in question only one officer was present at the time of the assault.  This was because of under staffing, per contract we are supposed to have two staff members present on the DEF units.  As I said the management of Idaho Correctional Facility have committed fraud by submitting Shift Rosters showing the building to be fully staffed, when in fact many of the names on those rosters were of people who were not present within the building at the time.

I'll let you sort out how many felonies this entails; Fraud, conspiracy, etc., or maybe the State of Idaho will do that for you…

1

EXHIBIT  I

Excessive Overtime

Staff members were being worked in consecutive sixteen hour shifts, sometimes seventeen hours or more, then required to report for their next shift as normal, under threat of PSN and termination.  Employees were literally stumbling in exhaustion during the performance of their duties.  In one case twenty two officers were held over from dayshift for mandatory overtime, that's two thirds of the shift.  This is in direct violation of the settlement made with the ACLU where CCA agreed to hire more Correctional Officers.

Many officer have been ordered to work four sixteen hour shifts in a row.  This became standard procedure during the spring and summer of 2012.

If an officer had fallen asleep on his drive home, after four sixteen hour shifts in a row because of inadequate sleep, and caused a traffic accident that killed someone's wife and family...  Is that what it is going to take to stop this abusive treatment of employees?


Incompetent Unit Management.

The Unit Management of the facility has made a number of concessions to inmates in the belief that doing so will result in the Inmate Assault Rate decreasing.

These decisions; Allowing outside recreation in DEF during the AM and PM hours of darkness, allowing inmates free run of units to barter and communicate with each other, not requiring inmates to have their IDs with them during Out Counts, not requiring the inmates to comply with simple rules such as standing during standing count and any number of concessions that have been made by management.  All of these concessions were made verbally and when ever problems arose Unit Floor Officers were blamed for the failure.

This has resulted in an attitude among the inmates that they are in charge of the facility, with inmates directly disobeying directives from staff even shouldering into staff members in the hallway.

DOR's written to address issues such as, violations of pod rules, possession of contraband, and derogatory sexual comments made to female members of staff, etc., are being dismissed by the DHO or worse are being disposed of before ever reaching a hearing.  This has sent a clear message to the inmates, that they will not be held accountable for wrong doing and has made staff powerless to effect any real change or establish order.

These decisions, made by Unit Managers, have been universally opposed by floor staff and their objections have been ignored by Management.  Let me say this again, Management is ignoring the objections of their floor staff to these decisions.

Norma Rodriguez was one of the most incompetent of the Unit Managers, so much so that we at the Idaho Correction Center collectively breathed a sigh of relief when she resigned.  Some of the decisions she made directly led to inmate assaults, for example, allowing inmates to leave their cells during a power failure in the DEF Unit.  Yet no disciplinary action was ever taken against Norma Rodriguez.

Now the State of Idaho has become aware of some of these decisions, and has required a written plan of action from CCA regarding the gross mismanagement of DEF.  The response of

2

EXHIBIT  I

Management has been to blame the floor officers who opposed the policies of Unit Managers for the failure of those same policies.  Do you see the problem?

This in not tolerable.  Norma Rodriguez and the other Unit Managers know that it is their decisions that have resulted in the breakdown of order at Idaho Correctional center, yet they continue to blame staff members who are doing the best they can, often with inadequate sleep due to severe under staffing.  They need to be held accountable for their mismanagement and incompetence.

Shift Change during mass movements.

Shift changes is taking place while the hallways are filled with Inmates during Mass Movements and moves to the Dining Facility.  This is resulting in Officers and Staff moving in the hallways with Inmates without any equipment.  The inmates know that these Officers do not have radios and can not call for help.  I have heard reports from other officers of being bumped into and shoulder checked in the hallway by inmates during shift change.  This has happened to me personally.

The building schedule needs to allow for shift change to take place during an Inmate Cease Movement.

Solution?

I would suggest that the Warden, his assistants, the personnel manager and all staff involved in the Ghost Worker scheme be fired and charged with Felony Fraud and Conspiracy.  This for placing names on the shift roster of people who were absent from the area or not present within the building.

An investigation into the role of Unit Management in the breakdown of units such as DEF and JKL needs to be done by an outside agency.  A number of these Unit Managers and the Chief of Security, need to be replaced with competent leadership.

There needs to be limits placed on overtime so that more that half a shift can not be held over and consecutive 16 hour shifts need to be stopped.

Appoint an Ombudsman who reports to a level above the Warden of ICC on behalf of the staff to address issues that as of now are being openly ignored.

Require all policy adjustments by Unit Managers be placed in writing and totally disallow the use of verbal instruction.

This would be a start and might restore faith in CCA.  Might….

In conclusion, the staff of Idaho Correctional Center are outraged by the statements made by Norma Rodriguez, since she more than anyone is responsible for the break down of every unit she has been responsible for through her ill advised decisions which were all opposed by staff members at the time.

No one listened then, maybe someone will listen now.

!SIG:50a4ff9a190461761371823!

EXHIBIT  I

EXHIBIT  I