Wyatt Johnson
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile: (208) 853-0117
Johnson ISB: 5858

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, AND RAYMOND BRYANT<br>Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.<br>Defendant. | Case No. 1:12-CV-559-EJL<br><br>MEMORANDUM IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER |

The Plaintiffs, by and through their counsel of record, ANGSTMAN JOHNSON, move the Court pursuant to F.R.C.P. 16(a)(4) to modify the scheduling order (Dkt 18) entered in this case. Specifically, they request to move the deadline for amendment of pleadings, and joinder of parties currently scheduled for June 4, 2013, to September 4, 2013.

## I. FACTS AND BACKGROUND

On November 9, 2012, the Plaintiffs filed the initial complaint in this matter.[1] On December 14, 2012, CCA accepted service of the complaint. On January 14, 2013, the deadline for answering the complaint, CCA filed its first motion to dismiss the complaint rather than filing an answer.

On December 11, 2012, the Court ordered parties to file a litigation plan on or before January 24, 2013, with the scheduling conference to be held on February 7, 2013.

Pursuant to local rule 16.1, on or before January 17, 2013, counsel for the parties were required to meet and confer to discuss the subjects listed in the rule. Although, counsel for Plaintiffs, TJ Angstman, and counsel for CCA, Kirt Naylor, initially discussed the trial schedule, they were unable to agree on a deadline for amendment of pleadings due to concern that CCA would not be prompt in responding to discovery. (Aff. Angstman.)

The first conference between counsel did not resolve or discuss any issues regarding initial disclosures, the number and length of depositions, electronic discovery, or discovery plan. On January 22, 2013, counsel for Plaintiffs sent correspondence to counsel for CCA in an effort to more clearly craft a discovery plan. (Aff. Johnson, Ex. 1.) In particular, with respect to the initial disclosures, and in order to avoid later disputes, Plaintiffs' counsel provided CCA a focused and detailed list of documents and electronically stored information in the possession of CCA that are reasonably anticipated to be used in support of CCA's probable defenses. The intent of the letter was to clarify the rule 16.1 issues as well as to expedite the process of making

[1] On January 18, 2013, Plaintiffs filed their first amended complaint.

documents available as required by F.R.C.P. 26(a)(1). Counsel for CCA never responded to the January 22, 2013, letter.

In anticipation of difficult discovery, Plaintiffs initially requested that the Court schedule the deadline for amendment of pleadings and joinder of parties on October 8, 2013. On January 25, 2013, the Court entered the Scheduling Order with the deadline for amendment of pleadings, joinder of parties, pre-ADR discovery set on June 4, 2013.

On January 31, 2013, CCA mailed its initial disclosures. (*See* Aff. Johnson, Ex. 2.) The initial disclosures were not actually to be delivered until February 4, 2013. CCA's initial disclosures gave general identification of potential witnesses and a list of documents. However each document disclosure was qualified by the statement that the document would only be "disclosed upon entry of protective order." (Aff. Johnson, Ex. 2.)

Promptly upon receipt of the initial disclosures, Plaintiffs' counsel emailed CCA's counsel and asked to make "immediate arrangements to inspect and obtain copies" of the items listed in the initial disclosures. (Aff. Johnson, Ex. 3.) The February 4, 2013, email also repeats the list of items raised on the January 22, 2013, letter which were identified by Plaintiffs' counsel as within the scope of F.R.C.P. 26(a)(1)(A)(ii) and give notice that they were not listed in the initial disclosures. The email asks CCA to supplement its disclosures and further, to make arrangements, that week, to allow inspection of the identified materials. (*See* Aff. Johnson, Ex. 3, 4.)

In response to Plaintiffs' request to inspect documents, CCA said that it would require a protective order before producing documents. Plaintiffs' counsel responded that they had agreed to no protective order, they had no specific discussions, but had responded during initial

discussions with CCA's counsel that Plaintiffs would not be agreeing to a "sweeping" protective order to cover information that is not in need of protection. (*See* Aff. Johnson, Ex. 5, 6.)

On February 7, 2013, CCA's counsel provided a proposed protective order for comment, and also informed Plaintiffs' counsel that CCA would be filing a motion to stay discovery pending determination of its motion to dismiss. (Aff. Johnson, Ex. 7.) CCA then moved to stay discovery on February 8, 2013. (Dkt 20.) Plaintiffs briefed and filed an opposition to CCA's motion to stay discovery on February 15, 2013. (Dkt. 21.)

After responding to the motion to stay discovery, Plaintiffs served their first set of interrogatories and requests for production by fax on February 20, 2013. (Aff. Johnson, Ex. 8.) The interrogatories requested the identity of persons to be joined in the reason that such parties should be joined. (Aff. Johnson, Ex. 8, Interrogatory No. 1.) The requests for production seek documents that are critical to the development of the Plaintiffs' case, and which are the possession and control of CCA including: CCA's state contract; contract monitor reports; operating procedures pertaining to the attack at issue; documents regarding the Plaintiffs' medical care they received from CCA; documents regarding the security ratings of the inmates involved with the attacks; the applicable CCA policy and procedure manuals that were in effect at the time of the attacks; unit log books, shift log books, and other activity logs that would identify exactly who the guards and other staff were who were working at the time of the attacks and surrounding relevant times; time records to determine what guards and staff identified as being present at relevant times were actually on site or fictitiously logged as being present when they were in fact not; corporate documents including its charter, bylaws, certificate of incorporation, and other documents identifying that entity, or any subsidiary or affiliated entities involved with the operation and management of ICC; as well as other information relevant to the

relevant facts and circumstances of the case. (Aff. Johnson, Ex. 8.) The information contained in this discovery will clarify the roles that certain individuals or entities other than ICC may have played in the events at issue, the allocation of responsibility and duties between ICC and its various employees with respect to the incidents at issue, and may in fact uncover new specific violations arising from the incident, which justify additional specific allegations within the complaint.

After responding to CCA's motion to stay discovery, Plaintiffs' counsel provided a detailed response to CCA with objections over the proposed protective order. (See Aff. Johnson, Ex. 9). Plaintiffs' counsel objected to, among other things, allowing CCA to unilaterally designate "potentially" confidential information, without any description of the material or specification of why it would be confidential. Plaintiffs' counsel proposed that CCA provide a combination of redacted and unredacted copies of documents with sensitive information so that the redacted copies can be used in Court, or the claims of confidentiality could be specifically challenged. Plaintiffs' counsel also made certain other discreet objections including the fact that it was inappropriate to ask Plaintiffs' counsel not to seek discovery through other means, such as public records requests. CCA did not directly respond to Plaintiffs' objections or suggestions on the protective order. To the contrary, CCA responded that it would not be responding to discovery until the Court ruled on the pending motion to stay discovery. (Aff. Johnson, Ex. 10.)

But for the motion to stay discovery, the ordinary deadline for CCA to respond to written discovery was March 25, 2013. CCA provided no discovery responses. (Aff. Johnson, Para. 9.) On March 28, 2013, Plaintiffs' counsel contacted CCA's counsel in an attempt to meet and confer on the non production of discovery. (Aff. Johnson, Ex. 11.) CCA repeated its insistence

that it would not be participating in discovery until the Court ruled on the pending motion to stay discovery. (Aff. Johnson, Ex. 11.)

After CCA's refusal to respond to discovery, Plaintiff's considered an immediate motion to compel. However, because the only objection raised by CCA was whether it must respond while the motion to stay discovery was pending, and because that issue has already been fully briefed to the court, an additional motion to compel would be futile. In addition, on April 9, 2013, CCA's counsel wrote the Plaintiffs' counsel to ensure that CCA would "not oppose any reasonable amendment to the case management deadlines that might be caused by the motions to stay/protective order." (Aff. Johnson, Ex. 12). Therefore, Plaintiffs did not file a motion to compel at that time.

On April 19, 2013, the Court denied CCA's motion to stay discovery and ordered that it would have thirty (30) days from the date of that order to respond to outstanding discovery requests (until May 19, 2013). (Dkt. 44.) On May 6, 2013, CCA proposed another request for protective order, suggesting a stipulation to the protective order entered by stipulation in the *Riggs* and *Kelly* cases (Aff. Johnson, Ex. 13.)

Between May 6, 2013, and May 8, 2013, counsel exchanged emails with Plaintiffs explaining, again, that the overbroad designation of essentially all information as confidential, without any specific identification of what specifically CCA intended to designate as confidential or the reason why. Plaintiffs' position is the proposed order was overbroad and unworkable. (Aff. Johnson, Ex. 13.) Plaintiffs' objections are legitimate, not just in terms of workability, but also based on the apparent conduct of CCA under the *Riggs* and *Kelly* protective order. Under that protective order, CCA apparently produced approximately ten thousand (10,000) pages of documents, all of which were designated as "confidential" despite the fact that many were likely,

not. (Aff. Johnson, Para. 15.) Plaintiffs' wish to avoid being subject to an abusively overbroad protective order.

In an effort to move discovery forward, Plaintiffs' counsel, again, proposed that CCA make a specific designation of the information to be protected as well as a simple statement as to the reasons why. (Aff. Johnson, Ex. 13). Rather than engage in any detailed discussion with counsel, CCA opted to respond with a second motion for protective order on May 9, 2013.[2]

As of the date of this brief, Plaintiffs anticipate that CCA will continue to withhold relevant discoverable information until the Court rules on the second pending motion for protective order.

CCA has withheld relevant discoverable information which may materially impact Plaintiffs' decision to amend the allegations of the complaint against existing parties, or to join additional parties. Plaintiffs anticipate substantial and voluminous discovery responses when they are produced. Plaintiffs anticipate that the voluminous responses will take significant time and effort to review. The documents CCA produces in discovery will likely raise additional questions which will require inquiry of third party witnesses or deposition discovery of CCA.

Even if discovery was finally completed on the date of this motion, there would likely be an unreasonably short amount of time in order for Plaintiffs' counsel to review the discovery information, conduct additional discovery and determine what changes to the allegation or complaint are required.

## II. ARGUMENT

Modification of a scheduling order requires a showing good cause. In evaluating the parties "good cause" the Court focuses its inquiry on the diligence of the parties seeking to

---

[2] Plaintiffs will be responding to CCA's motion for protective order in a separate reply.

amend the scheduling order. *See Robinson v. Twin Falls Highway District* 233 F.R.D. 670, 672 (D. Idaho 2006).

The facts of this case show that Plaintiffs' had diligently attempted to obtain significant meaningful information from CCA that may materially impact the decision to amend pleadings, to add or modify claims, or add parties.

Plaintiffs were diligent in assisting in creating a workable Rule 16 order. Plaintiffs initially anticipated difficult discovery would hamper their investigation and requested a pleading amendment date to reflect such difficulties. While the Court did not adopt Plaintiffs' initial recommendation, the Court should at least recognize that the Plaintiffs made an effort to bring the issue to the Court's attention.

Plaintiffs have taken every opportunity to attempt to obtain CCA's information. First, CCA has filed a motion to dismiss rather than an answer to the complaint. Until an answer is filed, the Plaintiffs are denied even the basic outline of CCA's actual position in this case. Plaintiffs do not know if CCA admits or denies any of the allegations of the complaint, moreover, Plaintiffs are unaware of any affirmative defenses that CCA actually intends to assert. The fact that CCA has refused to formally state its position in this case materially interferes with Plaintiffs' counsel's ability to formulate discovery focused toward these issues and to consider necessary alterations to the pleading such as an amendment to add parties that CCA may claim share responsibility. It is impractical, if not impossible, for Plaintiffs' attorneys to conduct much discovery without some indication of what the actual claims are that are truly at issue in the case.

Second, prior to the deadline for initial disclosures, the Plaintiffs' counsel made a largely one-sided effort to facilitate production of relevant documents and materials that are required to be produced under F.R.C.P. 26(a) as initial disclosures. Plaintiffs' counsel opted to allow for

CCA to produce according to the rule for initial disclosures before propounding additional written discovery so that the written discovery could be more focused and efficient in developing case facts. Unfortunately, CCA did not provide responsive factual information in its initial disclosures, other than the bare identity of certain witnesses. Without the relevant documents, the named witnesses' actual involvement with the case cannot be derived from the statements in the initial disclosures.

Furthermore, at least with respect to disclosures regarding insurance, CCA's initial disclosure was obstructionist. F.R.C.P. 26(a)(1)(A)(iv) requires inspection and copying of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment…" CCA's disclosure side-stepped the issue, claiming it is "self-insured for the exposure at issue in this case." (*See* Aff. Johnson, Ex. 2, p. 13). However, based on public reports filed by CCA pursuant to its SEC reporting obligations, it appears that the statement is inaccurate and does not meet the substance of the rule. CCA's Form 10-Q Quarterly Report for First Quarter of 2013 (Aff. Johnson, Ex. 14) states, in Section 9, on page 16 that "the nature of CCA's business results and claims in litigation alleging that it is liable for damages arising from the conducts of some of its employees, inmates or others…CCA maintains insurance to cover many of the claims, which may mitigate the risk that any single claim would have a material effect of CCA's consolidated financial position, results of operations, or cash flows, provided the claim is one for which coverage is available." The fact of the matter is that CCA is insured for litigation. Whether it deems the particular litigation at issue to be covered or not, should not resolve a question of whether or not it is required to disclosed insurance agreements that "may be liable" under the circumstances of this case.

After initial disclosures became due, CCA refused to produce information absent consent by Plaintiffs to an overly broad protective order. The Plaintiffs made a reasonable objection and simply requested that CCA make a specific designation of information to be protected. There is a strong presumption against treating litigation documents as confidential. *See Kamakana v. City and County of Honolulu* 447 F.3d 1172, 1178 (9th Cir. 2006). In general, the determination of whether information is confidential and should be protected requires a compelling reason and a factual basis. *Id.* 1179. Documents should not be protected for illegitimate reasons, such as party's attempt to avoid exposure to further litigation. *Id*. The Courts are becoming increasingly critical of overly broad protective orders seeking designated information that is not legitimately confidential. "Parties frequently abuse Rule 26(c) by seeking protective orders for material not covered by the rule. Our sister circuits have repeatedly condemned the improper use of confidentiality designations." *See e.g. In re: violation of Rule 28(d)* 635 F.3d 1352, 1358 (Fed. Cir. 2011). Moreover, the mere fact of the parties' stipulation to a protective order does not necessarily satisfy the standards of Rule 26(c). *Id.* Plaintiffs' request for specific and limited protective order is entirely reasonable and well supported by the law. It should not be seen as any type of a delay or lack of diligence in the effort to obtain discovery.

Before resolving any questions of a protective order, CCA moved to stay discovery and refused to respond pending the Court's decision. Since the issue was framed for the Court between CCA's motion to stay discovery and Plaintiffs' response, additional motions to compel in the interim while the initial motion to stay discovery was pending would be futile.

The Court denied the motion stay discovery but ordered responses by May 20, 2013. However, CCA has filed another request for protective order which will inevitably delay discovery further.

Even if CCA actually elected to produce discovery on the deadline currently ordered by the Court, that would buy Plaintiffs just over two (2) weeks to examine and review what will likely be substantial, voluminous information. Forcing Plaintiffs to make final determinations regarding the final allegations of the complaint and places an unreasonable burden on Plaintiffs under the current scheduling order.

Under the current standards of pleading in the federal courts, most complaints are now scrutinized by opposing parties in an effort to avoid claims on technical pleading omissions. CCA has, in fact, raised an *Iqbal / Twombly* objection to the complaint in this case. (See Dkt 8-1, p. 9.) CCA insists that in order to survive scrutiny, the complaint must contain detailed factual content. While the Plaintiffs dispute that the federal court pleading requirements are as rigid and narrow as asserted by CCA, the point remains that the Plaintiffs, in order to have an opportunity to fully and fairly plead their case, should be entitled to at least the basic evidentiary material surrounding the facts at issue that are in the possession of CCA. It is unreasonable for CCA to tactically withhold material evidence to prevent its review and discovery until after the deadline for amending pleadings has past and then claim pleading are inadequate.

Up through the present time, the Plaintiffs have made every reasonable effort to obtain discovery of materially relevant information that is in the possession of CCA. They have been hampered by (1) CCA's refusal to formalize its position in pleadings in this case, (2) CCA's refusal to produce information based upon insistence upon overly broad and unreasonable protective orders, (3) CCA's motion s to the Court to stay and delay discovery, and (4) CCA's motions to the Court for protective orders. Under the circumstances, the Court should find good cause to extend the deadline for moving to amend pleadings.

Plaintiffs request an additional ninety (90) days in order to approximate the time lost by CCA's delays. Under the original scheduling order, CCA's initial disclosures should have included copies of the relevant documents on January 31, 2013. Under the original scheduling order that would have allowed four (4) months for the Plaintiffs to complete their investigation. The additional ninety (90) days Plaintiffs now seek is less time than has been lost based upon CCA's delays.[3]

DATED this 17th day of May, 2013.

WYATT JOHNSON
Attorney for Plaintiffs

[3] This request assumes that CCA will immediately respond to outstanding discovery and not delay in responding to any reasonable follow up discovery or depositions.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of May, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Kirtlan G Naylor** kirt@naylorhales.com, dlr@naylorhales.com, skh@naylorhales.com, sri@naylorhales.com

**Nikki R. Smith**, Attorneys for Plaintiffs
nikkismithlaw@gmail.com

**Daniel P. Struck and Tara B. Zoellner**, Attorneys for Defendant
dstruck@swlfirm.com; tzoellner@swlfirm.com

____________________________________
Wyatt Johnson