UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN KEITH PETERSON, LEON RUSSELL, CHRISTOPHER S. JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, and RAYMOND BRYANT,<br><br>                  Plaintiffs,<br><br>       vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>                  Defendant. | Case No. 1:12-cv-00559-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Defendant Corrections Corporation of America (CCA) has filed a Motion for a Protective Order (Dkt. 46) in this civil rights case. Numerous media entities (The Associated Press; Idaho Statesman Publishing, LLC; Cowles Publishing Company; The Post Company; TPC Holdings, Inc.; Lee Publications, Inc.; Pioneer Newspapers, Inc.; Idaho Press-Tribune LLC; Idaho Press Club, Inc.; The Hagadone Corporation; The Newspaper Association of Idaho, Inc.; and KBOI-TV), referred to as the "Media Coalition," have filed a Motion to Intervene (Dkt. 60) for the Limited Purpose of Opposing Defendant's Motion for a Protective Order.

The Court will grant the Motion to Intervene, and the Court has considered the

**MEMORANDUM DECISION AND ORDER  1**

arguments in the Media Coalition's briefs.

The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interest of avoiding delay, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1. Accordingly, having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

### DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Defendant requests that the Court enter a protective order to govern discovery in this case. Federal Rule of Civil Procedure 26(c) contemplates such orders:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, *for good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> 
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> (E) designating the persons who may be present while the discovery is conducted;
> (F) requiring that a deposition be sealed and opened only on court order;
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be

**MEMORANDUM DECISION AND ORDER  2**

|     | revealed only in a specified way; and |
| --- | --- |
| (H) | requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs. |

Fed. R. Civ. P. 26(c)(1) (emphasis added).

Defendant asks the Court to issue a protective order governing four types of information: (1) personal identifying information of correctional employees; (2) information regarding policies, practices, and procedures pertaining to security issues, such as tactical and investigative policies, and proprietary information such as trade secrets; (3) personal information contained in inmates' criminal, institutional, and medical files; and (4) investigative information relating to the May 5, 2012 incident that is the subject of this lawsuit. Defendant does not request that any of this information be protected from review by Plaintiffs' *counsel*, as opposed to Plaintiffs themselves or other individuals or entities not involved in this lawsuit.

The Court finds that good cause exists to enter a protective order, but it will modify the proposed protective order submitted by Defendant. As required by the Ninth Circuit, the Court will now "identify and discuss the factors it [has] considered" in finding good cause. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (internal quotation marks omitted).

1. **Safety of CCA's Employees or Former Employees**

First, the Court agrees with Defendant that "the release of personal information regarding law enforcement and corrections employees, particularly to inmates who are verified members of Security Threat Groups ("STG") and organized criminal enterprises,

**MEMORANDUM DECISION AND ORDER  3**

places not only the life and physical well-being of the employee at risk, but also the lives and physical well-being of the employees' families, neighbors, and the public." (Def. Memo. in Support, Dkt. 46-1, at 4.) There is no compelling reason Plaintiffs themselves, other inmates, or the general public need to have access to the sensitive personal information of these employees or former employees, while there is a very important reason—ensuring individual and public safety—to keep such information confidential.

Plaintiffs take issue with the proposed protective order's limitations on disclosure of employees' and former employees' personal information. (*Id.* at 7-8.) But Plaintiffs will not be prejudiced by not learning this personal information because all such information will, of course, be provided to their *counsel*. The fact that "there is no evidence specific to any of the Plaintiffs that indicate that they have ever engaged in any harassment or intimidation of CCA staff" (Pl. Memo. in Opp. at 7) does not alter the Court's conclusion that concerns of employees' or former employees' safety and security justify limiting the disclosure of personal information to counsel. Plaintiffs themselves might not pose any risk, but any information disclosed to Plaintiffs could end up in the hands of other inmates, and that information could easily be passed to individuals outside of prison who would be able to threaten, injure, or kill correctional employees or their families. There need not be a specific threat by a specific Plaintiff to justify protecting these employees' sensitive, personal information.

**MEMORANDUM DECISION AND ORDER  4**

## 2. Privacy Interests Regarding Inmates' Medical, Institutional, and Criminal Records

Closely related to the Court's concern about the safety of correctional employees is its concern that sensitive information about Plaintiffs and other inmates relating to medical history, criminal history, and prison disciplinary proceedings might find its way to other inmates or to the public in general. Some inmates within the correctional system in Idaho are members of rival gangs, and such information could be used to the detriment of inmates or the security of the institutional facility. Defendant offers the following example of institutional records that would wreak havoc if disclosed to the wrong person:

> [I]f one inmate is found to have violated prison disciplinary policies by obtaining contraband, such as drugs or weapons, his disciplinary file will contain investigative reports detailing the process by which the inmate was successful in circumventing facility security to obtain the contraband. If other inmates were to obtain this information, it would increase the possibility of inmates attempting to bring contraband into the facility.

(Def. Memo. in Supp. at 7) (citation omitted). In addition, privacy interests require that medical records, which are routinely sealed when used as evidence in litigation, be kept confidential.

Defendant also points out that "an inmate's criminal file may include information on his co-defendants and/or victims, as well as whether the inmate cooperated with law enforcement," and "[p]roviding this information to other inmates creates a significant risk that the inmate will be targeted for retaliation and/or retribution." (*Id.*) Information about an inmate's crimes could place that inmate at risk of serious harm. Sex offenders, for example, are particularly vulnerable to assault by other inmates.

**MEMORANDUM DECISION AND ORDER  5**

The above concerns are compelling and therefore justify the entry of a protective order.

3.  **CCA's Interest in its Proprietary Information**

Although CCA is performing a government function by managing the Idaho Correctional Center, it is, at bottom, a business. Businesses have legitimate interests in keeping their competitors from obtaining proprietary information such as trade secrets, as well as policies and procedures as to how they function. Revealing such information can rise to the level of economic espionage, and those who wrongfully disclose the information may in some circumstances be subject to civil or criminal liability. The Court does not see a legitimate reason why general public knowledge should include CCA's trade secrets or the inner workings of CCA's business enterprise.

4.  **Investigative Information and the Security of the Institution**

Finally, the Court has determined that institutional records regarding the investigation of the attack on Plaintiffs should be kept confidential. As Defendant points out, investigatory materials may include

> witness statements of staff and inmates (including those who are not parties to this litigation); notes of interviews of inmates (again including both Plaintiffs and non-party inmates); statements to staff from non-party inmates; investigative findings and determinations; monitored mail and telephone calls; verification of STG membership; records of prior assaultive activities by inmates (by both Plaintiffs and nonparty inmates); investigative reports; video surveillance; and photographs. Providing this information to any current or former inmate poses a significant security and safety risk to ICC staff and inmates.

(Def. Memo. in Supp. at 8.) Any such information, particularly the identification of any

**MEMORANDUM DECISION AND ORDER  6**

inmate who has aided correctional staff in the investigation of the attack, could be used to harm Plaintiffs or other inmates. The Court recognizes that prison litigation poses unique risks for both the inmates and the prison, justifying limitations on the disclosure of such information.

5.   **The Scope of the Protective Order**

Plaintiffs claim that the scope of the proposed protective order is unjustified and that the order "inappropriately shifts the burden of establishing a need for protection of sensitive information away from CCA." (Pl. Memo. in Opp., Dkt. 51, at 1.) But the proposed order does no such thing. Rather, as set forth in Paragraph 11, any party may object to the designation of a particular piece of information as confidential, and "the burden of proof with respect to the propriety or correctness of the designation of information as CONFIDENTIAL INFORMATION *will rest on the designating party*." (Def. Mot. for Prot. Order, Ex. 5, at 7 (emphasis added).) The Court will then decide whether the information is properly considered confidential and therefore subject to the protective order. It does not violate Plaintiffs' First Amendment rights to require that they object to a certain document in order to trigger Defendant's obligation to meet its burden of proof.

However, the Court concludes that some of Plaintiffs' points are well taken. Although the Court agrees with Defendant that a protective order should be entered in this case, it will not enter Defendant's proposed protective order as written. The Court has determined that, in order to inform the Plaintiffs' decision whether to object to the

**MEMORANDUM DECISION AND ORDER  7**

classification of particular information as confidential, Defendant will be required to submit, along with its discovery responses and the purportedly confidential information, a statement of reasons why each piece of information has been so designated. If Plaintiff decides to designate information as confidential, the same procedure will apply.

The statement need not be lengthy, but it must be sufficiently specific to allow the non-designating party to determine whether to challenge the "confidential" designation and submit the issue to the Court for resolution. If any party fails to provide a statement of reasons that the Court finds sufficient, the Court may determine, in its discretion, that the information should not be subject to the protective order.

**6.     The Position of the Intervenor**

The Court appreciates the Media Coalition's arguments against the entry of a protective order, but the reasons behind the Media Coalition's objections do not overcome the safety, security, privacy, and proprietary interests that justify a protective order.

The Media Coalition argues that the requested protective order "essentially states that anything produced in discovery is to be deemed confidential in nature, and thus, by definition, said material would then need to be filed under seal with this Court in regard to ANY pleadings or motions of any type." (Media Coalition Opp., Dkt. 60-1, at 6.) Although the Court is mindful of the Media Coalition's fear that their member entities will be effectively barred from reporting on this case, that fear is misplaced because the protective order is not so broad.

**MEMORANDUM DECISION AND ORDER  8**

A protective order limiting the disclosure of discovery materials does not, "by definition," mean that all publicly-filed motions or pleadings will remain "behind the cloak" of secrecy. (*Id.* at 4, 6.) The proposed protective order requires that a redacted set of documents attached to pleadings or motions be publicly filed. (Def. Mot. for Prot. Order, Ex. 5, at 4-5.) The redacted information will be only that information designated—and, if objected to by any party, adjudicated by the Court—as confidential under the terms of the protective order.

Moreover, the Media Coalition's statement that the proposed protective order "sabotages the spirit and intent of . . . the First Amendment" because it "places the entire discretion as to what is to be defined as CONFIDENTIAL INFORMATION in the hands of either party" (Media Coalition Opp. at 10) is simply inaccurate as a factual matter. "CONFIDENTIAL INFORMATION" is defined in the proposed protective order as information designated by any party as confidential "*because it contains* proprietary information (trade secret, proprietary matter, or other confidential research, development, or commercial information as those terms are used in Federal Rule of Civil Procedure 26) or confidential personal information," or "information relating to the security of a CCA facility or IDOC facility." (Def. Mot. for Prot. Order, Ex. 5, Dkt. 46-6, at 1-2 (emphasis added).) The Court will have access to unredacted copies of everything filed in this case. The Court has plenary and supervisory authority over this litigation, and it will not allow its protective order to be abused. The Media Coalition's argument overlooks the Court's inherent power to ensure that only information *properly* designated as confidential

**MEMORANDUM DECISION AND ORDER  9**

remains subject to the protective order.

Finally, the Media Coalition's worries as to what might happen during the future course of this litigation are speculative. Once a pleading or motion including redacted specific information subject to the protective order has been filed with the Court, the Media Coalition may again move to intervene for purposes of objecting to the filing under seal of that specific information. The Court will not prohibit reasonable protection of sensitive information on the theory that some of it might at some point become evidence in the judicial record.

The Court does recognize, however, the profound public interest in access to court records. Therefore, when any evidence purportedly subject to the protective order is filed with the Court in support of or in opposition to any pleading or motion, the evidence shall be filed under seal, and the party submitting the evidence must file a motion to seal that particular evidence. After briefing on the motion to seal is complete, the Court will determine whether the evidence should or should not remain sealed. At all times, the party seeking to seal the purportedly confidential evidence will "bear[] the burden, *for each particular document* it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz*, 331 F.3d at 1130.

## ORDER

**IT IS ORDERED:**

1. The Media Coalition's Motion to Intervene for the Limited Purpose of Opposing Defendant's Motion for a Protective Order (Dkt. 60) is

**MEMORANDUM DECISION AND ORDER  10**

GRANTED.

2. Defendant's Motion for a Protective Order (Dkt. 46) is GRANTED. The Court shall issue a separate Protective Order.

DATED: **August 6, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER 11**