TJ Angstman
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile: (208) 853-0117
Angstman ISB: 5738

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, AND RAYMOND BRYANT,<br>Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.,<br>Defendant. | Case No. 1:12-CV-559-EJL<br><br>MEMORANDUM IS SUPPORT OF MOTION FOR IN CAMERA REVIEW |

Plaintiffs, through counsel, hereby submit this memorandum in support of their Motion for in Camera Review.

## I. **ARGUMENT**

CCA's sweeping designation of attorney-client privilege on all the emails within their privilege logs represents an abuse of their right to withhold certain communication from discovery. The designating party has the burden of proof when claiming an attorney-client

privilege over documents requested in discovery. *See United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990); *Miller v. Pancucci*, 141 F.R.D. 292, 299 (C.D. Cal. 1992); *Duenez v. City of Manteca*, WL 684654 at4 (E.D. Cal. 2013). CCA cannot meet this burden for most if not all of the documents where privilege was claimed.

**A. CCA Provided An Incomplete Privilege Log**

The privilege log produce by CCA did not contain enough information for the Plaintiffs to properly assess CCA's privilege claims. Furthermore, CCA provided an inadequate supplemental log months after the Plaintiffs requested it.

On August 22, 2013, CCA's counsel Ms. Zoellner emailed Plaintiffs' counsel that CCA would provide a privilege log with its supplemental response to Plaintiffs' First Request for Production. *(*Affidavit of TJ Angstman in Support of Motion For In Camera Review ¶2 (Aff. of TJ); **Exhibit 1**). On August 28, 2013, the Plaintiffs received CCA's First Supplemental Response to the First Request For Production. (*Id.* ¶3). That response did not contain a privilege log. (*Id).* On September 13, 2013 this Court ordered CCA and the Plaintiffs into discovery mediation and stated "[t]he purpose of this conference will be to attempt to resolve all pending motions and all outstanding discovery disputes." Doc. 80. On October 11, 2013, Plaintiffs requested the previously promised privilege log from CCA. *(*Aff. of TJ ¶4; Ex. 2 at 2). On October 18, 2013, <u>while Plaintiffs' counsel was in mediation with CCA's counsels Mr. Struck and Mr. Naylor</u>, Ms. Zoellner emailed the Plaintiffs CCA's Privilege log. *(*Aff. of TJ ¶5; Ex. 3). CCA's first Privilege Log (Ex. 4) lacked document descriptions, Bates Nos., identifiable recipients, and other information necessary for the Plaintiffs to evaluate CCA's privilege claims. *(*Aff. of TJ ¶6). Timing the delivery of the privilege log—while the mediation was occurring— meant Plaintiffs counsel could not address the inadequacy of the privilege log while in mediation. (Aff. of TJ ¶5).

On November 4, 2013, Plaintiffs sent CCA a letter cataloging each of the privilege log's problems and requesting a revised version of the privilege log by November 11, 2013. (Aff. of TJ ¶7; Ex. 5). This letter specifically requests "a log which explicitly identifies the direct, CCed, and BCCed recipients of privilege communication." (Aff. of TJ ¶7; Ex. 5 at p.2). On November 22, 2013, CCA's counsel emailed the Plaintiffs stating that he had reviewed the privilege log and did not "see an issue with it." (Aff. of TJ ¶8; Ex.t 6). On December 4, 2013, Plaintiffs' counsel met and conferred with CCA's counsel regarding discovery. (Aff. of TJ ¶9). During that mediation, Plaintiffs counsel again requested an updated Privilege Log identifying the direct, CCed, and BCCed recipients of privilege communication. *Id.* On December 23, 2013, the Plaintiffs received a supplemental privilege log from CCA. (Aff. of TJ ¶10). This supplemental privilege did not correct the problems associated with the previous log. (*Id*; Ex 7). Furthermore, the new entries still do not identify the direct, CCed, and BCCed recipients of privilege communication. *Id*. By omitting this information, CCA has failed to meet its burden of proof in claiming attorney-client privilege.

**B. CCA Has Not Met Its Burden In Proving Communications Should Be Withheld Due To Attorney-Client Privilege.**

CCA has failed to meet its burden when designating communications as privileged by providing an incomplete and inadequate privilege log. The Plaintiffs request an Order requiring CCA to furnish the documents in the attached privilege logs to the Court for an *in camera* review. (Aff of TJ ¶6, ¶10; Ex. 4 & Ex. 7).

The Federal Rule of Civil Procedure 26(b)(5)(A) state that a privilege claim must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that…will enable other parties to assess the claim." The burden of asserting attorney-client privilege rests on the asserting party. *See United States v.*

*Abrahams*, 905 F.2d 1276, 1283 (9th Cir.1990). Courts in this circuit have held that the designating party of an attorney-client privilege claim has the burden of showing that a privilege log contains the following elements:

1. Date of document;
2. Author;
3. Primary addressee;
4. Secondary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document);
5. Type of document (e.g., internal memo, letter with enclosures, draft affidavit, etc.);
6. Client (i.e., party asserting privilege);
7. Attorneys;
8. Subject matter of document or privileged communication;
9. Purpose of document or privileged communication (i.e., legal claim for privilege); and
10. Whether the document or communication is work product or attorney-client privilege.

*Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992). If the party designating the privilege fails to meet this element test, the documents become relevant and discoverable. *Id.*

**a. CCA Failed To Identify The Addressees.**

CCA has failed to meet its burden in establishing that the communications listed in Exhibits 4 and 7 should be withheld due to attorney-client privilege. Specifically, CCA has not met Element 4 of the *Miller* test by not providing "[s]econdary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document)…" *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992). Instead of designating between primary and secondary addressee(s), CCA's privilege log only provides an "AUTHOR(S)/ RECIPIENT(S)" category. Furthermore, CCA only classifies authors and recipients using "[f]rom:" and "[t]o:" fields. This classification fails to specific if the author of the email directly sent it to the "[t]o" recipients, or if the "[t]o" recipients were merely copied on that particular email.

These nuances are significant. Omitting an element of the *Miller* test violates Fed. R. Civ. Proc. 26(b)(5)(A) by preventing the Plaintiffs from fully evaluating CCA's attorney-client claims. For example, a privilege claim over a direct message sent from a non-attorney author to an attorney recipient—such as CCA's Assistant General Counsel Cole Carter— may have more merit than if that author simply copied or blank copied an attorney. This lack of information inhibits the Plaintiffs from fully assessing each attorney-client claim. Therefore, the Plaintiffs request an Order requiring CCA to furnish to the Court for *in camera* review the documents in the attached privilege logs (Aff of TJ ¶6, ¶10; Ex. 4 & Ex. 7). Furthermore, CCA's counsel referred to both Gary Shockley and Rusty Fortennberry in the *Kelly v. Wengler* hearing as "independent investigators" yet CCA still attempts to claim privilege over their communications. (Aff of TJ ¶11; Exhibit 8). CCA can no longer claim these communications as privileged.

**b. CCA Claimed Privilege On Communications That Were Not With CCA Lawyers.**

The supplemental privilege log submitted by CCA lists multiple privilege communications between two non-attorney employees, Timothy Wengler and Kevin Myers. Ex. 7 at p.4. Although these communications may be subject to attorney-client privilege, not enough information has been provided within the privilege log for the Plaintiffs to properly assess this claim. A corporation can only claim attorney-client privilege over non-attorney communication if the corporation demonstrates that "the employee was aware that the communication was made in order to enable [the corporations'] attorneys to provide legal advice to the corporation." *Lewis v. Wells Fargo & Co.,* 266 F.R.D. 433, 444 (N.D. Cal. 2010). The description for these clams states that the email "includes instructions from the FCS legal department" but does not identify a specific attorney or the nature of these instructions. Additionally, the claims state that the communication between Mr. Wengler and Mr. Myers is "regarding" the May 5, 2012 attack.

Based on this description, the emails could have nothing to do with obtaining legal advice and may have only included boilerplate legal instruction that CCA could have easily redacted and then produced. These amorphous claims must be reviewed *in camera*.

## II. CONCLUSION

For the reasons stated herein, the Plaintiffs request an *in camera* review by the Court of the communications in both of CCA's privilege logs (Ex. 4; Ex. 7).

DATED this 30th day of January, 2014.

/s/
TJ ANGSTMAN
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2014, I filed the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR IN CAMERA REVIEW electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Kirtlan G. Naylor | kirt@naylorhales.com |
| Daniel P. Struck | DStruck@swlfirm.com |

Any others as listed on the Court's ECF Notice.

/s/

TJ Angstman