TJ Angstman
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile: (208) 853-0117
Angstman ISB: 5738

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, AND RAYMOND BRYANT,<br>Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, Inc.,<br>Defendant. | Case No. 1:12-CV-559-EJL<br><br>REPLY TO MOTION TO SET AMENDED PLEADINGS DEADLINE (DOC. 101) |

COME NOW Plaintiffs, by and through their counsel of record, ANGSTMAN JOHNSON, who object to CCA's motion to set January 17, 2014 as the deadline by which the pleadings and joinder of parties must be final. The Plaintiffs do not believe this alternation to the scheduling order is necessary, but if the Court imposes a deadline to be set for amendment and

joinder, Plaintiffs request this deadline to be set forty-five days after CCA has complied with this Court's mediation order (Dkt. 93) and have certified that they have fully responded to *Plaintiffs' First Set of Interrogatories and Requests For Production Of Documents* (the "Initial Discovery"). This will allow Plaintiffs to take depositions that would assist them in determining whether amendment or joinder is proper. The purpose of conducting discovery toward these proposed deadlines is to allow Plaintiffs to determine whether CCA's policies or policymakers are the exclusive cause of the constitution deprivations, or whether other actors may have contributed or are competing causes. Moreover, the Initial Discovery seeks to determine whether certain actors were policymakers themselves, which is critical in this analysis. *See Monell v. Dept. Soc. Servs.*, 436 U.S. 658, 691 (1978).

## I. BACKGROUND

On September 11, 2013, this Court ordered both parties to attend a discovery mediation conference in an attempt to reach an "informal resolution… to resolve all pending motions and discovery disputes." Dkt. 80 at 2. On October 10, 2013, this Court vacated the previous deadline for amendment of pleadings and joinder of parties, pending the discovery mediation with Judge Williams. Dkt. 85 at 1. After mediation, the parties agreed to a Stipulation Regarding Discovery (Dkt. 90, 91) which this Court granted on with an order ("Mediation Order") on November 18, 2013. Dkt. 93. A new scheduling order was issued on November 15, 2013 (Dkt. 92) without deadlines for amendment or joinder because discovery issues were outstanding that related to these deadlines.

## II. LEGAL STANDARD

When deciding to modify a scheduling order, the court must first determine whether "good cause" exists for the requested modification of the scheduling deadline under Federal Rule

of Civil Procedure 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Second, if the court is satisfied that the movant has demonstrated "good cause" under Rule 16(b), the court then must determine whether the party has satisfied the requirements for amendment under Rule 15(a). *Id.*; *see also Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (holding that a party seeking to amend a pleading after the date specified in the scheduling order must first show "good cause" for the amendment under Rule 16(b), then, if "good cause" be shown, the party must demonstrate that the amendment is proper under Rule 15).

Here, CCA cannot show that it has met the "good cause" standard to amend the scheduling order by setting the joinder of pleadings and parties deadline for January 17, 2013. Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment and secondarily focuses on if the opposing party will be prejudiced by the amended deadline. *Mammoth Recreations,Inc.*, 975 F.2d at 609. CCA has not diligently produced discovery requested by the Plaintiffs or diligently complied with the Mediation Order. Furthermore, CCA cannot show that the amendment to set the joinder of pleadings and parties deadline for January 17, 2013 is proper because it has not produced the materially relevant discovery in the Mediation Order that will determine the potential liability of additional parties, such as rogue employees. Finally, the Plaintiffs will be prejudiced by CCA's proposed amended pleadings deadline since CCA still has not complied with the Mediation Order.

## III. <u>ARGUMENT</u>

CCA's motion to set an amended pleading deadline before CCA complies with Court ordered discovery production prejudices the Plaintiffs. The proposed deadline of January 17, 2013 demonstrates CCA's lack of good faith in discovery. By requesting an amended pleading deadline before providing *stipulated* discovery that the Court ordered CCA to produce (Dkt. 90,

93), CCA reveals what appears to be a tactic to stonewall the Plaintiffs until the amended pleading deadline has passed. CCA even requested a deadline sixteen (16) days before the Plaintiffs were require to respond to its motion. District of Idaho Local rule 7.1(c)(1) This tactic of wielding both the litigation schedule and discovery as weapons is sanctionable conduct. *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).

Furthermore, CCA's motion misrepresents the parties' intentions. The evidence presented by the Plaintiffs in this memorandum reveals that CCA refuses to participate in both discovery and scheduling in good faith. Therefore, the Plaintiffs request that CCA's motion be denied or alternatively that an amended pleading deadline be set for forty-five (45) days after CCA certifies final responses to Initial Discovery served by Plaintiffs and complies with this Court's mediation order. Dkt. 90; 93.

**A. CCA Previously Agreed To Extend The Amended Pleadings Deadline.**

CCA's motion to set an amended pleadings deadline of January 17, 2014 demonstrates a lack of good faith and professional courtesy given that CCA had previously agreed to *extending* the amended pleadings until *after* the Plaintiffs had an opportunity to *see relevant documents and take depositions.* This demonstrates that CCA lacks the "good cause" necessary for altering the scheduling order.

The Plaintiffs have attempted throughout this litigation to quickly retrieve enough relevant information to evaluate *Monell* liablity. The amended pleadings deadline was initially June 4, 2013[1], and was rescheduled for September 4, 2013. Dkt. 53. CCA refused to produce relevant documents until after entry of a protective order but only moved for the protective order on May 9, 2013 (Dkt. 46), eleven (11) days before its discovery deadline. *See* Affidavit of TJ

---

[1] CCA sought an even earlier date of April 12, 2013 which Plaintiffs were unable to accept (Dkt.15).

Angstman ¶2 (Aff. of TJ ¶2); Exhibit 1. On July 28, 2013 Plaintiffs' counsel, Mr. Johnson, put CCA on notice that Plaintiffs would be unable to assess joinder of additional parties or amendment without receiving written discovery and subsequently conducting depositions for potential defendants. CCA was willing to stipulate to a short extension for this purpose, recognizing the dilemma Plaintiffs faced without complete responses to discovery targeted at the amendment and joinder issues. Aff. of TJ¶3; Exhibit 2.

Mr. Johnson asked Mr. Struck for an extension of the amendment deadline to allow the Plaintiffs to "make an intelligent decision on amendments." *Id.* Mr. Struck agreed to an extension allowing the Plaintiffs "extra time you need to see docs and take depositions." *Id.* With this agreement, the Court granted a 30 day extension to the amendment deadline. Dkt. 77. CCA's initial recognition that it would be inequitable to set an amended pleading deadline before it produced material documents and Plaintiffs had conducted depositions eventually proved to be transitory. Notwithstanding the agreement to extend the deadline for this purpose, CCA did not complete its responses to the Initial Discovery within the agreed upon extension, or thereafter.

CCA still has not produced relevant discoverable information which may materially impact Plaintiffs' decision to amend the allegations of the complaint against existing parties, or to join additional parties. CCA's motion to set an amended pleading deadline before Plaintiffs have seen relevant documents or taken depositions represents a lack of good faith. In addition, CCA's motion reveals an inequitable strategy to set a pleading amendment deadline before the Plaintiffs can determine whether *Monell* issues require amended pleadings. During the meet and confer efforts in December the Plaintiffs were willing to agree to a new deadline after complete responses to the Initial Discovery were served, but CCA failed to respond to this proposal. Aff. of TJ¶ 13.

**B. CCA's Cannot Claim "Good Cause" for Scheduling Order Delays**

CCA's continued refusal to produce material documents, despite Court intervention (Dkt. 80, 81, 90, 91, 93), has slowed litigation and increased costs unreasonably. Aff. of TJ¶ 19. The Plaintiffs have exhausted their efforts to extract material documents from CCA regarding previously described amendment/joinder issues.

***i. The Defendant Delinquently Responded To Plaintiffs' First Set Of Interrogatories and Requests For Production***

CCA's tardy response to the Initial Discovery demonstrates the absence of "good cause" that is necessary to warrant the proposed changes to the current scheduling order. After numerous setbacks and delays during the initial stages of litigation (*See* Aff. of TJ ¶4-6; Exhibit 3), on April 19, 2013, this Court entered an order denying CCA's motion to Stay Discovery and Defendant's motion for a Protective Order. Dkt. 44 at p. 3. With that order, this Court set a new deadline of May 20, 2013 for CCA to respond to any outstanding discovery requests. *Id.*

The Plaintiffs did not receive CCA's response to the Initial Discovery on or before May 20, 2013, the thirty (30) day discovery deadline set by Doc. 44. *See* Aff. of TJ ¶4; Ex 3. On May 22, 2013, Plaintiffs' counsel Mr. Johnson emailed Mr. Naylor asking when CCA's responses would arrive. *See* Aff. of TJ ¶6; Ex. 5. Mr. Naylor responded, inaccurately, that the responses were mailed from Defendant's Counsel Mr. Struck's firm on May 20, 2013. *Id.* However, Plaintiffs did not receive any documents from the Defendant that week. *Id.* Finally, on May 28, 2013, the Plaintiffs received CCA's objections to Initial Discovery via email from Mr. Naylor. *Id*. The Plaintiffs eventually discovered that CCA deposited them in the mail on May 22, 2013, but used the wrong address, such that the mailbox rule under Fed.R.Civ.P. 6(d) was not satisfied. *See* Aff. of TJ ¶7; Exhibit 6.

***ii. CCA's Responses Withheld Information Relevant To Determining Monell Liability vs. Rogue Employee Liability***

CCA's responses to the Initial Discovery initially did not contain any information regarding the Monell, policymaker liability discussed above. Noticeably absent from this production, among other items, was information regarding court mandated contract monitor reports from the *Kelly* settlement, underlying payroll and bonus information at the ICC facility, and any documents relating to the independent investigation CCA conducted to determine the extent of understaffing at the ICC facility. *See* Aff. of TJ¶8; Exhibit 7. In his July 10, 2013 email Mr. Johnson addressed CCA's lack of production of documents, failure to provide addresses of potential witnesses identified in CCA's initial disclosure (documented extensively in Dkt. 64-1 at 2), and failure to make Warden Wengler available for deposition. *Id.* Mr. Johnson expressed the urgency of retrieving these documents at the end of his email by reiterating "I would like the supplements as soon as reasonably possible so that we may begin working through the critical depositions." *Id.*. However, on August 28, 2013, CCA produced discovery supplemental response without remedying the issues addressed by Mr. Johnson. Specifically, CCA failed to produce staffing documents and records that would reveal whether the unsafe condition at ICC was a result of actions by CCA corporate policy or rogue employees. *See* Aff. of TJ ¶9; Exhibit 8. This lack of information in these responses prevented the Plaintiffs from evaluating whether CCA had a corporate policy of deliberate indifference under *Monell*, or whether these unsafe conditions can be attributed to a rogue employee. *Id.*

***iii. CCA Objections Demonstrate Bad Faith And Prejudice The Plaintiffs***

CCA's objections to discovery requests demonstrate its failure to cooperate under Fed.R.Civ.P. 1 to allow for the "just, speedy and inexpensive determination" of this case by responding to the scope of discovery allowed by Fed.R.Civ.P. 26(b)(1). This failure to cooperate

has prejudiced the Plaintiffs and does not support a claim of "good cause" to alter or amend the scheduling order.

CCA failed to produce the majority of the documents requested in the Plaintiffs' Initial Discovery offering boiler-plate objections even though the Plaintiffs later discovered the existence of responsive documents. The majority of the Plaintiffs' initial discovery focused on retrieving information that would expose *Monell* issues. Specifically, Request For Production No. 17 asked for "correspondence and reports between CCA and the independent investigators obtained by CCA to review polices at the prison, as reported in the Idaho Statesman on February 5, 2013." *See* Aff. of TJ ¶10; Ex. 1. CCA refused to produce any documents and claimed that the term "independent investigators", among others, was "vague and ambiguous." However, on August 7, 2013 during the *Kelly v. Wengler* contempt hearing Mr. Struck explicitly refers to attorneys of the firm Baker Donelson that CCA hired to investigate understaffing as "independent investigators". Dkt. 108-10 at 2. Mr. Struck stated that "CCA hired some attorneys from Tennessee, a law firm in Tennessee, Rusty Fortenberry and Gary Shockley, both of whom are independent investigators they don't represent CCA in any other capacity other than to conduct investigations."*Id.*

The "independent investigation" and the correspondence with the "independent investigator" is likely to reveal material evidence to which party contributed to understaffing at ICC and therefore caused the constitutional deprivations alleged in this case. This example is direct evidence that CCA cannot meet the "good cause" standard for altering or amending the scheduling order. One could infer that CCA instead would prefer to run out a scheduling clock before the Plaintiffs have seen the evidence material to running deadlines.

**C. CCA Has Failed To Comply with the Mediation Order.**

On September 11, 2013, this Court ordered the parties to attend a discovery mediation conference before United States Magistrate Judge Mikel H.Williams. Dkt. 80. On October 18, 2013, Mr. Angstman and Ms. Smith attended the discovery mediation on the Plaintiffs' behalf. *See* Aff. of TJ ¶11. After the mediation, the parties entered into a Stipulation Regarding Discovery, and the Mediation Order was entered thereafter by the Court. Dkt. 90, 91, and 93. CCA failed to comply with the Mediation Order. This failure to cooperate has prevented the Plaintiffs from identifying other potential liable parties and demonstrates the absence of "good cause" necessary to alter or amend the scheduling order.

**i. *CCA has not produced the supporting documentation to the warden bonus reports***

CCA has not complied with paragraph 3 under the "Current Scope of Initial Discovery" section of the Stipulation Regarding Discovery (Dkt. 90). CCA has not produce the supporting documentation to the warden bonus reports requested for in Request for Production 10. *See* Aff. of TJ ¶ 12. This lack of production forced the Plaintiffs to file the Motion to Compel (Dkt. 96) and subsequent Reply (Dkt 109). After the mediation, Plaintiffs repeatedly requested the supporting data and documentation to Mr. Wengler's bonus reports. *See* Aff. of TJ ¶13-14; Exhibit 10. This type of information is important when considering *Monell* liability because bonuses for conduct that creates a substantial risk of harm is evidence of corporate policy. The Plaintiffs wish to evaluate this before any deadline on amendment or joinder.

**ii. *CCA has failed to produce mutually agreed upon employee files***

CCA has not complied with paragraph 4 under the "Current Scope of Initial Discovery" section of the Stipulation Regarding Discovery (Dkt. 90). The Plaintiffs have requested CCA files of employees who could be policymakers under *Monell*, or who CCA could claim were acting without policy or policymaking authority. CCA has only agreed to five (5) out of the

sixteen 16 employee files requested by the Plaintiffs. *See* Aff. of TJ ¶ 13, 22; Exhibit 15. The review of these personnel files will show whether these parties had authority, delegated or otherwise, such to be policymakers or if they were rewarded or disciplined for their actions.

The Plaintiffs only just received personnel files for the terminated ICC Chief of Security Shane Jepsen, and Unit Manager Norma Rodriguez. *See* Aff. of TJ ¶ 12. As of the date of this reply, the Plaintiffs still have not received the personnel file for ICC Assistant Warden of Operations Kessler to which CCA agreed to produce in its January 6, 2014 correspondence. *See* Aff. of TJ ¶ 21; Exhibit 15. Moreover, CCA has refused to produce personnel files for Kevin Myers and Steven Conry despite evidence of their direct involvement in setting ICC budget goals and staffing patterns. Dkt. 110 (Sealed) MTC REP EX. 7; 8. CCA's personnel files of employees with direct involvement in security staffing decisions will likely lead to relevant discoverable information including evidence of whether a rogue employee is ultimately responsible for the unsafe conditions that led to the Plaintiffs' injuries.

**iii. *CCA has not identified ESI search terms***

CCA has not complied with paragraph 5 under the "Current Scope of Initial Discovery" section of the Stipulation Regarding Discovery (Dkt. 90). The Plaintiffs met and conferred with CCA on December 4, 2013, to identify ESI search terms but CCA was not prepared during that meet and confer to discuss ESI search terms. *See* Aff. of TJ ¶ 13. Nearly every request for production seeks "documents" which Plaintiffs have defined to include electronic communications such as emails and written correspondence. Dkt. 109 at 7. The purpose of the ESI provisions of the Mediation Order was to get CCA to suggest, and obtain input from the Plaintiffs, search terms that would be used to locate responsive emails and other electronic evidence on the numerous requests where no production had been received. Like internal emails

regarding inmate assaults, ESI search terms will uncover relevant discoverable information related to Monell policymaker liability, for instance whether the employees who were fired had delegated authority or incentivized under the bonus plan for staffing reductions.

**D. The Defendant Did Not Meet And Confer In Good Faith**

CCA's failure to make a good faith effort to participate in the meet and confer sessions is evidence of the lack of "good cause" necessary to support a motion to alter or amend the scheduling order CCA has forced the Plaintiffs to seek court assistance in producing these documents and has prevented the Plaintiffs from analyzing Monell liability vs. individual liability which could be a defense for CCA, as discussed herein. The Plaintiffs stipulated to the Mediation Order due to the representations that further discovery issues could be resolved through correspondence and telephonic meet and confer sessions. Unfortunately, CCA has not participated in these practices with good faith. *See* Aff. of TJ ¶13; 14.

At the Plaintiffs suggestion (Aff. of TJ ¶15; Exhibit 11), counsel participated in a December 4, 2013, telephonic meet and confer. *See* Aff. of TJ ¶13. Mr. Angstman represented the Plaintiffs and specifically requested the discovery the Court ordered CCA to produce in the Mediation Order. *Id.* The Defendant, though, was not prepared to discuss this information during the meet and confer, and Mr. Angstman did not receive any firm commitments from the Defendant. *Id.* On December, 6, 2013, Mr. Angstman followed up with a detailed email describing exactly what information Plaintiffs needed. *See* Aff. of TJ ¶14; Exhibit 10. However, the Defendant refused to supply the Plaintiffs with this information. *Id*. The parties reached an impasse on December 16, 2013, resulting in the filing of a Motion to Compel. Dkt. 96. The Plaintiffs are concerned about the usefulness of the confer sessions due to CCA's record during discovery, to date. *See* Aff. of TJ ¶17-19. With these "informal" tools no longer at the Plaintiffs'

disposal, the Plaintiffs have little choice but seek court assistance regarding discovery. *Id.* The Plaintiffs expended significant resources litigating this case, which demonstrates Plaintiffs effort to resolve matters without Court assistance, and CCA's lack of "good cause" to amend the scheduling order. *See* Aff. of TJ ¶18. CCA's lack of cooperation renders an amended scheduling order prior to depositions and fully supplemented discovery an inequitable solution.

**E. CCA Has Defined The Meet And Confer Discussions As Informal Discovery And Refuses To Participate In "Informal Discovery" As A Matter Of Policy**

CCA's stance towards "informal discovery" has unnecessarily prolonged the discovery stage of litigation, prevented the Plaintiffs from examining Monell vs. individual liability. On November 19, 2013, Mr. Angstman told Defendant's counsels he was under the impression, based on statements made during the mediation, that both parties had agreed discovery "matters could be resolved more informally, going forward." *See* Aff. of TJ ¶19; Exhibit 13. Mr. Struck appeared to agree to informal discovery practices by responding "[t]hank you. We are working on your request…"*Id.* Additionally, on November 19, 2013, in a separate communication thread, Mr. Angstman suggested that the amended pleading deadline be set forty-five (45) days after CCA had provided the discovery stipulated to in the Mediation Order. *See* Aff. of TJ ¶20; Exhibit 14. Hearing no objections, the Plaintiffs assumed CCA would treat informal emails and telephonic discussions regarding discovery as "meet and confer" efforts to resolve the numerous objections made by CCA to discovery requests. *Id.*

However, on January 6, 2014, CCA abruptly changed its position in a formal letter entitled "Re: December 31, 2013 Correspondence." Aff. of TJ ¶21; Exhibit 15. In that letter, Mr. Naylor refused to respond to Mr. Angstman's December 31, 2013, request for CCA's ESI search logic that it has not yet provided. *Id.* Instead, Mr. Naylor stated "[a]s you know, we have no obligation to respond to informal requests for information." *Id*. CCA has effectively treated the

meet and confer efforts as "informal discovery" it does not respond to such request seemingly as a matter of policy. This practice has forced the Plaintiffs to serve 223 formal requests for production[2].

This lack of a cooperative spirit frustrates the Plaintiffs, needlessly increases the cost of the litigation, and fills the Court's docket with discovery motions rather than merits based motion practice. Despite the Plaintiffs' good faith efforts to participate in both formal and informal discovery and to resolve discovery disputes, CCA failed to provide documents requested in January of 2013. *See* Aff. of TJ ¶22; Exhibit 16. Instead, CCA has not reciprocated the Plaintiffs' counsels' spirit of courtesy and cooperation. CCA's piecemeal discovery production, in light of Plaintiff's known need to have complete responses to the Initial Discovery before depositions, does not demonstrate the type of "good cause" necessary to amend the scheduling order.

Without the documents and data underlying the CCA employee bonus programs, personnel files, or internal communication the Plaintiffs cannot evaluate the existence of other potentially liable parties under the *Monell* standard.

**IV. CONCLUSION**

At issue in this motion is CCA's "good cause" to amend the scheduling order. Plaintiffs do not believe CCA's efforts to avoid discovery are normal and expected, and therefore the scheduling order should not be altered or amended to benefit CCA. Refusing to allow CCA to

---

[2] Plaintiffs chose to serve new requests rather than trouble the Court with motion practice when meeting and conferring revealed that CCA's objections were resulting in documents being withheld, coupled with CCA's refusal to produce anything that was not requested explicitly, rather than by reasonable interpretation of the language used in the requests. This has not been as productive as expected because CCA also limits the scope of its responses to a narrow view that the claim arises only out of the staffing level present at the time of the attack.

alter or amend the scheduling order is not a sanction[3], and is reviewed for an abuse of discretion. *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001). It is for the Court to decide whether the record supports a finding of "good cause" for CCA's motion to alter or amend the scheduling order. The Plaintiffs contend the record demonstrates otherwise.

DATED this 3rd day of February, 2014.

/s/
TJ ANGSTMAN
Attorney for Plaintiffs

[3] The Plaintiffs asked in their Motion to Compel, as a sanction, that CCA not be permitted to file additional dispositive motions. It is unclear, given the totality of the problems created by CCA's efforts in discovery whether that sanction is sufficiently harsh. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011)., establishes the Court's power to sanction CCA, sua sponte, upon application of a five part test, which if properly applied, is given deference on appeal.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3RD day of February, 2014, I filed the foregoing MOTION TO COMPEL electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Kirtlan G. Naylor | kirt@naylorhales.com |
| Daniel P. Struck | DStruck@swlfirm.com |

Any others as listed on the Court's ECF Notice.

/s/

TJ Angstman