T.J. Angstman
Wyatt Johnson
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho 83703
Telephone: (208) 384-8588
Facsimile: (208) 853-0117
Angstman ISB: 5738
Johnson ISB: 5858

Nikki Smith
210 12th Ave Road
Nampa, ID 83686
Telephone: (208) 466-1800
Facsimile: (208) 466-1803
Smith ISB: 9030

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, and RAYMOND BRYANT,<br><br>     Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>     Defendant. | Case No. 1:12-CV-559-EJL<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

Plaintiffs submit this memorandum of points and authorities in support of their motion for partial summary judgment against Defendant Corrections Corporation of America's ("CCA") as follows.

## I. FACTS AND BACKGROUND

The Plaintiffs' lawsuit arises out of an inmate gang attack on the Plaintiffs on May 5, 2012 at CCA's Idaho Correctional Center (ICC). Statement of Undisputed Facts (SUF) at ¶1; The First Amended Complaint for Damages, and for Declaratory and Injunctive Relief Dkt. 14 ("Complaint") alleges that CCA knowingly fostered unsafe conditions at ICC that led to the Plaintiffs' injuries. *Id.*

This Motion for partial summary judgment focuses on: 1). CCA's widespread custom and practice of gang clustering in DEF at ICC, 2). CCA's widespread custom and practice of understaffing mandatory posts at the ICC facility, and 3). CCA's affirmative defenses and its failure to respond to the Plaintiffs' contention interrogatories regarding these affirmative defenses. On June 18, 2013, CCA filed its Answer to the Plaintiffs' First Amended Complaint and listed fifteen affirmative defenses to the Plaintiffs' Complaint. *See* SUF at ¶4.[1]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the Plaintiffs show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement be that there is no

---

[1] On July 5, 2013, the Plaintiffs served CCA with Interrogatories Nos. 4, 5, 6, 7, and 8 requesting CCA to provide evidence supporting its affirmative defenses. *See* Doc 143-12; Affidavit of Thomas J. Angstman (Aff. of Angstman) at ¶2. On August 30, 2013, CCA responded to the Plaintiffs Interrogatories but failed to properly answer or supplement these responses as required by Rule 26(e) and Rule 16(c) by not identifying any evidence to support its defenses. Dkt. 143-12; *See* Aff. of Angstman at ¶3.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 2
A◆J; Matter: 8591-003

genuine issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). If the nonmoving party fails to respond with sufficient evidence to create a genuine issue of material fact on the essential element, the moving party is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986).

### III.  *MONELL* LIABLITY

The Plaintiffs bring their claims under 42 U.S.C. § 1983, the civil rights statute. The Eighth Amendment to the U.S. Constitution prohibits the imposition of "cruel and unusual punishments." It follows that prisons have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Elements of *Monell* liability are: (1) the plaintiff was deprived of a constitutional right; (2) the defendant had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). A custom or practice under *Monell* is "persistent and widespread" to the degree that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation marks omitted).

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 3
A♦J; Matter: 8591-003

This circuit has long recognized that a custom or practice can be "inferred from widespread practices...'" *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. Cal. 2011). Custom and usage of persistent and widespread practices by agents and employees may be attributed to an entity "when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge ...that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

## IV.    CCA'S CUSTOM OF GANG CLUSTERING IN DEF AT ICC

The Plaintiffs ask this Court to enter partial summary judgment finding that between 2010 and May 5, 2012, CCA had a widespread custom and practice under *Monell* of clustering gangs or "Security Threat Groups" (STG) together in the DEF unit at ICC.   The Idaho Department of Corrections (IDOC)'s STG management policy mandates that gangs should not be clustered but instead should be dispersed throughout the facility. *See* SUF at ¶5. There is no genuine dispute of material fact that CCA never dispersed gangs in DEF. Instead, CCA clustered gangs according to their "walks." *See* SUF at ¶6. According to Idaho Department of Corrections' 30(b)(6) deposition, in ICC's close custody units including DEF, CCA "created groups, they called them walks, where they would take a specific tier... that they would put a specific gang into each one of these areas." Exhibit 2 at 28:12-16. The attackers were part of a walk housing 16 member of the cooperative gangs "Aryan Knights" and "Severely Violent Criminals. *See* SUF at ¶1, 6. This custom of clustering gangs into walks was not in accordance with Idaho Department of Corrections policy and persisted in the ICC facility from 2010 until the May 5, 2012 attack. *See Id.* at 28:12-29:2.

Furthermore, CCA never dispersed gang populations within the DEF unit before the attack on the Plaintiffs.. *See* SUF at ¶8. When asked by the Plaintiffs in Interrogatory No. 23 to

identify all action plans implemented at ICC to disperse STG members within the DEF unit, CCA failed to identify any STG integration plan. SUF at ¶7. CCA stated in their motion to dismiss that gang desegregation will likely always remain a work in process. *See* Dkt. 19-1 at p. 16-17. In addition, Warden Wengler admitted in his deposition that integrating gang members at ICC had not occurred in the DEF unit by August 10, 2012. SUF at ¶9.

This evidence offered by the Plaintiffs proves there is no genuine dispute of material fact that CCA had a widespread custom and practice of clustering gangs the DEF unit. Instead, cooperative gang members were housed together in walks in the DEF unit. Therefore, the Plaintiffs request that the Court enter partial summary judgment in their favor that as a matter of law, CCA had a widespread practice and custom of clustering gangs together in the DEF unit of ICC between 2010 and May 5, 2012.

## V.    UNDERSTAFFING AT ICC

The Plaintiffs ask the Court to apply offensive nonmutual issue preclusion in regards to the widespread understaffing that occurred at ICC in 2012. Additionally, the Plaintiffs ask this court to enter partial summary judgment that CCA's practice of understaffing mandatory posts ICC amounted to a widespread practice and custom under *Monell*.

### A. ISSUE PRECLUSION

Nonmutual offensive issue preclusion prevents "a defendant from relitigating issues which a defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979); *see also State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, (9th Cir. 2005) (noting that offensive, as opposed to defensive, nonmutual issue preclusion involves "a plaintiff seek[ing] to prevent a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against a different

party"). In *Parklane Hosiery*, the Supreme Court granted trial courts "broad discretion to determine when [offensive nonmutual issue preclusion] should be applied." *Parklane Hosiery Co.* 439 U.S. at 329; *see also Syverson v. IBM*, 472 F.3d 1072, 1078 (9th. Cir. 2007). Although the *Kelly v. Wengler* finding of contempt is on appeal, final and collateral estoppel applies. *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (per curiam) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal. . . ."); *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985) ("The federal rule on the preclusive effect of a judgment from which an appeal has been taken is that the pendency of an appeal does not suspend the operation of an otherwise final judgment for purposes of res judicata."). Moreover, Plaintiffs are in privity with the *Kelly v. Wengler* plaintiffs and are entitled to the application of collateral estoppel against CCA at trial. *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997).

This Court, in the *Kelly v. Wengler* contempt hearing, noted that CCA did not staff "mandatory posts ... for 4,778 hours during a seven-month period in 2012" at ICC. *Kelly v. Wengler*, 1:11-cv-00185-EJL Dkt 56 at p. 9. Furthermore, the Court noted that the understaffing was likely much worse than CCA admitted and was likely still ongoing at ICC in September, 2013. SUF at ¶13.

> It is clear that the non-compliance was far worse than the report of about 4,800 hours would lead one to believe. That figure came from attorneys CCA hired to investigate, and who primarily examined staff rosters and timecard records for the night shift from April 2012 through October 2012. Testimony showed that there were significant day shift vacancies, which would not be included in the 4,800 figure. There is also no reason to believe the problem only began in April 2012 and was solved after October 2012. Indeed, even in the weeks prior to the contempt hearings, mandatory posts were still going unfilled—thus there remains persistent staffing pressure that is the backdrop to prison employees fabricating records. The difference today is that CCA may finally be presenting an accurate picture of its inability to fully staff its prison.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 6
A◆J; Matter: 8591-003

*Id.* In its decision that ruled CCA was in contempt of court for violating the *Kelly* settlement, the *Kelly* court held that "it is clear that Defendants persistently did not comply with the staffing requirements of their contract with IDOC." *Kelly v. Wengler*, 1:11-cv-00185-EJL Dkt. 75 at 2.

Given that the *Kelly* court held that CCA persistently failed to adequately staff mandatory posts at ICC, the Plaintiffs request that this Court prevent CCA from relitigating findings of fact from the *Kelly v. Wengler* trial.

## B. CCA'S WIDESPREAD CUSTOM OF UNDERSTAFFING AT ICC

The Plaintiffs ask the Court to enter partial summary judgment that CCA's practice of understaffing mandatory posts at ICC amounted to a widespread practice and custom under *Monell*. CCA has already admitted that it failed to staff mandatory posts at ICC during a seven month period in 2012. *See* SUF at ¶13. CCA has even acknowledged that additional discovery in the *Kelly v. Wengler* lawsuit may lead to the revelation that more understaffing had occurred than it admitted to in its own internal report. *Id.* CCA's own internal report by the law firm Baker Doneleson also concludes that 4777.45 mandatory post hours went unfilled during the night shift at ICC from April 2012-October 2012. SUF at ¶10. Moreover, that report acknowledged that there was significant predication of daytime understaffing, that it decided not to investigate. *Id.* CCA's Assistant General Counsel Scott Craddick testified in the *Kelly v. Wengler* show cause hearing that he does not dispute the findings of the Baker Donelson report. *Id.* Craddick further stated in a Declaration that CCA offered to compensate IDOC in April of 2013 as a good faith attempt to remedy the night shift vacancies discovered in the Baker Donelson report. *See* SUF at ¶14.

While there may be a dispute as to the exact amount of understaffing, that dispute is not material to this motion since there is no dispute that the practice was sufficiently widespread to

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 7
A◆J; Matter: 8591-003

subject CCA to *Monell* liability. Mr. Jepsen testified in his deposition that ICC could not fill its budgeted staffing pattern with the amount of staff provided to ICC without overworking his staff, and that ICC was suffering because of a lack of staff. *See* SUF at ¶16. Mr. Jepsen had explained to Mr. Myers and Mr. Conry on multiple occasions in 2010 and 2011 that the budgeted staffing pattern provided by CCA's Facility Support Center (FSC) was not sufficient to fully staff the ICC facility. Dkt. 143-16 at p. 8. In addition, the auditing firm KPMG reviewed ICC staffing logs in 2012 and determined that over 26,000 of mandatory guard posts were understaffed or otherwise problematic. *Id.* at ¶18. Although CCA disputed the extent of the understaffing reported by KPMG, it did not dispute that understaffing occurred regularly at the ICC facility. *Id.* at ¶20. Indeed, testimony from CCA's 30(b)(6) deposition reveals that CCA had a corporate awareness of the understaffing problems ICC was experiencing as early as March of 2010. *See* SUF at ¶19.

Therefore, the Plaintiffs request that the Court enter partial summary judgment in their favor that as a matter of law, CCA had widespread custom and practice of understaffing of mandatory posts at ICC under *Monell*.

## VI. AFFIRMATIVE DEFENSES

The Plaintiffs request that partial summary judgment be entered in favor of the Plaintiffs as follows:

### 1. Affirmative Defense No. 1.

CCA is barred from raising Affirmative Defense No. 1 at trial. Affirmative Defense No. 1 states "[p]laintiffs fail to state a claim on which relief may be granted." Dkt. 57 at p. 12. This Court has already ruled that Plaintiffs have sufficiently stated a claim on which relief can be granted. Dkt. 54 at p. 20, 22. Therefore, the Plaintiffs request that the Court strike CCA's

Affirmative Defense No. 1 and bar CCA from presenting any evidence that the Plaintiffs have failed to state a claim on which relief may be granted.

### 2.    Affirmative Defense No. 2.

CCA is barred from raising Affirmative Defense No. 2 at trial. Affirmative Defense No. 2 states "[p]laintiffs failed to exhaust the available administrative remedies prior to filing suit as required by the Prison Litigation Reform Act, thereby precluding any constitutional claims." *See* 42 U.S.C. § 1997e(a). Dkt. 57 at p. 12. This Court has already ruled that the Plaintiffs exhausted their administrative remedies. Dkt. 54 at p. 20, 22. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 2 and bar CCA from presenting any evidence that the Plaintiffs failed to exhaust their administrative remedies prior to filing suit.

### 3.    Affirmative Defense No. 3

CCA is barred from raising Affirmative Defense No. 3 at trial. Affirmative Defense No. 3 states "[d]efendant had legal justification for all of it [sic] actions and performed and discharged, in good faith, each obligation, if any owed to Plaintiffs." Dkt. 57 at p. 12. CCA has not identified any evidence establishing that it had a legal justification or acted in good faith by clustering gangs at ICC or understaffing the facility. The Eighth Amendment imposes duties on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). CCA's assertion does not qualify as an affirmative defense under Fed. R. Civ. Pro. 8(c), but merely a rebuttal against evidence presented by the Plaintiffs. *See e.g., Zivkovic v. S. California Edision Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002), ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."); *In re Rawson Food Serv., Inc.,* 846 F.2d 1343, 1349 (11th Cir. 1988) ("A defense which points out a defect in the plaintiff's

prima facie case is not an affirmative defense."); *Think All Pub., LLC*, 564 F. Supp. 2d at 663 (striking negative defenses as redundant under Rule 12(f) because the defenses "simply repeat the Defendants' denial of the allegations in the complaint) (citing *Emmons v. S. Pac. Trans. Co.*, 701 F.2d 1112, 1118 (5th Cir. 1983) (stating that a negative defense is "one which tends to disprove one or all of the elements of a complaint.")). Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 3 and bar CCA from presenting any evidence that CCA had a legal justification for its actions and performed them in good faith.

### 4.      Affirmative Defense No. 4.

CCA is barred from raising Affirmative Defense No. 4 at trial. Affirmative Defense No. 4 states "[n]either Defendant's actions nor inactions violated Plaintiffs' Eight or Fourteenth Amendment rights, or any of Plaintiffs' constitutional rights." Dkt. 57 at p.12. This assertion does not qualify as an affirmative defense under Fed. R. Civ. Pro. 8(c). *See e.g., Zivkovic*, 302 F.3d at 1088. This assertion by CCA is merely a rebuttal against evidence presented by the Plaintiffs. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 4 and bar CCA from presenting any evidence that CCA's action or inaction did not violate the Plaintiffs' Eighth and Fourteenth Amendment rights.

### 5.      Affirmative Defense No. 5.

CCA is barred from raising Affirmative Defense No. 5 at trial. Affirmative Defense No. 5 states "[p]laintiffs suffered no actual injury thereby warranting dismissal pursuant to the Prison Litigation Reform Act." Dkt. 57 at p.12. The Prison Litigation Reform Act requires prisoners to show an actual injury arising from alleged violations which can come in the form of a physical injury or the commission of a sexual act. 42 U.S.C. § 1997e(e). There is no genuine dispute of material fact that the Plaintiffs suffered actual physical injuries. The Plaintiffs medical charts

created after the attack show that they did indeed suffer physical injuries. *See* SUF at ¶21. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No 5 and bar CCA from presenting any evidence that the Plaintiffs suffered no actual injury.

### 6.    Affirmative Defense No. 6.

CCA is barred from raising Affirmative Defense No. 6 at trial. Affirmative Defense No. 6 states "[d]efendant and its employees did not subjectively know of and consciously disregard a substantial risk to the safety and well-being of Plaintiffs." Dkt. 57 at p. 12. CCA has not identified any evidence establishing that its employees did not subjectively know of and consciously disregard a substantial risk to the safety and well-being of the plaintiffs. The 9th Circuit jury instructions for Eight Amendment prisoner's claim states that the plaintiffs must prove the defendant knew of and disregarded a risk to the Plaintiffs' safety. *See* United States Courts for the Ninth Circuit Manual of Model Civil Jury Instructions 9.25 *available at* http://www3.ce9.uscourts.gov/jury-instructions/node/163. CCA's assertion does not qualify as an affirmative defense under Fed. R. Civ. Pro. 8(c), but merely a rebuttal against evidence presented by the Plaintiffs. *See Zivkovic*, 302 F.3d at 1088. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 6.

Furthermore, CCA never answered the Plaintiffs' interrogatories regarding this affirmative defense and thus should be barred from presenting any evidence relating to it at trial under Fed. R. Civ. Pro.16(d)(2)(c). Dkt. 143-12 at p. 4-5. Rule 26(e) mandates that a party must supplement or correct its disclosure in a timely manner if the disclosure is incomplete or incorrect. Fed. R. Civ. Pro. 26(e); *see also Imax Corp. v. Cinema Techs.*, 152 F.3d 1161, 1166 (9th Cir. Cal. 1998). Additionally, Rule 16(c) requires a party to promptly disclose any additional evidence if it is relevant and the opposing party has requested it. Fed. R. Civ. Pro. 16(c). If a

party fails to comply with this provision, then Rule 16(d) allows a court to "prohibit that party from introducing the undisclosed evidence." Fed. R. Civ. Pro. 16(d)(2)(C).   This argument will be referred to as the Non-Disclosure Argument, below.  Plaintiffs' Interrogatory No. 4 asks:

> **INTERROGATORY NO.4**: Affirmative Defense no. 6 in your Answer states: "Defendant and its employees did not subjectively know of and consciously disregard a substantial risk to the safety and well-being of Plaintiffs." Please state any and all facts you contend support this allegation, and identify any and all witnesses, documents or other evidence which you contend evidence those facts.

Doc 143-12 at p. 4-5. CCA responded by objecting that the interrogatory was "compound, premature as discovery is ongoing." *Id.* However, CCA never supplemented its response. CCA further objected that "there is no evidence that this incident was foreseeable..." but never supplemented this interrogatory with evidence to support this assertion. *Id*; *see* Aff. of Angstman at ¶3. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 6 and bar CCA from presenting any evidence that CCA did not consciously disregard a substantial risk to the safety and well-being of the Plaintiffs.

### 7.    Affirmative Defense No. 8.

CCA is barred from raising Affirmative Defense No. 8 at trial. Affirmative Defense No. 8 states "[p]laintiffs are unable to establish a policy, custom or practice of systematic deficient medical care or failure to prevent prisoner-on-prisoner violence so as to impose *Monell* liability upon Defendant." Dkt. 57 at p. 13. The Plaintiffs are not pursuing deficient medical care claims and can demonstrate that a systematic policy of understaffing and gang clustering existed at ICC that created a serious risk to both inmates and staff. SUF ¶25-27. This assertion does not qualify as an affirmative defense under Fed. R. Civ. Pro. 8(c), but merely a rebuttal against evidence presented by the Plaintiffs. *See Zivkovic*, 302 F.3d at 1088. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 8.

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 12
A♦J; Matter: 8591-003

Furthermore, CCA never answered Plaintiffs' interrogatory regarding this affirmative defense and thus should be barred from presenting any evidence relating to it at trial. Doc 143-12 at p. at 5; See Non-Disclosure Argument, above. Plaintiffs' Interrogatory No. 5 asks:

> **INTERROGATORY NO. 5:** Affirmative Defense no. 8 in your Answer states: "Plaintiffs are unable to establish a policy, custom or practice of systematic deficient medical care or failure to prevent prisoner-on-prisoner violence so as to impose *Monell* liability upon Defendant." Please state any and all facts you contend support this allegation, and identify any and all witnesses, documents or other evidence which you contend evidence those facts.

Doc 143-12 at p. 5. CCA responded by objecting that the interrogatory was "compound, premature as discovery is ongoing." *Id.* However CCA never supplemented its response. CCA further objected that "[d]efendant asserts that Plaintiffs will be unable to meet this burden at trial." *Id.* CCA never provided the Plaintiffs with any evidence to support its assertion in Affirmative Defense No. 6. *Id.; see* Aff. of Angstman at ¶3. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 8 and bar CCA from presenting any evidence that CCA did not have a systematic practice of gang clustering and understaffing at ICC.

### 8.    Affirmative Defense No. 9.

CCA is barred from raising Affirmative Defense No. 9 at trial. Affirmative Defense No. 9 states "[d]efendant's action or inactions were not caused by an evil motive or intent, nor did any of their conduct involve reckless or callous indifference to Plaintiffs' rights, thereby precluding punitive damages." Dkt. 57 at p. 13. CCA has no evidence establishing that its staffing and gang housing practices were made in good faith. CCA's knowledge of the understaffing and gang clustering practices at ICC gives rise to a reckless corporate mindset that warrants a punitive damage award to punish CCA's dangerous corporate practices. *See* SUF ¶25-27. There is no genuine dispute of material fact that CCA knew the ICC facility had failed to comply with the standards set in the *Kelly v. Wengler* settlement, yet did nothing to fix the systemic problems of

understaffing and gang clustering at the ICC facility. *Id.; see also* Dkt. 1-9, Exhibit C, Settlement Agreement from Kelly et al. v. CCA, et al. Case 1:11-CV-00185-EJL. This assertion by CCA does not qualify as an affirmative defense under Fed. R. Civ. Pro. 8(c), but merely a rebuttal against evidence presented by the Plaintiffs. *See Zivkovic*, 302 F.3d at 1088. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 9.

Furthermore, CCA never answered the Plaintiffs' Interrogatories regarding this affirmative defense and thus should be barred from presenting any evidence relating to it at trial. See Non-Disclosure Argument, above.   Plaintiffs' Interrogatory No. 6 asks:

> **INTERROGATORY NO.6:** Affirmative Defense no. 9 in your Answer states: "Defendant's action or inactions were not caused by an evil motive or intent, nor did any of their conduct involve reckless or callous indifference to Plaintiffs' rights, thereby precluding punitive damages." Please state any and all facts you contend support this allegation, and identify any and all witnesses, documents or other evidence which you contend evidence those facts.

Doc 143-12 at p. 6. CCA responded by objecting that the interrogatory was "compound, premature as discovery is ongoing." *Id.* However CCA never supplemented its response. CCA further objected that "[D]efendant asserts that the evidence in this case will show that neither CCA nor its employees acted with the requisite intent that Plaintiffs must prove in order to obtain an award of punitive damages." *Id.*   CCA never provided the Plaintiffs with any evidence to support its assertion in Affirmative Defense No. 9. *Id.; see* Aff. of Angstman at ¶3. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 9 and bar CCA from presenting any evidence that CCA did not have an evil intent and that it acted in good faith.

9.    **Affirmative Defense No. 10.**

CCA is barred from raising Affirmative Defense No. 10 at trial. Affirmative Defense No. 10 states "[n]either Defendant's actions or inactions were the proximate cause of any injuries, losses or damages to Plaintiffs." Dkt. 57 at p.12. This assertion does not qualify as an affirmative

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 14
A♦J; Matter: 8591-003

defense under Fed. R. Civ. Pro. 8(c), but merely a rebuttal against evidence presented by the Plaintiffs. *See Zivkovic*, 302 F.3d at 1088. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 10 bar CCA from presenting any evidence relating to whether CCA's actions were not the proximate cause of the Plaintiffs injuries .

### 10.    Affirmative Defense No. 11.

CCA is barred from raising Affirmative Defense No. 11 at trial. This defense states "[p]laintiffs are wholly or partially at fault for their alleged injuries, thereby reducing or eliminating his damages." Dkt. 57 at p.12. CCA has no evidence that the Plaintiffs' injuries are wholly or partially their fault. There is no genuine dispute of material fact that the Plaintiffs were placed into the F-1 pod by CCA employees and were the victims of a vicious attack by gang members in the F-1 pod. *See* SUF at ¶24-27. Given that the attack was preplanned against the Plaintiffs and CCA chose to move Plaintiffs into the F-1 walk, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 11 and bar CCA from presenting any evidence that the plaintiffs are at fault for their harm.

### 11.    Affirmative Defense No. 12.

CCA is barred from asserting "[p]laintiffs' injuries and damages if any were directly and proximately caused by the actions of other persons who have not been named as parties in this action []" at trial.  Affirmative Defense No. 12, Dkt. 57 at p.12.  With the exception of the assailants, CCA has offered no evidence that other parties are liable for the Plaintiffs' injuries. Dkt. 143-12 at p. 6. This Court has already held that any suggestion by CCA that the attackers' independent action eliminates any §1983 claim represents a misunderstanding of §1983 and Eight Amendment jurisprudence. *See* Dkt. 54 at 11. Regarding a third party's liability, CCA has only pointed to the assailants' culpability in the May 5th attack in response to Plaintiffs'

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 15
A❖J; Matter: 8591-003

Interrogatory No. 7. Dkt. 143-12 at p. 6-7. The Court has already concluded that such a defense is inapplicable, here. Dkt. 54 at 11 ("This argument illustrates a fundamental misunderstanding of § 1983 and Eighth Amendment jurisprudence.").

The Plaintiffs have produced evidence demonstrating that understaffing and gang clustering caused the Plaintiffs' injuries. Dkt. 143-9 at p .5 ("The lack of direct supervision of Offender Campos occurred as a result of the understaffing within the DEF unit during the second shift on May 5, 2012"); Dkt. 143-15 at p. 3 ("The Plaintiffs were a group of people who were trying to protect themselves and each other from being victimized by the gangs that were openly operating at ICC"). The gang attack on the Plaintiffs' is the type of harm that would have occurred due to understaffing. *See* SUF ¶25-27. Additionally, gang attacks and increased violence are likely to result as a consequence of understaffing. *Id.* CCA's negligence fostered the environment for this attack and these prisoners' injuries from an attack are a foreseeable result of CCA's unwillingness to follow the best practices of effective inmate control. *Id.* Regarding a third party's liability, CCA has only pointed to the assailants' culpability in the May 5th attack in response to Plaintiffs' Interrogatory No. 7. Dkt. 143-12 at p. 6-7. Although the assailants' stabbed the Plaintiffs , but for the lack of direct supervision of Offender Campos the assailants would not have been able to execute their attack. Dkt. 143-9 at p. 5.

Critically, CCA never supplemented responses to the Plaintiffs' Interrogatories regarding this affirmative defense, and thus should be barred from asserting undisclosed 3rd parties were liable to for Plaintiffs' claims. *See* Dkt. 143-14 at p. 6-7; See Non-Disclosure Argument, above. Plaintiffs' Interrogatory No. 6 asks:

> **INTERROGATORY NO. 6:** Affirmative Defense no. 12 in your Answer states: "Plaintiffs' injuries and damages, if any, were directly and proximately caused by actions of other persons who have not been named as parties in this action." Please state any and all facts you contend support this allegation, and identify any

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 16
A♦J; Matter: 8591-003

and all witnesses, documents or other evidence which you contend evidence those facts.

Doc 143-12 at p. at 6-7. CCA responded by objecting that the interrogatory was "compound, premature as discovery is ongoing." Subject to that objection CCA identified assailants William Redmond (IDOC Inmate No. 69512), Michael Wilson (IDOC Inmate No. 61348), Blaine Cunningham (IDOC Inmate No. 55891), Steven Mitchell (IDOC Inmate No. 95294), Randy McNeil (IDOC Inmate No. 67575), Christopher Price (IDOC Inmate No. 66757) as those parties responsible for the May 5 attack." *Id.* Critically, CCA never supplemented its response despite several extensions to the Amendment and Joinder deadline due the need for discovery from CCA on this issue. Dkt. 44; Dkt. 53; Dkt. 92; Dkt. 139. CCA never provided the Plaintiffs with any evidence to support its assertion in Affirmative Defense No. 12 or identified any additional parties. *See* Aff. of Angstman at ¶3. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 12 and bar CCA from presenting any evidence that another party is responsible for the harm to the Plaintiffs.

### 12.   Affirmative Defense No. 13.

CCA is barred from raising Affirmative Defense No. 13 at trial. This defense states "[p]laintiffs assumed the risk of their injuries." Dkt. 57 at p. 13. CCA has no evidence that the Plaintiffs' assumed the risk of their injuries. Courts in the 9th Circuit hold that a defendant must establish three elements in order to prove an assumption of risk:

> The defendant must show, first, that the plaintiff himself actually knew and appreciated the particular risk or danger created by the defect; second, that plaintiff voluntarily encountered the risk while realizing the danger; and, third, that plaintiff's decision to voluntarily encounter the known risk was unreasonable

*Brown v. Link Belt Corp.*, 565 F.2d 1107, 1112 (9th Cir. Or. 1977) *quoting* Restatement (Second) of Torts, § 402(A), Comment n (1965). There is no genuine dispute of material fact that the

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 17
A✦J; Matter: 8591-003

Plaintiffs were placed into the F-1 pod by CCA employees and were the victims of a vicious attack by gang members in the F-1 pod. *See* SUF at ¶24-27. The Plaintiffs were victims of a coordinated attack by the Arian Knights and the Severely Violent Criminals. *Id.* at ¶28. Therefore, the Plaintiffs request that the Court strike CCA's Affirmative Defense No. 13 and bar CCA from presenting any evidence that the plaintiffs assumed their risks.

### 13.    Affirmative Defense Nos. 7, 14, and 15.

CCA is barred from raising Affirmative Defense Nos. 7, 14, and 15 at trial. CCA never supplemented its Answer to Plaintiffs' Interrogatories regarding this affirmative defense and thus should be barred from presenting any evidence relating to it at trial. *See* Dkt. 143-14 at p. 7; See Non-Disclosure Argument, above.  Plaintiffs' Interrogatory No. 8 asks:

> **INTERROGATORY NO. 8**: Please state whether you intent to assert in summary judgment or at trial any defense you have plead within Affirmative Defense nos. 1, 2, 3, 4, 5, 7, 10, 11, 13, 14, or 15. With respect to any such defense that you intend to assert in summary judgment or at trial, please state any and all facts you contend support this allegation, and identify any and all witnesses, documents or other evidence which you contend evidence those facts.

Doc 143-12 at p. 7. CCA objected that "[t]his Interrogatory does not constitute a permissible contention interrogatory under federal case law. *See, e.g., Roberts v. Heim,* 130 F.R.D. 424, 427 (N.D. Cal. 1989)[.]" However, a review of *Roberts v. Heim* reveals that the court only identifies interrogatories that require a party to "state all facts upon which you base your contention *that defendant is liable in this action*" as unreasonable. *Roberts v. Heim,* 130 F.R.D. 424, 427 (N.D. Cal. 1989) (emphasis added). The *Roberts* court further held that "each interrogatory has to be judged in terms of its scope and in terms of the overall context of the case at the time it is asked." *Id.* The Plaintiffs Interrogatory No. 8 only asks CCA to state any and all facts *it intends to use to support Affirmative Defense nos. 1, 2, 3, 4, 5, 7, 10, 11, 13, 14, or 15.* Unlike the blanket request which *Roberts* identifies as impermissible, the Plaintiffs requested CCA provide specific

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 18
A♦J; Matter: 8591-003

evidence for each of its affirmative defenses. Given that CCA has had over a year to supplement this interrogatory, the Plaintiffs request that the Court strike CCA's Affirmative Defense Nos 7, 14, and 15, and bar CCA from presenting any evidence that it did not disregarded the Plaintiffs' serious medical conditions, that Plaintiffs injuries were a result of preexisting conditions, and that any additional facts used by CCA to support its affirmative defenses.

## IV. CONCLUSION

The Plaintiffs request that the Court grant them partial summary judgment by ruling as a matter of law that CCA had a widespread practice and custom of 1) gang clustering at ICC, and 2). understaffing mandatory posts at the ICC. Given the evidence that has been produced in discovery, there is no dispute of material fact that CCA had a long standing practice of both gang clustering and understaffing at ICC. Furthermore, the Plaintiffs request that the Court grant them partial summary judgment by striking CCA's affirmative defenses and barring it from presenting evidence relating to these defenses at trial.

DATED this 2nd day of September, 2014

/s/

THOMAS J. ANGSTMAN
Attorney for Plaintiffs

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 19
A♦J; Matter: 8591-003

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September, 2014, I filed the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kirtlan G. Naylor                    kirt@naylorhales.com
Daniel P. Struck                     DStruck@swlfirm.com


Any others as listed on the Court's ECF Notice.

I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

None

_____
Thomas J. Angstman

MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT – PAGE 20
A♦J; Matter: 8591-003