T.J. Angstman
Wyatt Johnson
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho  83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Angstman ISB: 5738
Johnson ISB: 5858

Nikki Smith
210 12th Ave Road
Nampa, ID 83686
Telephone: (208) 466-1800
Facsimile: (208) 466-1803
Smith ISB: 9030

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, AND RAYMOND BRYANT,<br><br>Plaintiffs,<br><br>vs.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>Defendant. | Case No. 1:12-CV-559-EJL<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS** |

This memorandum supports Plaintiffs' motion to strike CCA "expert" W. Ken Katsaris ("Katsaris") as a witness, which, if granted, would preclude his testimony in any proceedings in this case.

### 1. Relief Requested

An Order pursuant to Rules 403 and 702 of the Federal Rules of Evidence excluding the expert testimony of W. Ken Katsaris.

### 2. Nature of Case

This is a civil rights action in which Plaintiffs claim CCA's deliberate indifference to the significant risk of harm created by the longstanding customs and practices of both clustering gangs in the DEF unit at ICC and understaffing mandatory posts at the prison were the moving force behind the constitutional deprivations they endured.

### 3. Facts

In the initial Scheduling Order, entered January 25, 2013, the Court required service of Plaintiffs' expert disclosures required by Fed. R. Civ. P. 26(a)(2), including "the report described in Fed. R. Civ. P. 26 (a)(2)(B), as modified by Local Rule 26.2(b)," on or before October 8, 2013; Defendant's expert disclosures required by Fed. R. Civ. P. 26(a)(2), including "the report described in Fed. R. Civ. P. 26 (a)(2)(B), as modified by Local Rule 26.2(b)," on or before November 5, 2013; and the disclosure of all rebuttal experts on or before December 3, 2013. Dkt. 18, p. 1. The order was modified extending the deadline for service of Plaintiffs' expert disclosures to May 20, 2014, the deadline for service of Defendant's expert disclosures to June 19, 2014, and the deadline for service of all rebuttal expert disclosures on July 11, 2014. Dkt. 139.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 2**
A❖J; Matter: 8591-003

As the Court is aware, CCA vigorously resisted Plaintiffs' attempt to obtain violence data and statistics going back to 2008 during discovery. *See* Dkt. 23; Dkt. 44; Dkt. 90; Dkt. 92; Dkt. 93. Nonetheless, after the completion of discovery and Plaintiffs' expert's opening and rebuttal reports, CCA's 9th Supplemental Disclosure Statement was provided to Plaintiff on August 26, 2014, the day before the deposition of Plaintiff's expert Dr. John Hepburn. *See* Sealed Aff. of TJ Angstman at ¶2; Sealed Exhibit 1 at p. 66. Included within that belated disclosure were documents relied upon by CCA's expert in forming his opinions, as disclosed in Katsaris' report, "196. 2008 through 2013 Inmate Assault/Battery Statistics". *See* Affidavit of T. J. Angstman, Ex. 1 at p. 5. These are the very documents that CCA refused to produce in discovery even though Plaintiffs requested these documents in January 2013. *See* Dkt. 48-4 at 2; *see* Sealed Aff. of TJ Angstman at ¶2; Exhibit 1 at p. 66.

### 4. *Plaintiffs' Position*

Katsaris' proposed testimony should be excluded. The content in his opinion/affidavit does not meet the expert witness standards articulated by the U.S. Supreme Court. Furthermore, it is much too late for Katsaris to offer opinions that have not been properly disclosed.[1] This case is essentially ready for trial.

---

[1] Katsaris has drafted his report to prevent discovery, presumably to make response to his opinions more difficult. *See Pace v. Capobianco*, Case No. CV100-032, 2000 U.S. Dist. LEXIS 22924 (S.D.Ga. Oct. 13, 2000) (excluded Katsaris' testimony because his report did not sufficiently explain the rationale behind his opinion that defendants used excessive force, concluding: "his report gives little more than a conclusory opinion which reads like a preamble to a more detailed report. *Katsaris's report leaves me with the impression that his true endeavor is to disclose as little information as possible*." (emphasis supplied))

## 5.  *Legal Framework*

In its role as gatekeeper, the District Court determines the relevance and reliability of expert testimony and its subsequent admission or exclusion. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  Admission or exclusion under *Daubert* rests on the scientific reliability and relevance of the expert testimony. *See Barabin v. AstenJohnson, Inc.*, 700 F.3d 428, 431 (9th Cir. Wash. 2012). The expert's opinion must be deduced from a "scientific method" to be admissible. Id. "The test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology . . . ." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (footnote reference and alteration omitted).

The *Daubert* court has established a "two-part" test for admission of expert testimony under Federal Rule of Evidence 702, reliability and helpfulness. "First, evidence must be reliable, and second, it must be helpful to the jury. *Daubert*, 509 U.S. at 590-91; *see also* Fed. R. Evid. 702; The proponent of expert testimony bears the burden to establish "by a preponderance of the evidence that the admissibility requirements are met." *Salinas v. Amteck of Ky., Inc.*, 682 F. Supp. 2d 1022, 1029 (N.D. Cal. 2010) (Hamilton, J.) (quoting Fed. R. Evid. 702).  Rule 403 provides that even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Redfoot*, 2007 U.S. Dist. LEXIS 40002, at *14.  The court in *Specht v. Jensen* discussed the "helpful" element at some length. *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (en banc), *cert. denied*, 488 U.S. 1008 (1989).  In that case, the question was whether an attorney, called as an expert witness, could state his views of the law which

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 4**
A◆J; Matter: 8591-003

governs the verdict and opine whether defendants' conduct violated that law.   The Court in *Specht* adopted the Fed. R. Ev. 702  advisory committee "common sense" inquiry. *Id.* at 807 ("[the] test for determining when experts may be used [is] the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute"). Furthermore, that court noted that it's "axiomatic that the judge is the sole arbiter of the law and its applicability." *Id.* Ultimately, the Court enforced the rationale expressed in the Rule 702 advisory notes:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.

*Id.*

The Ninth Circuit follows this same standard.  *See* e.g., *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) "([a]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.") (emphasis in original)." *Mukhtar v. Cal. State Univ.*, 2002 U.S. App. LEXIS 27934 (9th Cir. Cal. Aug. 7, 2002) (Overruled on other grounds.) Therefore, to be admissible, an expert's opinion must be relevant under Fed. R. Ev. 403, and both helpful and reliable under Fed. R. Ev. 702.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 5**
A◆J; Matter: 8591-003

### 6.   *Katsaris' Ipse Dixit/"Oath Helper" Opinions Are Not Helpful To The Trier Of Fact*

The Federal Rules of Civil Procedure require that an expert's report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ.P. 26(a)(2)(B).  Rule 26(a) expert reports are intended not only to identify the expert witness, but also "to set forth the substance of the direct examination ...[and] should be written in a manner that reflects the testimony to be given by the witness". FED. R. CIV. P. 26(A)(2*)* committee note (1993). The function of expert reports is "to allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." FED. R. CIV. P. 26(A)(2*)* committee note (1993). A direct examination of an expert that does nothing more than state legal conclusions lacks foundation and is inadmissible. *See Mukhtar*, 2002 U.S. App. LEXIS 27934.

*Daubert*  does not require a "court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *United States v. Sayre*, 434 Fed. Appx. 622, 624 (9th Cir. Cal. 2011)(Citations omitted). A court may conclude that there is "simply too great an analytical gap between the data and the opinion proffered." *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. Cal. 2007) (quoting *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)).[2]

Katsaris is an expert witness for CCA, and provided a report in the form of an unsworn "affidavit".  Katsaris' "affidavit" contains his testimony as to the opinions and conclusions he reached in regards to this case. However, Katsaris' report (or "testimony") is incomplete, as it does not meet the requirements of Fed. R. Civ. Pro. 26(a)(2)(B). Katsaris' affidavit is deeply

---

[2] *Ipse dixit* is a Latin term meaning "he himself said it," and is defined as "something asserted but not proved." *Black's Law Dictionary*, 8th Edition.

rooted in *ipse dixit* or *"oath helper"* statements, and contains many analytical gaps as discussed in *Joiner* and *Sayer*. The crux of the Katsaris affidavit is that it is unsupported by any scientific method or *analysis of* factual data. The affidavit is comprised entirely with non-analyzed conclusions, for example **(Plaintiffs' comments in bold)**:

     1.     Corrections Corporation of America (CCA) did have in place the staff, rules, procedures, and practices to prevent the occurrence of the specific harm to the plaintiffs, but because of a deviation of those practices and procedures not sanctioned by CCA, Officer Skogsberg, alone, is at fault. *See* Aff. of TJ at ¶ 2; Ex. 1. at p. 8.

*Ipse dixit*. **Katsaris has not established any foundation. Katsaris does not identify how the practices would prevent the gang attack on the Plaintiffs and fails to demonstrate how his supposed expertise renders a reliable or helpful opinion. CCA is barred from presenting this position at trial due to its failure to respond to written discovery seeking the facts CCA claims would support its defense that the Plaintiffs failed to name the party responsible, a proper response would have indicated CCA's belief that Skogsberg was responsible if this defense was going to be pursued at trial.  *See* Dkt. 143-12 at page 6-7.**

     2.     A careful, and unbiased, review of the staffing of F-l Pod, containing D-E-F Housing Units, on the evening of May 4, 2012, and the next day up until the time of the incident, reveals appropriate staffing… A review of the declaration of Kevin Meyers [sic] and his supporting exhibits certainly substantiates that the staffing required in Housing Units D-E-F on May 4, 2012, and May 5,2012, were appropriate and reasonable. *See* Aff. of TJ at ¶ 2 ; Ex. 1. at p. 9.

*Ipse Dixit*.  **Katsaris has not analyzed any independent facts or data. This opinion is simply an "oath helpers" affidavit bolstering Myers' affidavit testimony. Katsaris has not established any foundation. Katsaris does not explain why his review is carful or unbiased, or identify what data or facts he relied upon in determining that appropriate staffing existed on May 4, 2012. Therefore, this is not a reliable or helpful opinion.**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 7**
A♦J; Matter: 8591-003

3.      There is no evidence that fatigue or some custom and practice deviating from the recognized procedures caused the incident to occur. *Id.*

**Katsaris has not established any foundation. Katsaris has failed to identify what data or facts he relied upon in determining that fatigue or a custom or practice did not cause the attack to occur. Therefore, this is not a reliable or helpful opinion. *Ipse Dixit*.**

4.      Cell and pat down searches reasonably occurred[.]*Id.*

***Ipse Dixit.* Katsaris has not established any foundation. Katsaris has failed to identify what data or facts he relied upon in determining the cell and pat down searches occurred reasonably. Therefore, this is not a reliable or helpful opinion.**

5.      There is no evidence of CCA being lax in enforcing staff or inmate discipline. *See* Aff. of TJ at ¶ 2; Ex. 1. at p. 12.

***Ipse dixit.* Katsaris has not established any foundation.  Katsaris has failed to identify what data or facts he relied upon in determining that CCA enforced staff and inmate discipline. Therefore, this is not a reliable or helpful opinion.**

6.      CCA's placement of Plaintiffs in DEF was "reasonable and appropriate" and "<u>not</u> against the plaintiff inmates wishes". *See* Aff. of TJ at ¶ 2; Ex. 1. at p. 13

***Ipse dixit*, . Katsaris has not established any foundation. Katsaris has failed to identify what data or facts he relied upon in determining that the placement was reasonable. Furthermore the Plaintiffs' wishes are irrelevant. CCA has an Eighth Amendment duty from protecting the plaintiffs from cruel and unusual punishment.  Therefore, this is not a reliable or helpful opinion.**

7.      "It was not a lack of training, or failure to discipline, that led to the compromise in security that resulted in plaintiff's [sic] harm – it was simple human error…" *See* Aff. of TJ at ¶2; Ex. 1. at p. 15

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 8**
A◆J; Matter: 8591-003

**Ipse dixit. Katsaris has not established any foundation. Katsaris has failed to identify what data or facts he relied upon in determining that the attack occurred because of human error. Therefore, this is not a reliable or helpful opinion.**

8.    And, I agree that the KPMG analysis is inaccurate in its assumption that four floor officers were required, as opposed to the actual CCA/IDOC contract which mandated a total of four (4) officers, one being the Pod-Control officer on the second shift. *See* Aff. of TJ at ¶2; Ex. 1. at p. 10.

**Katsaris has not established any foundation. Katsaris just reiterates his agreement with other testimony about the KPMG report and what he claims documents he reviewed state. Therefore, this is not a reliable or helpful opinion. *Ipse dixit*,**

9.    Likewise, the staffing of the day shift on May 5, 2012, indicates reasonable staffing. D-E-F was staffed with one Pod-Control Officer, five (5) housing officers, and two (2) recreation officers. A staffing pattern that obviously exceeded CCA's contract with IDOC. Any other staffing issues at any other time are not relevant to the harm of the plaintiffs in this claim, and should not be evaluated as an issue accruing to the actions/procedures causing the specific harm claimed. *Id*.

**Katsaris has not established any foundation. Katsaris' opinion on what is relevant is inadmissible.    Since he has offered no factual basis for any opinion as to what is "reasonable staffing".    Therefore, this is not a reliable or helpful opinion. *Ipse dixit*,**

10.    Clearly and observable proof of adequate staffing is demonstrated by the rapid response time to the radio call for help by Officer Skogsberg. Staff testimony and both housing unit videos reveal the close and trained rapid response training and procedures in place by CCA for rapid response when help is called for. *See* Aff. of TJ at ¶2; Ex. 1. at p. 11.

**The response is irrelevant to the claim in this case that insufficient staffing created an unsafe environment and that CCA failed to protect the Plaintiffs' from known risks of harm. The response time analysis focuses on a period of time after the attack began. More importantly, this is not helpful to the jury as no standards are discussed, and Katsaris seeks to avoid disclosing the basis for his opinion, making it an *ipse dixit* opinion.**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 9**
A◆J; Matter: 8591-003

11.     The volume of the criticism about CCA's inmate control related to lax discipline for such rule infractions as "window covering" is a false issue. First it has nothing to do with this case file or incident, and second, it is one of the prison industry's most repeated violations nationwide. *See* Aff. of TJ at ¶2; Ex. 1. at p. 12.

*Ipse dixit.* **Katsaris has not established any foundation Katsaris does not explain why window coverings have nothing to do with this case, especially given Officer Skogsberg's affidavit and the statements in the SIR indicating that it was impossible to obtain a count of the inmates going to recreation, and those staying in their cells, because the windows were covered.**

12.     Another issue that does not ring true by a careful evaluation of an "apples to apples" comparison of the data, is an assertion that the level of assaults and gang violence at the ICC is much higher than at the combined institutions of the Idaho Corrections System. A careful and deliberate evaluation of not only the DOR's, but also the 105's, for the period 2008 through 2013, reflect that each year of this evaluation clearly reflects the combined assaults and batteries at the Idaho State Correctional Institutions is higher than the number of assaults and batteries at the Idaho Correctional Center (ICC), in some cases by large numbers. *Id.*

**Katsaris' reliance upon a comparison of ICC to all of the other prisons in the state without stating why that statistic is important makes the assertion inadmissible.  Simply put, the comparison is irrelevant because he has not explained why it matters.  Moreover, Katsaris relied upon information that was not provided in discovery until after Plaintiffs' expert had given his opening and rebuttal report.** Dkt. 48-4 at 2; *see* Sealed Aff. of TJ at ¶2; Sealed Exhibit 1.  **CCA should not be allowed to use the opinion or the undisclosed data in this proceeding.  Moreover, by not even stating the result of the "review" of the statistics, Katsaris has failed to establish foundation for this testimony.**

13.     Again, it was a simple issue of a distracted officer who violated CCA policy. *See* Aff. of TJ at ¶2; Ex. 1. at p. at 14.

**Katsaris has not established any foundation. Katsaris never explains in the entire report what policy Skogsberg supposedly violated. Not only is this an *ipse dixit* opinion, CCA is barred from presenting this position at trial due to its failure to respond to written discovery seeking the facts CCA claims would support its defense that the Plaintiffs failed to name the party responsible, a proper response would have indicated CCA's belief that Skogsberg was responsible.** *See* **Dkt. 143-12 at page 6-7.**

14.    While there is evidence of staffing positions in the corrections security positions by supervisors, case managers, and corrections counselors, this is a positive, not a negative. It is my opinion that this type of rotation is a good management tool. *Id*.

***Ipse dixit*. Katsaris has not established any foundation, but simply reiterates Myers' affidavit testimony. Therefore, this is not a reliable or helpful opinion.**

7.  *Katsaris' affidavit is unreliable and espouses unscientific methodology.*

Plaintiffs' expert, Dr. John Hepburn, is a social scientist who has published many peer reviewed articles that are subjected to the same rigor as anticipated in the case law described herein.  Thus, his rebuttal report is useful in considering the admissibility of Katsaris' "opinions". Hepburn's rebuttal report describes Dr. Hepburn's concerns over the methodology employed by Katsaris. *See* Aff. of Angstman at ¶3; Exhibit 2.  Because Katsaris' opinions and conclusions do not provide the appropriate analysis and are beyond the scope of his expertise, the Court is not required to admit them. *Gen. Elec. Co. V. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)). Katsaris' affidavit is also inadmissible under Rule 702 of the Federal Rules of Evidence. The applicable cases that address the admissibility of expert testimony are *Daubert* and *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 11**
A◆J; Matter: 8591-003

*Daubert* gave a non-exclusive, nor dispositive, list of factors the judge is to consider to determine reliability of an expert's testimony. The ultimate purpose of *Daubert's* scrutiny is to assure that expert testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579, 589 (1993). The factors are:

> (1) assess whether the expert's technique or theory can be or has been tested-that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability, (2) determine whether the technique or theory has been subject to peer review and publication, (3) evaluate the known or potential rate of error of the technique or theory when applied, (4) ascertain the existence and maintenance of standards and controls and, (5) determine whether the technique or theory has been generally accepted in the scientific community.

*Id.* at 590-594. Until *Kumho*, *Daubert* only applied to classical scientific disciplines. The *Kumho* court expanded the requirements of the judge to other areas of expert testimony besides those of classical scientific disciplines. *Kumho Tire Company, Ltd,* 526 U.S. at 119 (1999). *Kumho* made it clear that the non-exhaustive list of factors in *Daubert* is only to be used to the extent that they are logically applicable, and that the purpose of placing this requirement was to ensure "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 149, 152.  As Dr. Hepburn indicated in his rebuttal report:

> In contrast, Mr. Katsaris provides no evidence, no facts, no acceptable methodology by which he makes these allegations or, for that matter, his conclusions. In his statement, he references only two documents – the statement by Mr. Meyers and the KPMG report of December 13, 2013.  Without specification of the documents he reviewed or the methodology he employed, he agrees with Mr. Meyers with regard to the staffing pattern on May 5th. In his conclusion that Mr. Meyers' affidavit contained the "true and correct shift rosters," Mr. Katsaris fails to document the methodology or the supportive document(s) that would provide a balanced and scientific review of competing statements sufficient to lead him to his conclusion, especially in light of (1) the many challenges from supervisory and line staff at ICC (as documented in my report), and (2) the ongoing debate and legal interventions on behalf of the Idaho Department of Corrections (evident in a variety of other documents under review)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 12**
A◆J; Matter: 8591-003

regarding the validity of shift rosters, the use of double entries, and "ghost workers" on the log books. Mr. Katsaris also disagrees with the numbers reported in the audit by KPMG. Inasmuch as KPMG did provide a relatively clear and detailed statement of the methodology used in its' report, Mr. Katsaris failed to take exception to that methodology, to assert there was an error in definitions or calculations, or to suggest an alternative methodology that he has used to arrive at his conclusion.  In short, what is the basis of his conclusion?

Intellectual honesty and factual correctness are far easier to assess when a reliable, acceptable and scientific methodology is used. After all, a basic requirement of any science is replication. By providing the data in the narrative, I enable the reader to verify the source and to discern for himself or herself the extent to which the conclusions reached are consistent with the facts presented and are relevant to the case. That is the standard by which scientific research undergoes peer review, and I contend that my report meets that standard. The "facts" are reported clearly and uniformly without prejudice or bias, the reader is able to review the facts incorporated into the report, and the reader is able to accept or reject the conclusions based on the facts presented.

*See* Affidavit of T. J. Angstman, Exhibit 2 at p. 2-3.  CCA may argue that Katsaris' affidavit is reliably using the *Daubert* factors, because Katsaris' experience is in the field of law enforcement and corrections.  But, as Dr. Hepburn's rebuttal report makes clear, these are the study of social science, and the "scientific method" applies. *Id.*  In *Daubert*, the Court noted that "science is not an encyclopedic body of knowledge about the universe. Instead, it represents a process for proposing and refining theoretical explanations about the world that are subject to further testing and refinement. . . . In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." 509 U.S. at 590, 113 S. Ct. at 2795 (internal quotation marks and citation omitted).[3]

---

[3] "Science is a process, a way of examining the natural world and discovering important truths about it. In short, the essence of science is the scientific method." David Goodstein, "How Science Works," Reference Manual on Scientific Evidence 69 (Federal Judicial Center, 2d ed. 2000). "Scientific evidence encompasses so-called hard sciences (such as physics, chemistry, mathematics and biology) as well as soft sciences (such as economics, psychology, and sociology)…" William W. Schwarzer & Joe S. Cecil, "Management of Expert Evidence," Reference Manual on Scientific Evidence 39 (Federal Judicial Center, 2d ed. 2000).

The courts have added factors to *Daubert's* list that may aid in determining the reliability of an expert. They include: (1) "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); (2) "[w]hether the expert has adequately accounted for obvious alternative explanations." *Claar v. Burlington Northern R.R.*, 29 F.3d 499 (9th Cir. 1994); and (3) "[w]hether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give." *Kumho*, 119 S.Ct. 1167, 1175.

Katsaris' affidavit is not reliable because it is not formed on any technique or theory that can be tested for its reliability using the factors given in *Daubert*, reaches "unfounded conclusions," has not "adequately accounted for obvious alternative explanations," and it cannot be established that his "field of expertise claimed is known to reach reliable results." *General Elec. Co., Claar,* and *Kumho.*

### 8.   *Katsaris' Opinions Are Also Tantamount to Legal Conclusions*

Katsaris' affidavit is also inadmissible because it reaches legal conclusions. Another court ruled on the issue of expert witnesses reaching legal conclusions in *Sellers v. Butler*, 2006 LEXIS 68579 (D. Kan.). In *Sellers* the plaintiff argued that "'deliberate indifference' i[s] an essential element of Plaintiff's section 1983 claim, and as such, is not the proper subject of an expert's opinion." *Sellers,* 2006 LEXIS 68579. That court ultimately agreed with that argument and excluded any testimony by the expert that reached a legal conclusion. *Id.*

The Sellers' court stated that even though experts are allowed by FRE 704 to testify relating to the ultimate issue, "[o]pinions embracing legal standards, may, however, be excluded

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 14**

for other reasons, such as the likelihood of jury confusion, the danger of unfair prejudice, or the inability of such evidence to assist the trier of fact." *Id.* (citing *McEwen v. City of Norman, Okl.*, 926 F.2d 1539, 1545 (10th Cir. 1991)). The court continued by saying, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* (citing *U.S. v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005)). The court then gave guidance on what is allowed under FRE 704 by stating, "while testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored." *Id.* (citing *Specht v. Jensen*, 853 F.2d 805 (10thCir. 1988)). Further, "the basis for the distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case." *Id. citing Specht*, 853 F.2d at 808.

Since the Rule 26 report is supposed to "set forth the substance of the direct examination" of the expert, it is clear that the direct examination is inadmissible. FED. R. CIV. P. 26(A)(2) committee note (1993). Plaintiffs should not be required to take a deposition to flesh out Katsaris' opinions and the bases therefore – that is the purpose of requiring a proper Rule 26 disclosure. *Id*. Applying *Mukhtar* and other authorities discussed herein, it is clear that this Court should not allow admission of Katsaris' testimony which is properly characterized as a legal conclusion. Katsaris' opinions or conclusions are meant to aid the trier of fact in reaching their own conclusion. This is jeopardized by Katsaris testifying to the legal status of certain

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 15**
A◆J; Matter: 8591-003

actions, opining that the actions were constitutionally sufficient or otherwise legal. This opinion constitutes Katsaris reaching a legal conclusion, rather than allowing the trier of fact to reach its own conclusion on the facts. Thus, Plaintiffs request this Court deem Katsaris' testimony inadmissible.

Katsaris' claimed views of "appropriate", "mandated", or "reasonable" staffing, "CCA met the mandatory staffing," and blaming Skogsberg are not helpful to the trier of fact. He makes no attempt to justify or explain that his conclusions are based on any enlightenment from specialized, expert knowledge. His opinions are no different than a medieval "oath helper's" endorsement of a party's position. Other courts have considered and excluded Katsaris' oath helper opinions[4]. *See White v. Gerardot*, Case No. 1:05-CV-382, 2008 U.S. Dist. LEXIS 72436

---

[4]      Other courts have excluded Katsaris' testimony for various reasons as follow: *Bruner-Mcmahon v. Sedgwick County Bd. of Comm'rs*, 2012 U.S. Dist. LEXIS 1764 (D. Kan. Jan. 6, 2012) (Holding all but one of Katsaris' opinions were inadmissible as legal conclusions or simply not helpful. Listing cases where Katsaris has been prohibited from testifying for similar reasons); *Rosado v. Deters*, 5 F.3d 119, 124 (5th Cir. La. 1993)(finding Katsaris unqualified as accident reconstructionist); *Richard v. Hinshaw*, 2013 U.S. Dist. LEXIS 176391 (D. Kan. Dec. 16, 2013) (certain Katsaris opinions amounted only to speculation over what was known by others and were therefor inadmissible); *Norman v. City of Lorain*, No. 1:04 CV 913, 2006 U.S. Dist. LEXIS 97840, 2006 WL 5249725, at * 2-3 (N.D. Ohio Nov. 27, 2006) (same). See also Lewis v. Adams Cty., 244 F. App'x 1, 12 (6th Cir. 2007) (noting that district court properly ignored an expert opinion by Katsaris that "merely express[ed] a legal conclusion" regarding the objective unreasonableness and excessiveness of applied force). *Legg v. Agee*, 2009 U.S. Dist. LEXIS 256 (C.D. Ill. Jan. 5, 2009)(holding that Katsaris' use of standards developed by the law enforcement community were not helpful and inadmissible in considering whether conduct amounted to a constitutional deprivation.) *Soles v. Ingham County*, 316 F. Supp. 2d 536 (W.D. Mich. 2004) (found Katsaris'' opinions that inmate's return to jail general population reflected deliberate indifference to the manifest and continuing risk of suicide was inadmissible because opinions on the ultimate issue of deliberate indifference are expressions of a legal conclusion and are outside the scope of admissible expert testimony); *Lewis v. Adams County*, No. 06-3893, 244 Fed. Appx. 1; 2007 U.S. App. LEXIS 9872 (6th Cir. 2007) (found Katsaris' opinion defendant's conduct rendered the application of deadly force "unquestionably objectively unreasonable and excessive" was "merely expresses a legal conclusion . . . properly ignored")

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 16**
A◆J; Matter: 8591-003

(N.D.Ind. Sept. 23, 2008) (excluded Katsaris' opinion that officer lacked sufficient basis to use force because expert testimony was not helpful to the jury because the jury is well positioned to make an assessment in the absence of a battle of expert testimony about what parties knew or did not know and because, as crucial facts were in dispute allowing Katsaris to offer his opinion of alleged failure to follow proper police procedure, in essence, would be allowing Katsaris to improperly make and relay credibility findings to the jury regarding the witnesses' testimony); *McCloughan v. Springfield*, 208 F.R.D. 236 (C.D.Ill. 2002) (excluded Katsaris' testimony offering any specific opinions regarding the specific facts of this case because most of the crucial facts were in dispute and allowing Katsaris to offer his opinions as to whether officers followed proper police procedures would be allow Katsaris to, as an expert, make and relay credibility findings to the jury regarding the witnesses' testimony; "such testimony is improper and is not helpful to the jury.")   These decisions are lock step with the rules stated in *North American Specialty Insur. Co.* and *Specht*.

### 9.  Conclusion

Therefore, Plaintiffs request that this Court strike Katsaris as an expert witness under Fed. R. Ev. 702 and Fed. R. Ev. 403 since his testimony is not relevant, reliable or helpful to the trier of fact.

DATED this 4th day of September, 2014.

/s/
_____
T.J. ANGSTMAN
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of September, 2014, I filed MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kirtlan G. Naylor, kirt@naylorhales.com
Daniel P. Struck, DStruck@swlfirm.com

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

None

_____/s/_____
T.J. Angstman

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXPERT WITNESS – PAGE 18**
A◆J; Matter: 8591-003