UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES, AND RAYMOND BRYANT,<br><br>      Plaintiffs,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>      Defendant. | Case No. 1:12-cv-00559-EJL-CWD<br><br>**ORDER RE: PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EXHIBITS 21, 22N, AND 23**<br>**(Dkt. 191)** |

# INTRODUCTION

Plaintiffs bring this civil rights action against Corrections Corporation of America, Inc. (CCA), alleging violations of their Eighth Amendment rights prohibiting the imposition of cruel and unusual punishment, and the corresponding duty of the prison to protect prisoners from violence at the hands of other prisoners. The lawsuit arises out of an inmate gang attack on Plaintiffs that occurred May 5, 2012, at CCA's Idaho Correctional Center (ICC). In response to Defendant CCA's motion for summary

MEMORANDUM DECISION AND ORDER - 1

judgment, Plaintiffs filed a motion in limine to exclude the Court's consideration Exhibits 21, 22N, and 23, which CCA submitted as attachments to CCA's Statement of Facts in Support of Motion for Summary Judgment. The motion presents a discovery dispute. Consequently, the Court will consider the motion in limine separately from the dispositive and other related motions.[1]

## BACKGROUND

Resolution of this matter cannot be understood without reference to an earlier case, *Kelly v. Wengler*, No. 1:11-cv-185-S-EJL, which began on April 27, 2011. The ACLU filed a class action complaint against CCA seeking declaratory and injunctive relief, and alleging systemic prisoner violence at ICC resulting from alleged inadequate staffing and housing policies and procedures implemented by CCA. On June 13, 2011, the *Kelly* matter was referred to the Honorable David O. Carter for the purpose of conducting a settlement conference and presiding over the settlement process. On September 15, 2011, Judge Carter conducted a settlement conference, which resulted in a settlement of the pending complaint. One central component of the settlement reached was a monitoring agreement and, in the event of non-compliance, a dispute resolution provision allowing the parties to submit unresolved disputes to Judge Carter, who retained the authority to enforce the terms of the Settlement Agreement.

After several proposals, on September 27, 2013, the parties filed a stipulation requesting that Edward "Tad" Leach be considered and appointed as the Independent

---

[1] The Court finds oral argument would not aid the Court in deciding Plaintiffs' motion in limine, and therefore issues its order based upon the briefs and record before it. Dist. Idaho L. Rule 7.1(d).

**MEMORANDUM DECISION AND ORDER - 2**

Monitor to monitor CCA's compliance with the terms of the Settlement Agreement. On October 10, 2013, Judge Carter approved the stipulation, and Leach was appointed and tasked with monitoring CCA's compliance with the staffing requirements set forth in the Settlement Agreement. Leach was to propose a plan for regularly monitoring staffing at ICC, which would include regular reports to the Court, to be filed under seal. On October 29, 2013, Judge Carter issued an order, filed under seal (and remaining under seal), approving the submitted monitoring plan and establishing a procedure for the filing of monitoring reports. Initially, the monitor's reports were to be filed under seal, with a timetable thereafter for requesting redactions. After submission, the Court would either approve the proposed redactions and unseal the redacted report, or unseal the report without redactions. Leach began his work, filing his first report dated December 16, 2013.[2] Monthly reports occurred thereafter.

The present dispute involves two of Leach's reports (Exhibits 21 and 23) and a third document the parties refer to as the assault rate comparison chart illustrating the rates of assault between 2008 and 2012 at ICC and at the Idaho State Correctional Institution (ISCI) (Exhibit 22N). The Court will first discuss Leach's reports.

Exhibit 21 is Leach's June 30, 2014, report to Judge Carter, summarizing Leach's findings during seventy on-site inspections conducted between November 15, 2013, and June 29, 2014, during which Leach "found no violations of the staffing requirements" set forth in the Settlement Agreement. (Dkt. 168-15.) Exhibit 23 is Leach's report dated April 15, 2014 (Revised May 9, 2014), which is a comprehensive violence report

---

[2] This report was initially filed on December 23, 2013, and unsealed on January 16, 2014.

**MEMORANDUM DECISION AND ORDER  - 3**

examining data and comparing the rates of certain types of assaults between inmates at the three largest prisons in Idaho (ICC, ISCI, and the Idaho Maximum Security Institution (IMSI)) from 2007 through 2013.[3] (Dkt. 169-14.) Leach's June 30, 2014 summary report and April 15, 2014 (revised May 9, 2014) comprehensive violence report were submitted to Judge Carter under seal on July 22, 2014. Redacted copies were available only to the parties under the terms of the Settlement Agreement. Judge Carter did not approve dissemination of either document, public or otherwise, until September 13, 2014. On September 15, 2014, CCA produced a copy of the redacted summary report and redacted comprehensive violence report to Plaintiffs in this case.

The third document challenged by Plaintiffs' motion in limine is Exhibit 22N (Dkt. 170-12), a collection of color-coded tables or charts summarizing and comparing assault rates at ICC and IDOC's facility, ISCI. CCA obtained the underlying data from IDOC, in response to a Rule 45 subpoena which was served upon IDOC and Plaintiffs' counsel on March 24, 2014. IDOC was required to produce the documents on or before April 8, 2014. According to the record here, Plaintiffs did not file an objection to the subpoena. CCA disclosed the data IDOC produced pursuant to the Rule 45 subpoena in its April 25, 2014 supplemental disclosures. CCA then undertook the task of summarizing the data and creating Exhibit 22N, which was not finalized until August 12, 2014.

CCA supplemented its disclosures and produced Exhibit 22N to Plaintiffs on August 26, 2014. Also on August 26, 2014, CCA identified it would be using Leach's

---

[3] The report examined also the types of assaults at other penal institutions in Utah, Nevada, and Arizona.

**MEMORANDUM DECISION AND ORDER - 4**

reports. CCA had disclosed previously on April 18, 2014, that Leach was an individual with discoverable information. CCA filed its motion for summary judgment on September 15, 2014. After requesting and receiving an extension, Plaintiffs responded to CCA's motion on October 17, 2014.

Plaintiffs filed their complaint against CCA in this matter on November 9, 2012. (Dkt. 1.) The Court's scheduling order, as amended on April 7, 2014, and July 1, 2014, required the parties to complete discovery by April 25, 2014, (Dkt. 139), and file dispositive motions on or before September 15, 2014, (Dkt. 150).

Based upon the discovery cut-off date, Plaintiffs complain the three exhibits at issue were disclosed untimely, in violation of Fed. R. Civ. P. 26(a) and (e), and therefore seek to exclude the documents from consideration upon summary judgment as a sanction under Fed. R. Civ. P. 37(c). Plaintiffs argue also that Fed. R. Evid. 403 provides a basis for exclusion, because the "late disclosure clearly prejudices the Plaintiffs given that CCA's motion for summary judgment" relies upon them. Plaintiffs contend their ability to respond to the motion for summary judgment and to depose Plaintiffs' expert was hampered by CCA's failure to timely disclose the exhibits.[4]

Plaintiffs complain CCA's late disclosures have created "irreversible prejudice," because Plaintiffs were unable to question several individuals about the statistics in the exhibits during depositions. Plaintiffs contend "at least 7 depositions…would need to be retaken. Two experts would need to issue new reports. The cost…of such an effort would

---

[4] Plaintiffs indicate CCA waited until two days before the deposition of Plaintiffs' expert to disclose the three exhibits, which in turn inhibited Plaintiffs' expert's ability to rebut the exhibits.

**MEMORANDUM DECISION AND ORDER  - 5**

be at least $75,000." However, Plaintiffs indicate that the data summarized in the assault rate chart (Exhibit 22N) "is nothing new." Reply at 7 (Dkt. 206.) Yet, Plaintiffs argue they "cannot rewrite their response to CCA's motion for summary judgment," which motion relied upon the conclusions reached by Leach in his summary reports, and the late disclosure "hampered their summary judgment response." *Id.* at 7, 8.

CCA contends the motion in limine should be denied, because the Leach exhibits were timely disclosed as soon as they became available, and the summary chart, prepared pursuant to Fed. R. Evid. 1006, was based upon data publicly available to Plaintiffs.

## DISCUSSION

Rule 26(a)(1)(i) and (ii) require the parties to disclose a copy of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," as well as the name of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses…." Pursuant to Rule 26(f), this disclosure must occur "at least 21 days before a scheduling conference is held" unless otherwise ordered.

The parties are under a continuing duty to supplement their disclosures under Rule 26(e) if they learn that (1) their initial disclosures are "incomplete or incorrect," and (2) "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." This latter phrase is not satisfied simply because the parties might know the identity of a person or existence of a document. *Depew v. ShopKo Stores, Inc.*, No. Civ. 03–0539–S–BLW, 2006 WL 47357

**MEMORANDUM DECISION AND ORDER - 6**

*1 (D. Idaho Jan. 6, 2006). The phrase "additional or corrective information" refers back to Rule 26(a)(1). With regard to individuals, the phrase means that the parties must know not only the identity of the person but also that he or she is "likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Id.* In other words, the proffering party may be absolved of its duty to file a supplemental disclosure under Rule 26(e) identifying a certain person only if the other parties have learned through other means that the person might have discoverable information regarding the proffering party's claims or defenses. The same logic applies to documents. The documents must be contemplated for use to support the party's claims or defenses.

Failure to follow Rule 26 may result in sanctions under Rule 37(c)(1), unless the proffering party can show that it had a substantial justification for its failure, or that its failure is harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Sanctions include the exclusion of the witness or document at trial, at a hearing, or on a motion. In addition to or instead of this sanction, the court on motion or after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions including any of the orders listed in Rule 37(b)(2)(A) (i)-(vi). Fed. R. Civ. P. 37.

Together, the rules contemplate a five-step "decision tree" for resolving whether a witness or document designation is timely: (1) Was the person or document identified in the Rule 26(f) initial disclosures? (2) If not, was the person or document identified in a supplemental disclosure pursuant to Rule 26(e)? (3) If not, has the person or document,

**MEMORANDUM DECISION AND ORDER  - 7**

and the connection to the claims or defenses of the proffering party "otherwise been made known to the other parties during the discovery process or in writing," thereby excusing the failure to supplement under Rule 26(e)? (4) If not, has the proffering party shown that its failure was substantially justified to avoid Rule 37 sanctions? (5) If not, has the proffering party shown that its failure was harmless to avoid Rule 37 sanctions? *Depew*, 2006 WL 47357 *1. *See also Bryntesen v. Camp Automotive, Inc.*, No. 2:13–cv–00491–BLW, 2015 WL 248002 *2 (D. Idaho Jan. 20, 2015) (applying decision tree).

      This case did not begin in a vacuum. Plaintiffs rely heavily upon *Kelly v. Wengler*, and have known about *Kelly* since the inception of this case. *See* Pls.' Mem. at 6 (Dkt. 158) (asking the Court to take note of *Kelly's* factual finding that CCA did not staff mandatory posts during a seven-month period in 2012). Plaintiffs' complaint was filed just two months after Judge Carter conducted the *Kelly* settlement conference. Therefore, Plaintiffs knew about Leach's appointment as Judge Carter's independent monitor and the duties Leach had at the same time CCA did. Leach prepared his first report, filed under seal, on December 16, 2013, and prepared monthly reports thereafter. None of this was a secret to Plaintiffs.

      Reviewing the timeline of events, on April 15, 2014, Leach prepared the first draft of the comprehensive violence report. Three days later, on April 18, 2014, CCA supplemented its Rule 26 disclosures identifying Leach as a person likely to have discoverable information. On May 9, 2014, Leach revised the comprehensive violence report, and later prepared his summary report on June 30, 2014. Leach did not submit

**MEMORANDUM DECISION AND ORDER - 8**

either report to Judge Carter until July 22, 2014.[5] Three days later, on July 25, 2014, CCA supplemented its Rule 26 disclosures identifying the documents, and on August 26, 2014, CCA disclosed it would use the two Leach reports to supports its defenses. On September 13, 2014, Judge Carter approved the Leach report redactions, and released them both for public consumption. Two days later, On September 15, 2014, CCA produced the two reports, Exhibits 21 and 23, to Plaintiffs.

Based upon the timeline, CCA disclosed Leach as a person with knowledge and that the documents he created would be used to support CCA's defenses no more than three days after CCA received the reports at issue here. CCA could not have produced the reports or identified Leach as a person with knowledge about the issues in this case any earlier than it did because the documents were prepared for Judge Carter, not CCA, in Judge Carter's capacity as the settlement judge. It is therefore disingenuous for Plaintiffs to claim that CCA could have produced Leach's reports earlier than September 15, 2014, in light of Judge Carter's clear order to the contrary as part of the terms of the settlement procedures.[6]

Exhibits 21 and 23 simply were not in CCA's custody and control until Judge Carter released them to the public according to the terms of the Settlement Agreement. Within two days of Judge Carter's authorization to do so, CCA provided Exhibits 21 and 23 to Plaintiffs. Finally, despite the earlier Rule 26 disclosure of Leach and the reports he

---

[5] According to the *Kelly* settlement terms, the parties were not entitled to copies of the reports prior to Leach's submission of them to Judge Carter.
[6] Plaintiffs contend the protective order in this case would have allowed CCA to share the Leach reports on July 22, 2014. However, Plaintiffs' argument contradicts the clear intent of Judge Carter's order in *Kelly* appointing Leach as the monitor. Judge Carter required Leach to submit reports to him, under seal, and not to the parties.

**MEMORANDUM DECISION AND ORDER  - 9**

prepared to Plaintiffs on April 18, 2014, and July 25, 2014, respectively, Plaintiffs never sought to intervene in the *Kelly* proceedings to obtain the documents earlier. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1129 (9th Cir. 2003) (intervenors appealed court's ruling only partially granting motion to unseal, and denying access to certain sealed materials).

Based upon the above chronology, CCA meets criteria two, three, and four of the *Depew* decision tree with respect to Exhibits 21 and 23. Upon receipt of the Leach reports, CCA promptly identified Leach and the reports he prepared in a supplemental Rule 26 disclosure. Further, Plaintiffs otherwise knew of Leach's tasks in connection with the *Kelly* case, and had the ability to intervene in that case, yet chose not to. And finally, the settlement terms precluded CCA from disclosing Exhibits 21 and 23 earlier than it did. Accordingly, Exhibits 21 and 23 were timely produced in the context of this case.

The Court comments also upon Plaintiffs' own lack of diligence and the inconsistencies in their argument. Upon CCA's production of Exhibits 21 and 23, Plaintiffs neither asked this Court for an extension to conduct further discovery, which could have been accomplished under Fed. R. Civ. P. 56(d), nor did they explain why their own independent knowledge of Leach, the tasks he was given, and the previous reports he prepared (which were unsealed) did not provide them with some inkling that later reports might be relevant here in light of Plaintiffs' claims. Plaintiffs knew on August 26, 2014, about the existence of the Leach reports, and CCA's intent to use them. Plaintiffs knew earlier, on April 18, 2014, that Leach was a person with knowledge. Yet Plaintiffs

**MEMORANDUM DECISION AND ORDER - 10**

never asked for an extension of the dispositive motion deadline, which was still weeks away from the August 26 disclosure date.

Plaintiffs incredulously assert that their ability to respond to CCA's motion for summary judgment was "hampered" by CCA's late disclosure. But, rather than file a motion under Rule 56(d), Plaintiffs asked for, and received, an extension to respond to CCA's motion, as well as submitted their own motion for partial summary judgment. For Plaintiffs to now complain stretches the bounds of reason—Plaintiffs had ample opportunity to assess the situation at the time the reports were disclosed and later produced; rather than alerting the Court, Plaintiffs chose to sit on their hands and wait to address the issue by filing their motion in limine.

Turning to Exhibit 22N, the data underlying the creation of the chart was produced to Plaintiffs on April 25, 2014, the day of the discovery cut-off. (Dkt. 205-7.) Plaintiffs therefore timely possessed all of the information CCA later summarized in chart form. Plaintiffs inexplicably contend they were not provided with the underlying data CCA used to create Exhibit 22N. Reply at 8 (Dkt. 206.) However, CCA's sixth supplemental disclosure dated April 25, 2014, indicates clearly and unmistakably, in bold and italic type, that Plaintiffs were provided with "IDOC's response to Defendant's Subpoena Duces Tecum, dated 3/24/14, CCA_OC042903-043521." (Dkt. 205-7.)

Plaintiffs argue instead that the discovery cut-off deadline was extended to August 25, 2014, solely for the purpose of finishing depositions. Reply at 8 (Dkt. 206.) The Court's order indicates otherwise, clearly indicating the "parties had agreed that the discovery cutoff deadline of March 28, 2014 shall be extended until April 25, 2014 to

**MEMORANDUM DECISION AND ORDER - 11**

complete discovery." (Dkt. 139.) Nowhere does the Court indicate the parties intended to limit the extension for completion of depositions only. The Court extended "the factual discovery deadline" to April 25, 2014, without any limitation. *Id.* Rather, as support for Plaintiffs' argument, Plaintiffs rely upon an earlier March 19, 2014 Order (Dkt. 132), which order was superseded by the Court's later April 7, 2014 Order (Dkt. 139).[7]

Fed. R. Evid. 1006 allows litigants to "use a summary, chart, or calculation to prove the content of voluminous writings[8]…that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying… at a reasonable time." CCA did not create Exhibit 22N until August 12, 2014, and the Court concludes CCA's production of Exhibit 22N to Plaintiffs on August 26, 2014, satisfies the reasonableness standard under Fed. R. Evid. 1006. CCA's production of Exhibit 22N was therefore timely.[9] The Court reiterates its sentiments in the preceding paragraphs and declines to reach Plaintiffs' arguments that production of Exhibit 22N was somehow prejudicial; Plaintiffs could have undertaken the same task as CCA did upon receipt of the underlying data on April 25, 2014.

---

[7] The Court actually discussed the parties' gamesmanship in this very order, noting that, despite the Court's April 11, 2014 order allowing certain depositions to proceed, "**the parties had agreed** that the 'discovery cutoff deadline of March 28, 2014 shall be extended until April 25, 2014 to complete discovery." (Dkt. 139 at 3) (emphasis added). The Court commented that, if it "had known that the parties had agreed to this schedule, it would have approved the agreement…." (Dkt. 139 at 3.) The Court's final order unambiguously extended the "discovery cutoff deadline" with no qualifications.

[8] The Bates numbers indicate IDOC's production consisted of 618 pages. A summary would therefore be appropriate.

[9] Plaintiffs argue that CCA "could have performed its analysis … at any time before the discovery period closed," Reply at 10 (Dkt. 206), but fail to explain why CCA was obligated to do so when the underlying data was produced on April 25, 2014, and the opportunity to summarize the data was therefore equally available to Plaintiffs.

**MEMORANDUM DECISION AND ORDER - 12**

## CONCLUSION

The Court concludes CCA's productions of Exhibits 21, 22N, and 23 were timely given the context of this case. CCA filed its supplemental disclosures in a timely fashion; Plaintiffs' otherwise knew of Leach, his tasks, and his reports in connection with the *Kelly* settlement; Plaintiffs were provided with the data underlying the creation of Exhibit 22N within the discovery cut-off; and CCA could not have produced Exhibits 21 and 23 any earlier than it did. Exhibits 21 and 23 were under seal by order of the settlement judge in *Kelly*, and were not publicly available until Judge Carter allowed them to be published. Exhibit 22N did not exist until CCA created it on August 12, 2014. Therefore, the Court does not reach Plaintiffs' argument that the disclosure is prejudicial under Rule 403 or otherwise, or evidences bad faith by CCA.[10] The Court will, however, determine if the exhibits are relevant and material for purposes of Rule 56 when deciding CCA's motion for summary judgment.[11]

---

[10] Plaintiffs' argument under Fed. R. Evid. 403 that the exhibits are prejudicial is misplaced. Plaintiffs assert the "late disclosure prejudices the Plaintiffs given that CCA's motion for summary judgment leans heavily on these exhibits." Plaintiffs' prejudice comes not from the late disclosure, but because the content of the Leach report—that staffing levels were adequate during the times mentioned in the report—contradicts Plaintiffs' claims. Such is not the type of prejudice Fed. R. Evid. 403 is designed to remedy. Rather, the comments to the rule indicate "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

[11] Interestingly, Plaintiffs argue in response to CCA's motion for summary judgment that Leach's reports are irrelevant. If Plaintiffs contend neither exhibit21 nor 23 is relevant, it begs the question as to why Plaintiffs spent such an inordinate amount of time arguing for exclusion here.

**MEMORANDUM DECISION AND ORDER  - 13**

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiffs' Motion in Limine (Dkt. 191) is **DENIED**.

Dated: **July 13, 2015**

Honorable Candy W. Dale
United States Magistrate Judge