Kirtlan G. Naylor          ISB 3569
Jacob H. Naylor          ISB 8474
NAYLOR & HALES, P.C.
950 W. Bannock Street, Suite 610
Boise, Idaho 83702
Telephone:  (208) 383-9511
Fax:  (208) 383-9516
kirt@naylorhales.com
jake@naylorhales.com

Daniel P. Struck          AZB 012377
*(Pro Hac Vice)*
Tara B. Zoellner          AZB 027364
*(Pro Hac Vice)*
STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@swlfirm.com,
tzoellner@swlfirm.com

Attorneys for Defendant Corrections
Corporation of America, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES AND RAYMOND BRYANT,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.<br><br>                    Defendant. | Case No. 1:12-cv-00559-DVB<br><br>**TRIAL BRIEF RE: PUNITIVE DAMAGES** |

Pursuant to the Court's February 17, 2017 request, Defendant Corrections Corporation of America ("CCA") submits this trial brief regarding the applicable

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 1**

standard of proof for punitive damages.  Defendant urges the Court to adopt the same clear and convincing standard applicable under Idaho state law.[1]

## I.    Plaintiffs Cannot Prove Punitive Damages By Either a Preponderance of the Evidence or Clear and Convincing Evidence.

Plaintiffs' sole remaining claim is that a lack of staffing on the night of May 4, 2012 – the night before the attack on Plaintiffs – was the moving force behind the May 5, 2012 attack.  *See* Order on Def's Mot. for Summ. J., Dkt. 236 at 30.  Plaintiffs have not established that ICC was understaffed on May 4 (or May 5, for that matter), 2012; let alone that understaffing was the cause – or moving force – behind the incident or any alleged constitutional violation.  Moreover, Plaintiffs have failed to introduce any evidence – aside from the opinions of correctional officers who have no knowledge of the staffing pattern and lack foundation as to appropriate prison staffing – that the contractual or budgeted staffing patterns were constitutionally inadequate, as their expert on the matter has testified that he does not know what constitutionally-appropriate staffing of a prison would be.

Notwithstanding the dearth of evidence that ICC's staffing was constitutionally inadequate (particularly with respect to this incident and these Plaintiffs), insufficient evidence supports Plaintiffs' claim for punitive damages because Plaintiffs have not shown: (1) that CCA acted with requisite "evil motive or intent" or with "reckless and callous indifference to the constitutional rights of Plaintiffs," *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1485 (9th Cir. 1991), and (2) that an award would serve any punitive or deterrent purpose.  *Smith*, 461 U.S. at 54 (citing

---

[1] Although there is authority to the contrary with respect to federal § 1983 claims, Defendant raises the issue for preservation purposes.

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 2**

Restatement (Second) of Torts § 908(1) (1977)); *see also Fact Concerts*, 453 U.S. at 268. Absent any evil motive, the issue of punitive damages should not go to the jury. [2]

Like the Tenth Circuit, the Ninth Circuit has not directly addressed the appropriate standard for punitive damages, although neither circuit has found the clear and convincing burden to apply. *Compare Green v. Montana Dep't of Pub. Health & Human Svcs.*, CV 12-62-H-DLC, 2014 WL 12591835, at *5 (D. Mont. June 13, 2014) ("This Court was unable to locate a controlling Supreme Court or Ninth Circuit case that definitively analyzes the appropriate standard of proof for punitive damages on § 1983 claims, which is surprising given the volume of § 1983 cases filed each year." (citing *Cornwell v. City of Riverside*, 896 F.2d 398, 399 (9th Cir. 1990) ("damages awardable under 42 U.S.C. § 1983 are a matter of federal law."); *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (The "standard of proof generally applied in federal cases is preponderance of evidence.")), *with Karnes v. SCI Colo. Funeral Svcs., Inc.*, 162 F.3d 1077, 1081 (10th Cir. 1998) (impliedly rejecting a clear and convincing standard in its analysis rejecting the higher standard on a Title VII claim).

Although not binding, other district courts in the Ninth Circuit have also held preponderance of the evidence to be the standard. *See Smith v. City of Oakland*, 538 F. Supp. 2d 1217, 1246 (N.D. Cal. 2008), *aff'd*, 379 Fed. Appx. 647 (9th Cir. 2010); *Weishaar v. County of Napa*, 14-CV-01352-LB, 2016 WL 7242122, at *14 (N.D. Cal.

---

[2] Moreover, as a threshold matter, punitive damages are, generally, applicable only in individual-capacity actions under § 1983 because public entities are immune from punitive damages. *See City of Newport v. Fact Concerts*, 453 U.S. 247 (1981). A similar defense should be available to a private entity like CCA that is contracted to keep custody of state inmates. *See Sundquist v. Philp*, No. C 06-3387 MMC (PR), 2008 WL 859452, *14 (N.D. Cal. Mar. 28, 2008), *aff'd*, 346 F. Appx 143 (9th Cir. 2009) (treating private corporation acting under color of state law as a municipality for purposes of § 1983) (citing *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir. 2003); *Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972, 975-76 (8th Cir. 1993); and *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir.1982)).

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 3**

Dec. 15, 2016) ("A § 1983 plaintiff may recover punitive damages against an official capacity if the official acted with malicious or evil intent or in callous disregard of a plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983).); *Booke v. County of Fresno*, 98 F. Supp. 3d 1103, 1131 (E.D. Cal. 2015) ("Punitive damages may be awarded in 42 U.S.C. § 1983 cases if a defendant's conduct is driven by evil motive or intent, or when it involves a reckless or callous indifference to the constitutional rights of others. *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). A plaintiff must show such conduct by a preponderance of the evidence. *See Dang v. Cross,* 422 F.3d 800, 807–08 (9th Cir. 2005); *see also Smith v. City of Oakland,* 538 F.Supp.2d 1217, 1246 (N.D. Cal. 2008).").[3]

In Idaho, on the other hand, the standard for punitive damages is governed by statute:

> In any action seeking recovery of punitive damages, the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted.

Idaho Code Ann. § 6-1604(1) (amended in 2003 from preponderance to clear and convincing); *see Akers v. D.L. White Const., Inc.*, 320 P.3d 428, 443–44 (Idaho 2014) (quoting *Cheney v. Palos Verdes Inv. Corp.*, 665 P.2d 661, 668–69 (Idaho 1983)) ("Punitive damage awards, 'are not favored in the law and therefore should be awarded only in the most unusual and compelling circumstances.'").[4]

---

[3] Some of these courts – and Plaintiffs – interpret *Dang v. Cross* as rejecting the clear and convincing standard. The *Dang* court did not squarely address the appropriate standard, however. The instruction at issue simply included the clear and convincing standard. *See* 422 F.3d at 808 ("Thus, we now explicitly hold what was implicit in our past decisions. As the Seventh Circuit held in *McKinley v. Trattles,* 732 F.2d 1320 (7th Cir.1984), we conclude that a jury instruction that allows for imposition of punitive damages for an act that was "oppressively done" and which caused the plaintiff's injury is "accurate and complete." *See id.* at 1326.").

[4] The statute also provides:

No judgment for punitive damages shall exceed the greater of two hundred

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 4**

**II.      Plaintiffs Have Not Shown Any Evidence of Malicious or Evil Intent or Callous Disregard of Plaintiffs' Federally-Protected Rights.**

Even giving Plaintiffs the benefit of a preponderance of the evidence standard, Plaintiffs have not introduced evidence that the alleged custom and policy of understaffing ICC caused the May 5 incident, let alone that CCA or its employees operated with malicious or evil intent or callous disregard of these Plaintiffs' federally-protected rights sufficient to sustain a claim for punitive damages.[5]  In fact, none of the evidence put forth to date supports Plaintiffs' *Monell* understaffing claim.  At the very most, the evidence shows that on the night of May 4 and morning of May 5, CCA correctional officers failed to follow ICC policy and comport with their training.  If anything, this is a case of officer negligence:

• Idaho Department of Correction Deputy Warden Tim Higgins and former CCA Regional Manager Kevin Myers both testified that the DEF Unit (where the incident occurred) was fully staffed on the night of May 4 and the morning of May 5.  In fact, staffing on both days exceeded contractual requirements.  Correctional Officer Jacob Mills also testified that there were three floor officers and one pod control officer in DEF when an inmate janitor tampered with the janitor's closet door, which meets the requirement of CCA's contract with IDOC.  Plaintiffs have offered no evidence that the contractual staffing requirements (which CCA exceeded with its budgeted staffing

---

fifty thousand dollars ($250,000) or an amount which is three (3) times the compensatory damages contained in such judgment.  If a case is tried to a jury, the jury shall not be informed of this limitation.  The limitations on noneconomic damages contained in section 6-1603, Idaho Code, are not applicable to punitive damages.

Idaho Code Ann. § 6-1604(3).

[5] Plaintiffs have introduced evidence in the form of emails, correspondence, and the fact of the *Kelly v. Wengler* contempt order to prove their theory that understaffing was the cause of the incident, but they haven't presented any evidence that understaffing caused this incident.  Moreover, the *Kelly* contempt order found only that ICC was understaffed in violation of the *Kelly* settlement agreement.  Judge Carter did not find that CCA violated any ICC inmate's constitutional rights or that understaffing caused an increase in or contributed to violence at the facility, let alone caused this incident.

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 5**

pattern) were constitutionally deficient. *Compare* Def. Exh. 2174 (Contract Staffing Pattern) *and* Def. Exh. 2244 (2012 CCA Budgeted Staffing Pattern).

- Former ICC Sergeant Garth Carrick identified the officer who was supposed to be supervising the janitor inmates in F1 as Officer Goodman.[6] Carrick, IDOC Deputy Warden Higgins, and former Regional Manager Myers testified that, in leaving the inmate janitors unsupervised in F1, Officer Goodman was violating ICC/CCA policy, as well as the training he received from CCA.

- Surveillance video of the May 5, 2012 assault shows Officer Dustyn Skogsberg intervening within a matter of seconds, and the entire disturbance quelled in approximately three minutes. Mr. Skogsberg's testimony was that he promptly called a Code Blue, which initiated the Emergency Response Team ("ERT") response. Testimony from IDOC Deputy Warden Higgins was that the response time was "excellent."

- Officer Skogsberg testified that he received training on performing a cross count and acknowledged that he and the recreation officer, Anderson, did not conduct a cross count on the morning of May 5. If they had, they would have noticed six inmates were missing before releasing Plaintiffs for their dayroom hour.

- Deputy Warden Higgins and former Regional Manager Myers testified that CCA officers received training and had protocols in place to prevent incidents such as these. They each testified that Officer Skogsberg and Officer Anderson's failure to properly conduct a cross count was the reason for the May 5 incident. If the officers had done so in accordance with CCA policy and their training, they would have noticed the six inmate attackers were missing before releasing Plaintiffs for their dayroom hour. Deputy Warden Higgins also testified that, regardless of whether Skogsberg performed

---

[6] Officer Goodman is the officer that Jacob Mills said he did not recall seeing, but who appeared on the shift roster for the May 4, 2012 night shift.

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 6**

the lock-in/lock-out procedure in IDOC's preferred manner, his decision to walk downstairs while the DEF inmates were out of their cells on the upper tier was a violation of group release procedure and, also, against training Skogsberg received.

- Deputy Warden Higgins testified that after the June 2011 incident, which also occurred after inmates hid in a janitor's closet on a different DEF tier, CCA revised its post orders and conducted additional officer training to prevent future incidents. This included requiring officers to check each door on the tier before releasing inmates for recreation or dayroom, something the officer involved in the June 2011 incident did not do, but Skogsberg did, as he described during his testimony.

- Finally, Deputy Warden Higgins testified that any time IDOC brought issues to CCA's attention, CCA was responsive and receptive.

The foregoing record insufficiently supports a claim that CCA acted with an evil motive or reckless and callous indifference to the rights of *these Plaintiffs*. Nor have Plaintiffs introduced evidence of a custom and policy of understaffing that could possibly support an award of punitive damages that would deter future conduct.

## III. Conclusion

Plaintiffs' evidence is insufficient to satisfy the heightened proof requirements for punitive damages under both the preponderance of the evidence and clear and convincing standards.

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 7**

DATED this 20th day of February 2017.

STRUCK WIENEKE & LOVE, P.L.C.


By ___/s/ *Tara B. Zoellner*_____
     Daniel P. Struck
     E-mail:  dstruck@swlfirm.com
     Tara B. Zoellner
     E-mail:  tzoellner@swlfirm.com

     Kirtlan G. Naylor
     Jacob H. Naylor
     Naylor & Hales, P.C.
     E-mail:  kirt@naylorhales.com
     E-mail:  jake@naylorhales.com

     Attorneys for Defendant
     Corrections Corporation of America, Inc.

**BRIEF RE: PUNITIVE DAMAGES STANDARD - 8**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of February 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Thomas J. Angstman
Wyatt Benton Johnson
Anthony M. Shallat
mindy@angstman.com

Nikki Rachelle Ramirez-Smith
Nikkismithlaw@gmail.com

Attorneys for Plaintiffs Knight, Russell,
Jordan, Judd, Ford-Bridges and Bryant


Kirtlan G. Naylor
Jacob Naylor
kirt@naylorhales.com
jake@naylorhales.com

Attorneys for Defendant Corrections
Corporation of America


                        /s/ *Tara B. Zoellner*


**BRIEF RE: PUNITIVE DAMAGES STANDARD - 9**