IN THE UNITED STATES COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| OMAR CASTILLON, DUSTY KNIGHT, JUSTIN PETERSON, LEON RUSSELL, CHRISTOPHER JORDAN, JACOB JUDD, MICHAEL FORD-BRIDGES and RAYMOND BRYANT,<br><br>Plaintiffs,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Judge Dee V. Benson<br><br>Case No. 1:12-cv-559-DVB |

Before the Court are two post-trial motions: (1) Plaintiffs' Motion to Alter, Amend or Correct Judgment and/or for a New Trial [Dkt. 361]; and Defendant's Motion to Amend, Correct or Alter Judgment [Dkt. 362]. Both motions have been fully briefed and a hearing was held before the Court in Boise, Idaho on September 29, 2017. At the hearing, Plaintiffs were represented by Anthony Shallot and Nikki Ramirez-Smith. Defendant was represented by Daniel P. Struck and Kirtland G. Naylor. Having considered the written and oral arguments of the parties, along with the relevant facts and the law, the Court enters the following Order.

1

## BACKGROUND

This case arouse out of an inmate-on-inmate assault that occurred on May 5, 2012 at the former Idaho Correctional Center, a private prison which, at the time of the attack, was operated by Defendant Corrections Corporation of America ("CCA") under contract with the Idaho Department of Corrections. On May 4, 2012, inmate Campos was assigned janitorial duties in the F-1 Pod, the housing unit in which Plaintiffs and others were housed. While completing his assignment, he secretly rigged the janitorial closet so that it would not lock. The next day, a group of inmates who were returning to their cells after recreation time outside, hid in the closet and waited for the next group of prisoners to be released from their cells for their recreation time. A few minutes later, as the second group left their cells, the first group emerged from the closet and attacked the second group of inmates, some with shanks or other homemade weapons. The injured members of the second group are the plaintiffs in this case.

Plaintiffs brought a *Monell* claim pursuant to 42 U.S.C. § 1983 against CCA, alleging a violation of their Eighth Amendment rights. [Dkt. 14]. *See Monell v. New York City*, 436 U.S. 658 (1978). In order to establish liability for a *Monell* claim under § 1983, a plaintiff must show a direct causal link between a policy or custom and the alleged constitutional deprivation. *Mendiola-Marinez*, 836 F.3d at 1247 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016)(quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Plaintiffs' claim was originally based on two theories: (1) CCA had a custom and policy of clustering gang members together, which created an environment that permitted the assault to occur; and (2) CCA had a custom and policy of understaffing that hindered the facility's ability to prevent or

stop inmate-on-inmate violence. Judge Lodge of this Court granted summary judgment for CCA on Plaintiffs' "gang clustering" theory. He denied CCA's motion for summary judgment on Plaintiffs' overstaffing theory, however, finding "there is sufficient evidence to withstand summary judgment on Plaintiffs' claim that understaffing on May 4, 2012 was the moving force behind the attack." [Dkt. 236 at p. 30]. Judge Lodge found that "[a]bsent Offender Campos' closet rigging on May 4, 2012, a reasonable juror could conclude the assailants would not have been able to attack Plaintiffs on the morning of May 5, 2012." [Dkt. 236]. This was the issue presented to a jury at trial.

In order to succeed on their claim at trial, Plaintiffs were required to show: (1) that their constitutional rights were violated; (2) that CCA had a custom and policy of understaffing; and (3) a direct causal link between the custom and policy of understaffing and the alleged constitutional deprivation. *Mendiola-Martinez*, 836 F.3d at 1247. See *Fortson v. Los Angeles City Attorney's office*, 852 F.3d 1190, 1195 (9th Cir. 2017). Under *Monell*, a plaintiff must show that "the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both 'but for' and proximate causation." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012).

On February 22, 2017, following an eight day trial, the jury returned the Special Verdict Form finding that Plaintiffs proved the first two *Monell* elements, specifically, that Plaintiffs suffered a deprivation of their constitutional rights, and that CCA had a pattern and practice of understaffing. The jury decided however, that the Plaintiffs had not met their burden of proving that understaffing on May 4 and 5, 2012 was the cause of this incident. Accordingly, the jury

3

declined to award Plaintiffs any actual, nominal or punitive damages. The Court entered Judgment in this case reflecting the jury's findings on the Special Verdict Form. [Dkt. 342].

## ANALYSIS

### I. Plaintiffs' Motion to Alter, Amend or Correct Judgment and/or for a New Trial [Dkt. 361]

Plaintiffs' motion seeks, alternatively, a new trial; a partial new trial on damages; or to have the judgment altered to enter judgment in favor of Plaintiffs and to include an award of nominal damages.

A. Motion for a new trial

"A new trial may be granted . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Federal Rule of Civil Procedure 59(a)(1). Plaintiffs assert they are entitled to a new trial based on: (1) Jury Instruction Nos. 16 and 17; (2) the Special Verdict Form; and (3) specific evidentiary rulings.

*1. Jury Instructions*

Plaintiffs argue that they are entitled to a new trial because Jury Instruction Nos. 16 and 17 required the jury to find that understaffing on May 4 and 5 was the moving force of the injuries sustained. They assert in their motion that proof of a pattern or practice of understaffing during the general time frame should have been sufficient to meet the causal element of *Monell*.

At the close of evidence, the Court and counsel for both parties met to discuss and agree

4

on jury instructions and a special verdict form to submit to the jury. Prior to trial, both sides had filed with the Court proposed versions of each. The proposed jury instructions submitted by both parties contained iterations of the Ninth Circuit Model Civil Jury Instructions. [Dkt. 312, 313].

"Because there are different legal standards establishing liability against the two types of defendants" to an action brought pursuant to 42 U.S.C. § 1983 - individuals and municipal bodies - the Ninth Circuit Model Civil Jury Instructions are organized to provide an "elements" instruction based on the type of defendant, and a "particular rights" instruction to establish the deprivation of particular constitutional rights. *See* 9th Cir. Model Civ. Jury Instructions § 9, Introductory Cmt.

The instruction that was ultimately adopted by the Court and given to the jury as Instruction No. 16 is the "elements" portion of the jury instruction, setting forth the elements of a *Monell* claim against CCA. [Dkt. 339 at 18.] It conforms with Model Instruction No. 9.5, entitled, "Section 1983 Claim Against Local Governing Body Defendants Based on Unlawful Official Policy, Practice, or Custom - Elements and Burden of Proof." This instruction requires the jury to find that Plaintiffs proved all of the elements in Instruction No. 16, as well as all of the elements of the accompanying "particular rights" instruction (Instruction No. 17), which was modeled after Model Instruction No. 9.28, entitled, "Particular Rights - Eighth Amendment - Convicted Prisoner's Claim of Failure to Protect."

Because Plaintiffs sought to hold CCA liable for their alleged constitutional violations under § 1983, they were required to satisfy all of the elements for municipal liability established by *Monell v. New York City*, 436 U.S. 658 (1978). *See Mendiola-Martinez v. Arpaio*, 836 F.3d

1239, 1247 (9th Cir. 2016). In denying summary judgment on the understaffing issue, Judge Lodge found that the critical issue was whether understaffing, not only in the general time frame, but specifically on May 4 when inmate Campos rigged the closet, was the moving force behind the incident. He stated, "[a]bsent Offender Campos' closet rigging on May 4, 2012, a reasonable juror could conclude the assailants would not have been able to attack Plaintiffs on the morning of May 5, 2012." [Dkt. 236 at p. 33]. The Court finds that the elements necessary in this case to prove causation under *Monell* are reflected in the Jury Instructions, which were based on Judge Lodge's summary judgment ruling and modeled after the Ninth Circuit Civil Model Jury Instructions.

Having found that the jury instructions were not improper, the Court further finds that Plaintiffs failed to object. Pursuant to Federal Rule of Civil Procedure 51, a party may allege error in the giving or failure to give a jury instruction only upon proper objection. The Ninth Circuit strictly interprets Rule 51 as precluding review of jury instructions in the absence of a proper objection. *See Larez v. City of Los Angeles*, 946 F.2d 630, 638 (9th Cir. 1991); *see also Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991)(plurality opinion)(en banc)("This court has enjoyed a reputation as the strictest enforcer of Rule 51; we have declared that there is no 'plain error' exception in civil cases in this circuit")(citations omitted), cert. denied, 502 U.S. 980 (1991). A proper objection is one that brings "into focus the precise nature of the alleged error" in the Court's instruction. *McGonigle v. Combs*, 968 F.2d 810, 823 (9th Cir. 1992)(citing *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943)).

During the jury instruction conference in chambers, Plaintiffs' counsel expressed concern

with "the comment that we limit it to May 4 and 5, because we did put on a case where there was evidence that there was systemic understaffing that led to the problems in controlling the inmates." Trial Transcript a 1293:4-13. His comments were not legal objections of the type required under *United States v. Parsons*, 1 F.3d 944, 945 (9th Cir. 1993); *International House of Pancakes, Inc. v. Twin City Fire Ins. Co.*, 19 Fed. Appx., 686, 688 (9th Cir. 2001). Rather, Plaintiffs' counsel's comments were what the Ninth Circuit has termed "doe-like" and lacking in legal support that would indicate to the Court that Plaintiffs' objections were more than simple preferences. *Parsons*, 1 F.3d at 945. Ultimately, Plaintiffs' counsel agreed to Instruction 16: "We don't have any objection to the new instruction or the changes." Trial Transcript at 1295:6-24; see also Trial Transcript at 1293:20-23. Plaintiffs have therefore foregone their right to contest Instruction No. 16 and 17.

*2. Special Verdict Form*

The Special Verdict Form that the Court adopted and gave to the jury was the product of significant discussion, collaboration and agreement by both parties. It tracked the three requisite elements of a *Monell* claim, which were also set forth in Jury Instruction Nos. 16 and 17. As discussed above, it specifically asked the jury to find: (1) whether there had been a constitutional violation; and, if so, (2) whether CCA had a custom or policy of understaffing; and, if so, (3) whether that custom or policy caused the constitutional violation on May 4 and 5, 2012. [Dkt. 341]. It also contained blanks beside the names of each Plaintiff for the jury to fill in the amounts, if any, it wished to award as damages and asked the separate question whether punitive damages should be awarded against CCA, as set forth in Jury Instruction No. 25, and, if so, in what

amount.

Though the jury found an underlying constitutional violation and a custom and policy of understaffing (elements 1 and 2), it did not find the third and necessary element - a causal link between the constitutional violation and the custom and policy. [Dkt. 341]. Plaintiffs now argue that the third question on the Special Verdict Form was "superfluous" and created an inconsistent and contradictory result. The Court disagrees. The jury specifically found it was not the understaffing that was the moving force behind Plaintiffs' injuries.

Additionally, while Plaintiffs' counsel expressed his opinion during the conference with the Court and opposing counsel that the third question was unnecessary, he did not object to its inclusion and has therefore foregone his right to object to it.

*3. Evidentiary Rulings*

Plaintiffs argue they are entitled to a new trial based on the Court's evidentiary rulings: (1) excluding Plaintiffs' second corrections expert, Pam Sonnen, from testifying; and (2) preventing Plaintiffs from raising punitive damages in their opening statement. District courts are granted broad discretion in admitting evidence. See *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). A new trial should be granted only where an evidentiary ruling is erroneous and "substantially prejudiced the moving party." *Jensen*, 32 Fed. Appx. at 206 (citing *Ruvalcaba*, 64 F.3d at 1328).

i. Pam Sonnen: The Court initially permitted Plaintiffs to call Pam Sonnen as a second corrections expert, over Defendant's objection. However, as Ms. Sonnen's testimony unfolded on the witness stand, it became clear to the Court that her testimony was not only

8

cumulative of their first expert, John Hepburns's testimony, but also she had no evidence to offer about understaffing on the critical specific dates of May 4 or 5, 2012. Neither Sonnen's expert report, nor her testimony at trial provided any correlation about how staffing in the F-1 Pod on May 4 or 5 contributed to inmate Campos's ability to rig the closet door, and thereby facilitate the attack. Rather, her analysis dealt with staffing generally in the prison. Over CCA's objections, the Court allowed Plaintiffs to present to the jury a wide array of evidence related to understaffing. The Court's exclusion of Sonnen's testimony as cumulative was properly within its discretion and therefore not err. *See Borunda v. Richmond*, 885 F.2d 1384, 1388 (9th Cir. 1988).

ii. Punitive Damages

Plaintiffs allege that the Court erred in precluding Plaintiffs' counsel from raising punitive damages in his opening statement. Before trial, CCA filed a motion in limine to prohibit Plaintiffs from making improper "send a message" arguments until after the jury made a liability determination. [Dkt. 258]. The Court ruled that Plaintiffs' counsel was not to discuss punitive damages in his opening statement, but, that as evidence was presented at trial, the Court would determine whether and when the issue could be presented to the jury. [Dkt. 306]. The Court allowed Plaintiffs' counsel to discuss punitive damages and ask the jury to award them during his closing argument. The Court gave a jury instruction on punitive damages and included a question on the Special Verdict Form as to whether punitive damages should be awarded and, if so, in what amount. Prohibiting Plaintiffs' counsel from discussing punitive damages in his opening statement was a proper determination in balancing the potential prejudice to Defendant and was soundly within the Court's discretion.

9

B. Motion for a partial new trial on damages

In the alternative to granting a new complete trial, Plaintiffs request a new trial on the issue of damages because they contend the jury found liability on the Special Verdict Form Question No. 1. This position, as discussed above, is without merit.

C. Motion to alter or amend the verdict

Plaintiffs move for judgment to be entered in their favor because of the answer to Question No. 1 on the Special Verdict Form and to be awarded nominal damages. The Court gave the jury a clear instruction as to nominal damages. Instruction No. 24 states,

> The law which applies to this case authorizes an award of nominal damages.
> If you find for a particular Plaintiff but find that the particular Plaintiff has
> failed to prove damages as defined in these instructions, you must award nominal
> damages. Nominal damages may not exceed one dollar.

Because the jury did not find for Plaintiffs, it did not award nominal damages.

## II. Defendant's Motion to Amend, Correct or Alter Judgment [Dkt. 362]

Defendant moves for the judgment to be amended to state: "Judgment is entered in favor of Defendant, with Plaintiffs to take nothing." The Judgment now recites the jury's findings on the the three questions on the Special Verdict Form. Plaintiffs object on the bases they asserted in support of their motion for a new trial, specifically that the jury found a constitutional violation. Plaintiffs further contend that the third question on the special verdict form is "superflouous" and that the judgment cannot be entered in favor of Defendant given the jury's answer to Question No. 1. Plaintiffs maintain that judgment should be entered in their favor and award $1 in nominal

damages to each Plaintiff.

Federal Rule of Civil Procedure 60(a) allows for corrections to judgments and the Court agrees with Defendant's position.

## CONCLUSION

Plaintiffs' Motion to Alter, Amend or Correct Judgment and/or for a New Trial is hereby DENIED.

Defendant's Motion to Amend, Correct or Alter Judgment is hereby GRANTED.

IT IS SO ORDERED.

DATED this 6th day of October, 2017.

_____
Dee Benson
United States District Judge